**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**

In re:                                                            Case No.: 17-11413
                                                                 Chapter: 7

Dennis Richmond
_____
                          Debtor
                                                                 ADV. NO. 18-02010

DFWMM Holdings LLC
               Plaintiff
vs.

Dennis Richmond
               Defendant

**PLAINTIFF'S NOTICE OF APPEAL**

        NOW COMES DFWMM Holdings LLC, Plaintiff, through undersigned counsel, and

hereby moves pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. Proc. 8003 to appeal the

Judgment denying Counts 1 and 2 of the Complaint and entering judgment in favor of the

Defendant and the accompanying memorandum and opinion both entered by this Court on 21

June 2019 to the District Court of the Middle District of North Carolina.


                                        Oak City Law LLP


                                        /s/Samuel Pinero II_____
                                        Samuel Pinero II
                                        Attorney for Plaintiff
                                        NCSB #38428
                                        115 Market Street, Suite 221
                                        Durham, NC 27701
                                        919-899-9655
                                        Sam.pinero@oakcitylaw.com

# CERTIFICATE OF SERVICE

I, Samuel Pinero. attorney for DFWMM Holdings LLC, certify that on the 5th day of July 2019, I served a copy of the foregoing **Notice of Appeal** on the parties in interest by using the CM/ECF system which will provide electronic notification of the same to the following:

Attorney for the Debtor  
Kenneth M. Johnson, P.A.  
PO Box 21247  
Greensboro, NC 27420

Trustee in Bankruptcy  
Gerald S. Schafer  
220 Commerce Place  
Greensboro, NC 27401

**Bankruptcy Administrator:**

William P. Miller  
Bankruptcy Administrator  
101 South Edgerton Street  
Greensboro, NC 27401

This the 4th day of February 2019.

OAK CITY LAW LLP

/s/ Samuel Pinero II  
Samuel Pinero II

**SO ORDERED.**

**SIGNED this 21st day of June, 2019.**



Catharine R Aron
_____
UNITED STATES BANKRUPTCY JUDGE

---

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **Dennis Richmond,** | ) | **Case No. 17-11413** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |
| **DFWMM Holdings, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Adv. Pro. No. 18-02010** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Dennis Richmond and Proponent** | ) | |
| **Federal Credit Union,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### ORDER

Consistent with the memorandum opinion entered contemporaneously herewith, it is

ORDERED that Counts 1 and 2 of the Complaint are denied and judgment is entered in favor of

defendant Dennis Richmond.

[END OF DOCUMENT]

PARTIES TO BE SERVED


**Samuel Pinero, II**
Oak City Law LLP
115 Market Street Suite 221
Durham, NC 27701

**Kenneth M. Johnson**
701 E. Market St.
P. O. Box 21247
Greensboro, NC 27420

## William P. Miller
Bankruptcy Administrator
101 South Edgeworth Street
Greensboro, NC 27401

*Trustee*
**Gerald S. Schafer**
220 Commerce Place
Greensboro, NC 27401

**SO ORDERED.**

**SIGNED this 21st day of June, 2019.**



*Catharine R. Aron*

_____

UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Dennis Richmond,** | ) | **Case No. 17-11413** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |
| **DFWMM Holdings, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Adv. Pro. No. 18-02010** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Dennis Richmond and Proponent** | ) | |
| **Federal Credit Union,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

This adversary proceeding came before the Court for trial on May 16, 2019. Samuel

Pinero, II appeared on behalf of DFWMM Holdings, LLC ("DFWMM," or the "Plaintiff"), and

Kenneth Johnson appeared on behalf of Dennis Richmond (the "Debtor" or the "Defendant").

The Debtor was also present and provided testimony. After considering the testimony, the

arguments of the parties, and the record in this case, the Court finds that the debts at issue should

1

not be excepted from discharge, and further finds the Plaintiff's remaining requests for relief should be denied, with judgment entered in favor of the Debtor, for the reasons which follow.

JURISDICTION

The Court has jurisdiction in this proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 83.11 of the United States District Court for the Middle District of North Carolina. This is a core proceeding under 28 U.S.C. § 157(b)(2). The parties have consented to this Court's entry of a final judgment as to all matters raised in the pleadings, Consent Scheduling Memorandum, p. 2 [Doc. #23], and this Court has constitutional authority to enter final judgments herein.

BACKGROUND

(1) The Plaintiff instituted this adversary proceeding on March 23, 2018 [Doc. #1] (the "Complaint").

(2) The Complaint seeks to except two debts, arising from judgments rendered by the General Court of Justice of North Carolina, Superior Court Division, from the Debtor's discharge: (i) a claim for the July 21, 2014 judgment in case number 13 CVS 1321, in the amount of $46,850.00, plus costs and interest (the "2014 Judgment"), and (ii) a claim for the July 7, 2017 judgment in case number 17 CVS 165, in the amount of $152,324.41, plus attorney's fees, costs, and interest (the "2017 Judgment") (collectively, the request to except these debts from discharge shall be referred to as "Count 1").

(3) The Complaint alleges that the Plaintiff's claims for the 2014 and 2017 Judgments are nondischargeable under 11 U.S.C. §§ 523(a)(2) and (a)(6).

(4) Prior to the institution of the case which gave rise to the 2014 Judgment, the General Court of Justice of North Carolina, Superior Court Division, entered a judgment against the Debtor's spouse, Ms. Marion Jones-Richmond, in another related case, number 10 CVS 2984. In that case, the court found that, while in a position of trust and confidence with respect to a Ms. Lydia Leath (as her attorney-in-fact), Ms. Jones-Richmond had wrongfully transferred three pieces of property belonging to Ms. Leath (the "Properties") to herself. Thereafter, Ms. Jones-Richmond had also failed to appropriately distribute rental income from the Properties[1] to their rightful co-owners, Mr. John McLaurin and Ms. Flora Jones, after Ms. Leath's death. As a result, the court awarded the ancillary administratrix of Ms. Flora Jones' estate (the "Administratrix") compensatory damages in the amount of $176,061.00 and punitive damages in the amount of $55,000.00, plus costs and attorney's fees, for Ms. Jones-Richmond's acts of "constructive fraud and waste" (the "Jones-Richmond Judgment").

(5) Shortly after entry of the Jones-Richmond Judgment, the Administratrix commenced case number 13 CVS 1321 against the Debtor, alleging that Ms. Jones-Richmond had also fraudulently transferred rental income derived from one of the Properties to the Debtor under the guise of maintenance and upkeep fees for services performed on the Properties. The Administratrix alleged that the Debtor had not received the funds in good faith or for a reasonably equivalent value and requested damages against the Debtor under the North Carolina Fraudulent Transfers Act.

---

[1] Ms. Jones-Richmond apparently only received rental income from one of the Properties, but the Court found that she should have maintained another, such that it could have been rented.

(6) The Debtor failed to cooperate in that case.  As a discovery sanction, his answer and defenses were stricken. The court deemed the allegations of the complaint admitted and entered the 2014 Judgment against the Debtor by default.

(7) Later in 2014, in case number 10 CVS 2984, the court ordered the Debtor's spouse to produce certain property in partial satisfaction of the Jones-Richmond Judgment. She failed to meaningfully comply with the order and was found in contempt.  She was incarcerated.

(8) In order to resolve Ms. Jones-Richmond's contempt and satisfy: (i) the Jones-Richmond Judgment, and (ii) the 2014 Judgment (collectively, the "Underlying Judgments"), the Debtor and his spouse entered into a settlement agreement with the Administratrix on October 27, 2014 (the "Settlement Agreement").

(9) Under the Settlement Agreement, the Debtor and his spouse agreed to pay a total of $157,334.00 to DFWMM,[2] as well as to execute: (1) a promissory note and a security agreement with DFWMM,[3] and (2) a deed of trust in favor of DFWMM.

(10)   In exchange, the Administratrix agreed not to pursue execution against the Debtor and his spouse for so long as they remained current on payments under the note.  She also agreed to cause the Underlying Judgments to be marked as satisfied or to file a document acknowledging satisfaction of the judgments and canceling them upon payment of the settlement in full.

(11)   In the event of default, the agreement allowed the Administratrix "or her assignee" to continue with execution against the Debtor and his spouse's property.

---

[2] It is unclear to the Court why the Administratrix requested that the funds be paid to DFWMM.
[3] The note was not presented to the Court in this adversary proceeding.  It was, however, docketed in the Debtor's main bankruptcy proceeding.  *See* [Case No. 17-11413, Doc. #17].  The Court takes judicial notice of that document herein.  *See NC & VA Warranty Co. v. The Fidelity Bank (In re NC & VA Warranty Co., Inc.)*, 554 B.R. 110, 120-21 (Bankr. M.D.N.C. 2016) (explaining that the Court may take judicial notice of pleadings which directly relate to the matters herein).

4

The agreement also explained that the deed of trust and security agreement could be enforced to the extent of any remaining balance under the note.

(12)    After a default in payments under the note, DFWMM instituted case number 17 CVS 165 against the Debtor and his spouse.  The 2017 Judgment followed.  Under the 2017 Judgment, the court awarded $152,324.41, plus attorney's fees and costs, to DFWMM for breach of the note.  The judge assigned liability jointly and severally against the Debtor and his spouse and ordered that the terms of the security agreement be enforced.[4]

(13)    In response to the 2017 Judgment, the Debtor and his spouse filed motions to claim exempt property with the court in case number 17 CVS 165.  Both motions were denied.  The court specifically noted that, with respect to most of the items claimed by the Debtor, they had already been ordered sold by the court in case 10 CVS 2984.  In essence, there had already been a judicial determination that the items belonged to Ms. Jones-Richmond, rather than the Debtor.

(14)    The Complaint in this proceeding not only contains an objection to the nondischargeability of the 2014 and 2017 Judgments, but also requests an order dismissing the Debtor's bankruptcy or revoking his discharge ("Count 2").[5]

(15)    The Debtor has not yet received a discharge.  He filed bankruptcy on December 15, 2017.  The deadline to object to discharge was March 23, 2018.

(16)    In support of Count 2 of its Complaint, the Plaintiff asserts that: (i) the Debtor failed to make known to this Court that his exemptions were denied in case 17 CVS

---

[4] Whether or not the Debtor signed the Settlement Agreement and note under duress, rendering the agreement inoperable, as the Debtor claimed herein, was a matter for the court in case number 17 CVS 165.
[5] The Complaint included an additional count against Proponent Federal Credit Union.  That matter was resolved by an agreed stipulation of dismissal.  [Doc. #22].

165; (ii) the "Debtor misrepresent[ed] that is his [sic] not a sole proprietor of a business, when he does business as Dennis Richmond Trucking.  Debtor fail[ed] to list his income from that business;" (iii) the Debtor misstated his income more generally; (iv) the Debtor misstated that his debts are primarily consumer debts; (v) the Debtor failed to list equipment that he uses for his trucking and lawn mowing business; (vi) the Debtor failed to list the firearms he possesses; and (vii) the Debtor failed to list a Harley Davidson which he owns.

(17)    Prior to the initiation of this adversary proceeding, the Court was in fact unaware that the Debtor had claimed exemptions in a state court proceeding.

(18)    In response to question 12 of Part three of Official Form 101 and question 27 of Part 11 of his statement of financial affairs, the Debtor averred that he is not a sole proprietor.  However, on Schedule I, the Debtor noted his occupation as "Trucker-Sole Proprietor."

(19)    Schedule I discloses income for the Debtor in the amount of $2,675 per month. However, in response to question 4 of Part 2 of his statement of financial affairs, the Debtor stated that his gross income from operating a business from January 1, 2017 through December 15, 2017 was in the amount of $0.

(20)    The Debtor also stated, in response to question 16 of Part 6 of Official Form 101, question 6 of Part 3 of his statement of financial affairs, and question 7 of Part 4 of Official Form 106Sum, that his debts at filing were primarily consumer debts, or debts incurred primarily for personal, family, or household purposes.  The Debtor's bankruptcy was noticed as a no asset case; no claims were filed.  On his petition, the

Debtor listed only secured debts.  Of the $487,051.12 in secured debt that the Debtor

listed, $249,579.81 relates to the Underlying Judgments and the 2017 Judgment.

(21)    The Debtor's petition discloses no tools of the trade for the Debtor, aside from

guitars and a guitar amp;[6] it also reflects that the Debtor owns no firearms or

motorcycles.

(22)    At trial, the Debtor's testimony revealed little; the Debtor appeared to have

selective memory issues, particularly with respect to those questions posed by counsel

for the Plaintiff.  The Debtor's most common refrain throughout the proceeding was

that he "d[id] not know."

(23)    Even in instances in which the Debtor claimed to know the answer to certain

questions posed by counsel, such as when he stated that his spouse was not

represented by an attorney when held in contempt by the court in case 10 CVS 2984,

the order reflecting that finding clearly stated that his spouse was represented at the

time by attorney Bryan Ray.  As such, the Debtor's testimony was not only limited,

but also unreliable.

(24)    The Debtor was the only trial witness.

(25)    At the conclusion of trial, the Court took the matter under advisement.

DISCUSSION

The Court will address the Plaintiff's requests for relief in Counts 1 and 2 separately,

beginning with Count 1.

<u>Count 1: Nondischargeability of Debts</u>

Count 1 encompasses the nondischargeability of the 2014 and 2017 Judgments.[7]  Section

523 governs the dischargeability of debts in bankruptcy proceedings.  Under § 523(a)(2)(A), a

---

[6] The Court is unaware how these items would constitute tools of the trade.

7

discharge does not discharge an individual from any debt to the extent obtained by "false pretenses, a false representation, or actual fraud."  11 U.S.C. § 523(a)(2)(A).  Under § 523(a)(6) , a discharge also does not discharge an individual from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).

"The Plaintiff must prove that [a] debt is nondischargeable by a preponderance of the evidence[,] and exceptions to discharge should be strictly construed in favor of dischargeability in order to give Debtors the benefit of a fresh start."  *Boyd v. Loignon* (*In re Loignon)*, 308 B.R. 243, 249 (Bankr. M.D.N.C. 2004) (citations omitted).

### A. Standing

In determining whether a debt is nondischargeable, the Court must first consider whether a particular creditor has standing to contest dischargeability.  The Court will assess this threshold issue with respect to each judgment before turning to the merits of the objections.

The only evidence before the Court with respect to DFWMM's involvement with the Debtor is that DFWMM was included as a third-party beneficiary under the Settlement Agreement between the Debtor, his spouse, and the Administratrix.[8]  The Settlement Agreement makes no reference to DFWMM as the Administratrix's assignee for purposes of the Underlying Judgments,[9] and DFWMM presented no evidence at trial as to any assignments from the Administratrix.  The Underlying Judgments were awarded to the Administratrix, not to DFWMM.  DFWMM was merely to receive payments from the Debtor and his spouse under the

---

[7] The Settlement Agreement upon which the 2017 Judgment is based indicates that, as soon as the Debtor and his spouse defaulted in payments under the note, the Administratrix was entitled to resume execution of the Underlying Judgments.  Thus, the Court will address Count 1 with respect to both the 2014 and 2017 Judgments.

[8] Of course, as a result of the Settlement Agreement, DFWMM also received the note, security agreement, and deed of trust.

[9] The Administratrix agreed not to pursue execution against the Debtor and his spouse for so long as they remained current in payments under the note.  In the event of a default in payments under the note, the Administratrix—or her "assignee"—was granted permission to continue to execute against the Debtor's property.  DFWMM was not identified as an assignee.

8

note and Settlement Agreement.[10]  Thus, even if this Court finds that an assignee of claims

against a debtor has standing to prosecute objections to the dischargeability of certain debts, *see,*

*e.g.*, *Pazdzierz v. First Am. Title Ins. Co. (In re Pazdzierz)*, 718 F.3d 582, 586-90 (6th Cir. 2013);

*Boyajian v. New Falls Corp. (In re Boyajian)*, 564 F.3d 1088, 1090–93 (9th Cir. 2009); *Fed.*

*Deposit Ins. Co. v. Meyer (In re Meyer)*, 120 F.3d 66, 70–71 (7th Cir. 1997); *Sierra Chems., LLC*

*v. Mosley (In re Mosley)*, Ch. 7 No. 7-11-15299, Adv. No. 12-1166 T, 2013 WL 1137061, at *3

(Bankr. D. N.M. Mar. 19, 2013), DFWMM has not established that it is, in fact, the

Administratrix's assignee for purposes of the Underlying Judgments.  As such, the Plaintiff

cannot succeed with respect to its claim for the nondischargeability of the 2014 Judgment due to

a lack of standing.

However, the Court must come to a different conclusion with respect to the 2017

Judgment.  DFWMM was a party to the 2017 Judgment, which was rendered in its favor.  While

the agreement which gave rise to the 2017 Judgment settled claims held by the Administratrix,

DFWMM was designated as her third-party beneficiary under that agreement.  Courts have

consistently held that a third-party beneficiary of a settlement agreement between a debtor and

his or her ex-spouse has standing to commence a nondischargeability proceeding under 11

U.S.C. § 523(a)(5).  *E.g.*, *Manz v. Palomino (In re Palomino)*, 355 B.R. 349, 357-58 (Bankr.

S.D. Fl. 2006).  The Court sees no reason why the same logic should not apply in this instance,

particularly with respect to the exceptions to discharge at issue.[11]  Thus, the Court finds that the

---

[10] The security agreement also permitted DFWMM to execute against certain property of the Debtor in the event of a default in payments under the note.

[11] While some might argue that a claim for nondischargeability for fraud, for example, is wholly personal and may only be pursued by the creditor against whom the fraud was perpetrated, the Settlement Agreement which gave rise to the 2017 Judgment attempted to resolve actual judgments that the Administratrix had obtained against the Debtor and his spouse.  In the least, this Court believes that such a claim, based on actual judgments, may be pursued by a third-party beneficiary.

9

Plaintiff does, in fact, have standing to contest the nondischargeability of the 2017 Judgment, regardless of the extent to which it encompasses or relates to the 2014 Judgment.

   B.  <u>Dischargeability of the 2017 Judgment</u>

   Having found that the Plaintiff has standing to contest the dischargeability of the 2017 Judgment, the Court must next assess whether the Plaintiff has proven, by a preponderance of the evidence, that one of the aforementioned exceptions to discharge applies to the judgment.

   In requesting that the Court find its claim for the 2017 Judgment nondischargeable, the Plaintiff is requesting that the Court apply the elements of collateral estoppel to the judgment. The 2017 Judgment constitutes a judgment for breach of contract, or a breach of the note, and contains no findings upon which to deny dischargeability.  Nevertheless, the Court may look behind the judgment to determine whether the agreement giving rise to it settled any earlier claims for debts which may not be discharged in this proceeding.[12]  *See Archer v. Warner*, 538 U.S. 314, 318-22 (2003) (finding that a settlement agreement did not bar creditors from demonstrating that the debt which was settled arose out of false pretenses, a false representation, or actual fraud).

   The Settlement Agreement which gave rise to the 2017 Judgment attempted to resolve the claims against the Debtor and his spouse with respect to the 2014 Judgment and the Jones-Richmond Judgment.  Thus, the Court will assess the nondischargeability of the 2017 Judgment as it relates to each of those judgments in turn.

---

[12] While the Complaint only reads as an objection to the Debtor's claim based on the actual judgment, and not the events giving rise to the judgment, such that the Court's analysis on this topic, could, in fact, end at this point, the Court will in fact look behind the judgment in this case only to emphasize that the Plaintiff would not have succeeded on this issue, even if he had amended his Complaint to encompass the events which gave rise to the judgment.

### (1) The Jones-Richmond Judgment

With respect to the Jones-Richmond Judgment, a fatal flaw in attempting to classify the debt associated with it as nondischargeable in this proceeding is that the judgment was against the Debtor's spouse, rather than the Debtor.  "[C]ases that have attributed the wrongdoing of a party to a debtor have done so based on an agency theory. . . . Where no agency relationship exists, the courts have not generally imputed the wrongdoing of a nondebtor spouse to a debtor in holding a debt nondischargeable." *Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa)*, 258 B.R. 192, 198 (B.A.P. 9th Cir. 2001).  "Marital status alone does not create an agency relationship." *Boyd v. Loignon (In re Loignon)*, 308 B.R. 243, 250 (Bankr. M.D.N.C. 2004) (internal quotation omitted).  In this case, the Plaintiff provided no evidence to the Court that the Debtor's spouse was acting as his agent when she committed her acts of constructive fraud and waste.  Therefore, the debt attributable to the Jones-Richmond Judgment and reflected in the 2017 Judgment may be discharged in this bankruptcy proceeding.

### (2) The 2014 Judgment

Unlike the Jones-Richmond Judgment, the 2014 Judgment was, in fact, a judgment against the Debtor.  Thus, the Court must determine whether that portion of the 2014 Judgment incorporated into the 2017 Judgment has collateral estoppel effect in this proceeding.

When determining whether a state court judgment has preclusive effect in a bankruptcy proceeding, the Court must apply the forum state's law of collateral estoppel.  *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 19 (4th Cir. 1997) (citing *Hagan v. McNallen (In re McNallen)*, 62 F.3d 619, 624 (4th Cir. 1995)).  The 2014 Judgment was issued by the General Court of Justice of North Carolina, Superior Court Division.  Therefore, the Court must apply the North Carolina law of collateral estoppel in this case.

In *Sartin v. Macik*, 535 F.3d 284 (4th Cir. 2008), the United States Court of Appeals for the Fourth Circuit held that, under North Carolina law, a default judgment, entered as a discovery sanction against the debtor, did not have collateral estoppel effect in a nondischargeability proceeding. *Id.* at 286. *Sartin* remains controlling precedent on this issue; the Court is unaware of any subsequent North Carolina cases to address the same. Since the 2014 Judgment was a default judgment, entered as a discovery sanction, it has no collateral estoppel effect in this proceeding. As such, the Court is unable to rely on the findings in the 2014 Judgment in order to determine whether that portion of the 2017 Judgment which represents the 2014 Judgment should be deemed nondischargeable.

At trial, the Plaintiff presented no evidence with which to enable the Court to independently assess the dischargeability of the debt represented by the 2014 Judgment under the standards of §§ 523(a)(2)(A) or (a)(6). The Plaintiff merely submitted the judgment, asked the Debtor a few questions about the events which gave rise to the judgment without providing any supporting documents for the Court to assess, and the Debtor denied any wrongdoing.[13] Consequently, the Court concludes that the debt attributable to the 2014 Judgment may be discharged herein. The Court further concludes that Count 1 of the Complaint should be denied in its entirety.

<u>Count 2: Dismissal or Revocation of Discharge</u>

Count 2 of the Complaint requests that the Debtor's case be dismissed, or that his discharge be revoked, in light of certain information which was either included in or omitted from the schedules. The Debtor has yet to receive a discharge, and DFWMM initiated this proceeding on the last day to object to discharge. Therefore, the Court will assess the alternative

---

[13] Even if the Plaintiff had presented such evidence, the Court would have to decide whether a third-party beneficiary of a claim not sufficiently reduced to or contained within a judgment has standing to pursue a nondischargeability action under the exceptions to discharge at issue herein.

request for relief in Count 2 of the Complaint as a request to deny, rather than revoke, the Debtor's discharge.[14]  Moreover, because the Court has been offered no reason to dismiss the Debtor's case other than the allegations which relate to the reasons why his discharge should not be granted, the Court will focus its analysis of Count 2 on the objection to discharge.

Section 727 governs the granting of a discharge in a Chapter 7 proceeding.  "[D]ischarge of a debtor's debts is favored. . . .[']However, certain provisions of § 727 prohibit discharge for those debtors who 'play fast and loose with their assets or with the reality of their affairs.'[ '] " *Anderson v. Hooper (In re Hooper)*, 274 B.R. 210, 214 (Bankr. D. S.C. 2001) (quoting *Farouki v. Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir.1994) (quoting *In re Tully*, 818 F.2d 106, 110 (1st Cir.1987))).  A party objecting to discharge carries the burden of proof by a preponderance of the evidence.  Fed. R. Bankr. P. 4005; *Miller v. Young (In re Young)*, 578 B.R. 312, 318 (Bankr. M.D.N.C. 2017).

Under 11 U.S.C. § 727(a)(4), the Court shall grant the debtor a discharge, unless "the debtor knowingly and fraudulently, in or in connection with the case— (A) made a false oath or account."  *Id.*  To succeed in an action under § 727(a)(4), the movant must prove: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case."  *Robbins v. Haynes (In re Haynes)*, 549 B.R. 677, 686 (Bankr. D.S.C. 2016).

"A statement or omission, known to be false, in a petition, schedule or statement, constitutes a false oath for the purposes of § 727(a)(4)."  *Miller v. Washabaugh* (*In re Washabaugh*), 572 B.R. 141, 152 (Bankr. M.D.N.C. 2017).  Whether a statement or omission

---

[14] The Debtor also expressly consented to trial of the issue of whether he should, in fact, receive a discharge.  *See* Fed. R. Bankr. P. 7015; [Doc. # 28].

was made with fraudulent intent may be proven by circumstantial evidence, or by inferences based on all of the facts and circumstances of the case. *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir. 1987). However, if items were omitted or misstated in good faith, based upon the honest advice of counsel, then a finding of fraudulent intent may be negated. *Robinson v. Worley*, 540 B.R. 568, 578 (M.D.N.C. 2015), *aff'd*, 849 F.3d 577 (4th Cir. 2017).

In this case, the Debtor did make several false statements or omissions on his petition: (1) in response to question 12 of Part 3 of Official Form 101 and question 27 of Part 11 of his statement of financial affairs, the Debtor averred that he is not a sole proprietor, a statement clearly rebutted by the Debtor's own testimony and by Schedule I of his petition; (2) in response to several questions on his petition and statement of financial affairs, the Debtor stated that his debts are primarily consumer debts, a demonstrably false statement in light of the nature and amount of the debts in the case; (3) on his statement of financial affairs, the Debtor stated that his gross yearly income for the year of 2017 until the date of the petition filing was in the amount of $0, while at trial, he noted that his income during that time frame was, perhaps, more like $50,000; (4) on Schedule B of his petition, the Debtor failed to list a Harley Davidson titled in his name, a fact he admitted at the trial; and (5) on Schedule D of his petition, the Debtor failed to disclose the liens on his personal property in favor of DFWMM.[15]

---

[15] The Plaintiff also averred that: (1) the Debtor misstated his monthly income; (2) the Debtor failed to make known to this Court that his exemptions had been denied in case 17 CVS 165; (3) the Debtor failed to list certain firearms, household goods, and tools of the trade; and (4) the Debtor failed to list a Suzuki motorcycle. However, with respect to the income issue, the Plaintiff never provided any evidence for the Court to substantiate that claim. With respect to the exemptions issue, there is no place to discuss previous attempts to claim exemptions on the petition, and there are no allegations that the Debtor lied about his past at the §341 meeting. With respect to failing to list certain firearms and household goods (including the ride on lawn-mower), it appears that the firearms to which the Plaintiff is referring—as well as the lawnmower and other miscellaneous household goods—are items that were determined by the state court in case number 10 CVS 2984 to belong to the Debtor's spouse, not to him. The same appears equally likely with respect to the tools of the trade, including the air compressor. Finally, with respect to the Suzuki motorcycle, the Debtor stated at the trial that it was stolen; the Plaintiff presented no evidence substantiating the Debtor's ownership of it.

None of these statements or omissions, however, appear to have been made with fraudulent intent. The Debtor's misstatements with respect to his business were, more likely than not, a mere mistake, in light of the fact that the Debtor disclosed his sole proprietorship on Schedule I. It also appears that the Debtor's failure to disclose the liens on his personal property in favor of DFWMM was a mere mistake, as he had no difficulties in disclosing the Deed of Trust in favor of DFWMM.

Other misstatements appear to have been made upon the advice of counsel, including the declarations as to the primary nature of the debts in the case and the Debtor's gross income for 2017 until filing. Counsel should have discussed and evaluated the nature of the Debtor's debts with him, as a layperson would not necessarily have understood the terms "consumer" and "business" debts as they related to the debts in this case. Counsel also stated at the trial that the 2017 figure was derived from the Debtor's tax returns, seemingly himself confusing the terms gross and net income.

Finally, the Debtor's failure to list the Harley Davidson also appears to have been either unintentional or at the advice of counsel, who aided the Debtor in listing the debt to Harley-Davidson Credit Corporation and was seemingly aware that the Debtor did not believe he owned the vehicle, though it was titled in his name.[16]

Because the Plaintiff has failed to establish that the Debtor in fact made any misstatements or omissions on his petition with fraudulent intent, it has also failed to carry its burden of proving that the Debtor's discharge should be denied under § 727(a)(4). The Plaintiff

---

[16] The debt to Harley-Davidson appears on Amended Schedule D of the petition. [Doc. #13]. Schedule D is for creditors whose debts are secured by the Debtor's property. The description of the collateral states: "2014 Harley Davidson Road King . . . (Motor Cycle is driven by, maintained, & monthly payment made by Marvis D. Bigelow who also provided down payment)."

has further failed to establish any grounds upon which to dismiss the Debtor's bankruptcy proceeding.  Therefore, the Court finds Count 2 of the Complaint should also be denied.

CONCLUSION

For the above stated reasons, the Court finds that Counts 1 and 2 of the Complaint should be denied, with judgment entered in favor of the Debtor.  A separate order will be entered consistent with this memorandum opinion in accordance with Rule 7058 of the Federal Rules of Bankruptcy Procedure.

[END OF DOCUMENT]

PARTIES TO BE SERVED

**Samuel Pinero, II**
Oak City Law LLP
115 Market Street Suite 221
Durham, NC 27701

**Kenneth M. Johnson**
701 E. Market St.
P. O. Box 21247
Greensboro, NC 27420

# William P. Miller
Bankruptcy Administrator
101 South Edgeworth Street
Greensboro, NC 27401

*Trustee*
**Gerald S. Schafer**
220 Commerce Place
Greensboro, NC 27401