1

```
1        DFWMM Holdings LLC - 17-11413 - 7-19-19

2              UNITED STATES BANKRUPTCY COURT

3             MIDDLE DISTRICT OF NORTH CAROLINA

4    DFWMM HOLDINGS LLC v        .Adversary Case 18-02010
     RICHMOND ET AL.            .Lead Case No. 17-11413
5                               .Greensboro, NC
     . . . . . . . . . . . . . . .July 19, 2019
6
              BEFORE THE HONORABLE CATHARINE R. ARON
7                 UNITED STATES BANKRUPTCY JUDGE
             [21] Validity, priority of extent of lien or
8                    other interest in property
             [41] Objection/revocation of discharge -
9                         727(c)(d)(e)
             [62] Dischargeability - 523(a)(2), false
10        pretenses, false representation, actual fraud
            [68] Dischargeability - 523(a)(6), willful and
11                       malicious injury
12   APPEARANCES:

13   For DFWMM Holdings, Inc,
     ROBERT E. FIELDS III
14
     Plaintiff:
15   SAMUEL PINERO II
     Oak City Law LLP
16   702 North Blount Street
17   Raleigh, NC  27604

18   For Bankruptcy Administrator:
     WILLIAM P. MILLER
19   101 South Edgeworth Street
     Greensboro, NC  27401
20
     For Proponent Federal Credit Union,
21   DIRK W. SIEGMUND
22
     Defendant:
23   Ivey, McClellan, Gatton &
     Siegmund LLP
24   100 S. Elm Street
     Suite 500
25   P.O. Box 3324
     Greensboro, NC  27402
```

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2

3     For Dennis Richmond,
      KENNETH M. JOHNSON
      Defendant:701 E. Market Street
4     P.O. Box 21247
      Greensboro, NC  27420
5

6     Transcription Service:
      Associated Reporters Int'l.,   Inc.
7     (800) 523-7887
      Proceedings recorded by electronic sound recording;
8     transcript produced by transcription service.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          THE COURT CLERK:  DFWMM Holdings LLC versus

3     Richmond.  This is a trial to determine the

4     dischargeability of debt and objection to discharge.

5     (unintelligible) Pinero and for the defendants,

6     Kenneth Johnson.

7          THE COURT:  Good morning.

8          MR. SAMUEL PINERO:  Good morning.

9          MR. DIRK SIEGMUND:  Good morning, Your Honor.

10         MR. KENNETH JOHNSON:  Good morning, Your Honor.

11         THE COURT:  All right.  Are there any

12    preliminary matters that we need to address?

13         MR. JOHNSON:  Yes, ma'am, there is, Your Honor.

14    At two o'clock yesterday, I began a hearing that was

15    scheduled to go for an hour and a half

16    (unintelligible) utilizing your court room and at

17    five o'clock when we had to be out, there were still

18    three witnesses who had not been called, so that

19    matter was supposed to resume this morning at nine

20    thirty, but I begged off and I was scared that would

21    be a little presumptuous since this matter is

22    scheduled at nine thirty today, but what they did was

23    scheduled at two o'clock (unintelligible).  This

24    matter is projected to last all day.

25    (unintelligible) snag or a conflict, I wanted to

1              DFWMM Holdings LLC - 17-11413 - 7-19-19

2       bring that to the Court's attention.  I would of

3       course adhere to whatever the Court feels is best

4       under those circumstances, but I just wanted to make

5       you aware of this situation.

6            THE COURT:  I mean is there a chance that we

7       could finish by one thirty today if we just go

8       straight through?

9            MR. JOHNSON:  I would hope so.

10            THE COURT:  All right.  Will that give you --

11       Mr. Johnson, will that give you enough time?

12            MR. JOHNSON:  Yes, ma'am.  I can

13       (unintelligible).

14            THE COURT:  If we -- if we don't finish by one

15       thirty, we'll -- we'll take a recess of this matter

16       and then we'll have to schedule a day that we can

17       conclude it --

18            MR. JOHNSON:  That's fine.

19            THE COURT:  -- but I'll be glad to go straight

20       through until one thirty.

21            MR. JOHNSON:  That's fine.

22            THE COURT:  I don't want to rush anyone or take

23       away anyone's opportunity.  I'm just trying to -- I'm

24       sure you've got people over there waiting.

25            MR. JOHNSON:  There -- there will be -- well, as

1          DFWMM Holdings LLC - 17-11413 - 7-19-19
2      it turns out, they will be at one thirty.  That's
3      when I asked them to reassemble so we can have a
4      little --
5           THE COURT:  Okay.
6           MR. JOHNSON:  -- two p.m. briefing.
7           THE COURT:  All right.  Let's just see what we
8      can get done, but I don't want anyone to feel rushed.
9      Okay?
10          MR. PINERO:  Thank you, Your Honor.
11          THE COURT:  Opening statements?  Do you want to
12     have them?  It's up -- it's entirely up to you.
13          MR. PINERO:  Your Honor, I don't know that
14     that's necessary.
15          THE COURT:  Okay.
16          MR. PINERO:  There's only two little issues here
17     and we can go through those.
18          THE COURT:  All right.  Then we will proceed.
19          MR. PINERO:  All right.
20          THE COURT:  Thank you.
21          MR. PINERO:  Your Honor, we'd like to call
22     Dennis Richmond to the stand.
23          THE COURT:  Sir, if you could come up please.
24     You're going to be placed under oath.  You may take
25     the oath by affirming or swearing upon the bible.  Do

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     you wish to swear or affirm?

3          MR. DENNIS RICHMOND:  Affirm.

4          THE COURT:  Raise your right hand please?  Just

5     raise your right hand.  Do you solemnly affirm the

6     testimony you're about to give in this proceeding

7     shall be the truth, the whole truth, and nothing but

8     the truth this your solemn affirmation?

9          MR. RICHMOND:  Yes.

10          THE WITNESS; DENNIS RICHMOND; Sworn.

11          THE WITNESS:  Yes.

12          THE COURT:  You can take the witness stand.

13          MR. PINERO:  Your Honor, if I may, I have

14     notebooks with exhibits in them.  May I approach?

15          THE COURT:  Yes.

16          MR. PINERO:

17          DIRECT EXAMINATION

18          BY MR. PINERO:

19          Q.   Mr. Richmond, can you state your name and

20     address for the record?

21          A.   Dennis Richmond.  (unintelligible).

22          THE COURT:  Sir, please speak into the

23     microphone please.

24          A.   (Cont'g) 338 Baldwin Road, Burlington.

25          BY MR. PINERO:  (Cont'g)

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          Q.   Okay.  Mr. Richmond, do you live there

3     alone?

4          A.   Yes.

5          Q.   And what's your occupation?

6          A.   Truck driver.

7          Q.   Do you have your own business?

8          A.   Yes.

9          Q.   Do you know where Marian Jones-Richmond is?

10         A.   No, I don't.

11         Q.   Do you know where she lives?

12         A.   No, I don't.

13         Q.   When was the last time you spoke to her?

14         A.   I don't know.

15         Q.   Was it in the last month?

16         A.   I don't know.  I don't remember.

17         Q.   Was it over a year ago?

18         A.   I don't remember.

19         Q.   Can you turn to tab one of the notebook I

20    gave you?  I'm going to represent to you that this is

21    a copy of -- a true copy of some -- a file at the

22    clerk of Superior Court, Seventeen C.V.S. one sixty-

23    five.  Are you familiar with that case?

24         A.   I think I might need you -- someone needs

25    to show me what page you're on because I'm looking at

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     page one and I didn't see what you just spoke.

3          MR. PINERO:  If I may approach the witness, Your

4     Honor?

5          THE COURT:  Yes, you can.

6          A.   Do I remember it?

7          BY MR. PINERO:  (Cont'g)

8          Q.   Yes, do you remember that case?

9          A.   No, I don't.

10         Q.   Turn -- turn to the second page.  It says

11    doc twenty-seven dash one.

12         A.   Yes, I see that.

13         Q.   Do you recognize this order?

14         A.   I don't remember.

15         Q.   Well, Mr. Richmond, you -- you were

16    involved in two different lawsuits against -- one

17    against the Estate of Flora Jones and one against

18    DFWMM.  Do you remember -- recall those two lawsuits?

19         A.   No, I don't -- I don't -- I don't remember.

20    I -- I don't know.

21         THE COURT:  Sir, I'd like to remind you that you

22    are under oath --

23         THE WITNESS:  Yes, ma'am.

24         THE COURT:  -- and I'd like for you to -- to use

25    the best of your ability to recall events.

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          THE WITNESS:  I -- I don't know -- what -- what

3     I'm saying, I don't -- I don't know the law as well

4     to say --.

5          THE COURT:  He's not asking you about what the

6     law is.  He's -- he's asking you if you remember or

7     if you've seen this order before.

8          THE WITNESS:  I can't -- I can't remember that

9     I've seen this order.  I don't remember.

10         BY MR. PINERO:  (Cont'g)

11         Q.   Well, Mr. Richmond, let's talk about what

12    you do remember.  Do you remember a lawsuit against

13    you personally by the Estate of Flora Jones back in

14    2013?

15         A.   A lawsuit against me for what?

16         Q.   For fraudulent transfer.

17         A.   Fraudulent transfer?  I don't remember.

18         Q.   Do you recall that your wife was sued for

19    rents and that you came in and testified that she

20    paid you to mow the lawn for years and years -- do

21    you recall that?

22         A.   I think so.

23         Q.   And do you recall us getting -- suing you

24    saying that those transfers that she gave to you were

25    fraudulent?

1      DFWMM Holdings LLC - 17-11413 - 7-19-19

2          A.   Okay.  May I -- okay.  I do remember that

3      Bob Hossel was their (unintelligible) and he told the

4      Court that that was no credibility that I was paid

5      and the invoices that you had said there was not

6      receipts.  I do remember that, but you said that it

7      was not receipts and on the invoice was -- I think it

8      was forty-four thousand, but you said that there was

9      nothing received, and Bob Hossel told the Court that

10     there was no credibility that Dennis Richmond was

11     paid.

12         Q.   So are you saying that Bob Hossel said that

13     you were lying?

14         A.   I'm saying that Bob Hossel said that there

15     was no credibility that Dennis was paid.  He told the

16     Court that and as well as you said that the invoices

17     was not receipts.

18         Q.   Mr. Richmond, didn't you testify that you

19     were paid in that lawsuit?

20         A.   I don't -- I don't remember, but I do

21     remember that Bob Hossel said and what you said.

22         Q.   Were you -- were you paid by your wife

23     monies to mow the lawn?

24         A.   I was paid.

25         Q.   And you testified that you were paid.

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     Correct?

3          A.   (unintelligible).  I was paid.

4          Q.   But you testified that you were paid?

5          A.   I was paid.

6          Q.   That's a yes?

7          A.   Yes, I was paid.

8          Q.   And the referee, Bob Hossel, you mentioned

9     Bob Hossel, he's the referee in that case?

10         A.   Yes.

11         Q.   And he found that you were not credible?

12         A.   Credible.

13         Q.   Okay.

14         A.   And you as well said the invoices was not

15    receipts.

16         Q.   And then we filed a lawsuit thirteen C.V.S.

17    thirteen twenty-one, Kathy Laverne Pinero versus

18    Dennis Richmond.  Do you recall that lawsuit in 2013?

19         A.   No.

20         Q.   Can you turn to tab three?  Can you look at

21    that first page on that tab, does this refresh your

22    recollection about this lawsuit?

23         A.   (unintelligible).

24         MR. PINERO:  If I may approach the witness, Your

25    Honor?

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          THE COURT:  Yes, sir.

3          BY MR. PINERO:  (Cont'g)

4          Q.   Does that page in front of you refresh your

5     recollection about this lawsuit filed against you?

6          A.   (unintelligible).

7          Q.   Okay.  Can you turn to the next page and

8     it's -- on the top it says doc twenty-seven dash

9     three, do you recall getting this summons?

10         A.   I -- I'm looking at dash twenty-seven dash

11    two.

12         Q.   I apologize.  Doc twenty-seven dash three,

13    page two of sixty-two.  Is that what it says at the

14    top?

15         A.   Yeah, I think dash twenty-seven dash two.

16         Q.   Do you recall getting that civil summons?

17         A.   It's not -- no.

18         MR. PINERO:  May I approach the witness, Your

19    Honor?

20         THE COURT:  Yes.

21         BY MR. PINERO:  (Cont'g)

22         Q.   Can you look at that document, dash twenty-

23    seven -- let me see, doc twenty-seven dash three,

24    page two of sixty-two?  Do you recall getting that

25    civil summons?

DFWMM Holdings LLC - 17-11413 - 7-19-19

1

2      A.   No.

3      Q.   I'm sorry.  I didn't hear you.

4      A.   No, I don't.

5      Q.   Okay.  But you were served, and you lost

6  this lawsuit.  Correct?

7      A.    I -- something that I remember is that it

8  was said that I redacted my social security number --

9  redacted or something and I think that's if I can

10  remember that, that's what happened, saying that I

11  redacted my social security number.

12      Q.   And you recall participating in this

13  lawsuit?

14      A.    I think -- yes.

15      Q.   And if you can go to tab two, the first

16  page on tab two, go to page two of that tab and this

17  is a lawsuit against your wife.  Correct?

18      A.    I don't know what page you're talking

19  about.

20      MR. PINERO:  May I approach, Your Honor?

21      THE COURT:  Yes.  Mr. Richmond --

22      THE WITNESS:  Yes, ma'am.

23      THE COURT:  -- are you -- are you on page two of

24  that order?

25      THE WITNESS:  Yes, ma'am.

DFWMM Holdings LLC - 17-11413 - 7-19-19

THE COURT:  Can you read the first paragraph please?

THE WITNESS:  This cause comes before the Court (unintelligible) notice at November 6, 2017 (unintelligible) session.

THE COURT:  That's fine.  That's fine.  That's all I need.  Thank you.

BY MR. PINERO:  (Cont'g)

Q.  You appeared for this order.  Correct?

A.  I -- I don't -- it's been -- I don't know.

Q.  The second sentence says plaintiff's counsel and Dennis Richmond appear.  Is that right?

A.  I don't see that.  I see plaintiff, Dennis Richmond, appeared -- defendant failed to appear.

Q.  Yes, and the defendant is your wife.  Correct?

A.  Yes.

Q.  Okay.  So this is the -- I'm going to represent to you that this is the first lawsuit that was filed against your wife for what we allege was -- what my clients allege was taking some property, two pieces of real property, renting it, and then keeping the money.  Do you remember that lawsuit?

A.  No, I wasn't even a part of a lawsuit.

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          Q.   But you appeared in that lawsuit.  Right?

3          A.   I appeared there, but I wasn't a part of

4     it.  I wasn't.

5          Q.   Okay.  But do you --?

6          A.   There was some kind of way that you all

7     drug me in it.  I wasn't -- I wasn't a part of it.

8          Q.   But do you recall that lawsuit?

9          A.   I think I remember, but I wasn't a part of

10    it because I had my property (unintelligible).

11         Q.   Okay.  So in that lawsuit, do you recall

12    testifying to receiving funds from Marian Jones-

13    Richmond?

14         A.   For what?

15         Q.   For mowing the lawn.

16         A.   I just answered that question.

17         Q.   So that's a yes?

18         A.   I just answered it before when you asked me

19    had I -- was I paid.

20         THE COURT:  Sir, I need you to answer the

21    question please.

22         A.   Yes.

23         BY MR. PINERO:  (Cont'g)

24         Q.   Yes.  And then that lawsuit resulted in the

25    other lawsuit that -- and the Court found that you --

1    DFWMM Holdings LLC - 17-11413 - 7-19-19

2    that your wife gave you that money fraudulently to

3    keep it away from her creditors.  Didn't -- didn't --

4    ?

5         A.   No, no, sir, no, no.

6         Q.   The -- the Court didn't find that?

7         A.   I don't know if the Court found it or not,

8    but that was -- that wasn't the case.  She didn't

9    give me any money to  -- I just got paid for mowing

10   the yard.

11        Q.   Okay.  Then after that happened, my client

12   received orders to get some of your wife's property -

13   - personal property.  Correct?  Do you remember that?

14        A.   I think so.

15        Q.   And when we tried to get your wife's

16   property, you said it was your property and you

17   wouldn't -- you wouldn't hand it over.  Isn't that

18   right?

19        A.   It was my property.

20        Q.   Okay.  But it's correct that you wouldn't

21   let us collect that property?

22        A.   I told the Court, Judge Orlando Hudson I

23   think is his name, (unintelligible), I think that's

24   what it was.  That property was mine as I said before

25   I owned the property before (unintelligible).  I

1

2    owned that property.

3        Q.   So --?

4        A.   So there was no way that the property was

5    hers.  It was mine.  It belonged to me.  It was the

6    way that you all did it and I -- and like I said

7    before, I don't know the law.  I don't know how you

8    did it, but -- but you did it.  That's what happened.

9        Q.   And -- and you agreed to hand over that

10    property prior to the entry of this order that you're

11    looking at here?

12        A.   I don't know.  I don't know if -- prior to

13    this one, I don't know.  All I know is that I told

14    Judge Orlando Hudson for you to come and get it.

15        Q.   Isn't that the judge that signed this

16    order?

17        A.   Who?  Hudson?

18        Q.   Yes, look at the next page.

19        A.   Yeah, Judge -- that's when I told him for

20    you to come and get it.

21        Q.   But he also told you that we could come and

22    get it.  Correct?

23        A.   Yeah, he told -- yeah, you supposed -- you

24    was supposed to come and get it -- get the -- get the

25    property.  You came -- you send one -- one -- I don't

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     know the guy's name that came there to pick it up.

3     He didn't take it.  I told him to get it, take it,

4     wouldn't do it.

5          Q.   Let's -- let's keep going to three pages in

6     to page five of thirty-six and I'll help you find

7     that.

8          MR. PINERO:  If I may approach, Your Honor, the

9     witness?

10          THE COURT:  Yes, sir.

11          BY MR. PINERO:  (Cont'g)

12          Q.   Do you recognize that order on page four?

13          UNIDENTIFIED MALE:  I'm sorry.  Can you repeat

14     that page please?

15          MR. PINERO:  It's page four of thirty-six of doc

16     twenty-seven dash two.  It's under tab two.

17          UNIDENTIFIED MALE:  All right.  Let -- let me

18     make a suggestion that might make this go a little

19     smoother.  If you would use the page number, the tab

20     of course, but the page number in the lower right-

21     hand corner, it probably will help us all to keep --

22     keep up with this especially (unintelligible).

23          MR. PINERO:  Okay.  I was trying to use the --

24     the document numbers for the judge.

25          UNIDENTIFIED MALE:  No, the document number is -

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     - is fine, but I'd say more consistently --.

3          MR. PINERO:  It also says Plaintiff's Four at

4     the bottom.

5          BY MR. PINERO:  (Cont'g)

6          Q.   Do you recognize that order?

7          A.   No, I don't because when this was going on,

8     I was not looking at these papers.  I wasn't.

9          Q.   And the fourth paragraph down it talks

10    about the live testimony of her husband, Dennis

11    Richmond.  Do you see that?

12         A.   On the same page?

13         Q.   Yes.

14         A.   I don't remember.

15         Q.   But do you see it on the page that it says

16    that you were there -- that you testified?

17         A.   (unintelligible).

18         Q.   Was that a yes?

19         A.   I don't -- I'm not -- I'm not sure because

20    like I said it's been so long, I mean I -- I been on

21    my medication.

22         Q.   Are you on -- on some medication now that

23    would affect your ability to testify here today?

24         A.   No.  No, I'm not now.

25         Q.   What kind of medication are you on?

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          A.   I'm taking a -- I can't think of the name

3     of it.

4          Q.   What's it treat?

5          A.   Post-Traumatic Stress -- P.T.S.D. and that

6     was -- that was -- it was brought to the Court's

7     attention when we was in court.  I had -- it was --

8     it was an order from the doctor.

9          Q.   When you say you're on medication, what --

10    what do you mean?  Is that affecting your

11    recollection?

12         A.   I don't -- I don't -- at the particular

13    time, when I was on the medication, I don't -- I

14    don't -- I don't remember because I just don't -- I

15    don't remember this.  All I know is I wasn't doing

16    the reading of this.  I wasn't taking this.  This

17    here was something that was during -- when my wife

18    and I was together.  I don't -- I wasn't looking at

19    this.

20         Q.   Okay.

21         A.   She was the one that was doing this not --

22    not me.

23         Q.   Okay.  Is it affecting your -- is the

24    medication affecting your recollection or is it --

25    what did it affect your testimony then?

1       DFWMM Holdings LLC - 17-11413 - 7-19-19

2           A.   At that particular time, I don't know

3       because the doctor had given me -- had given me a

4       note to give to the judge and he -- he disregarded

5       it.

6           Q.   Okay.  Can you turn to the next page?  It

7       says plaintiff's zero zero zero zero zero five.  On

8       the bottom is doc twenty-seven dash two page five of

9       thirty-six?

10          A.   Okay.

11          Q.   Paragraph four, the second paragraph down

12      is numbered four.  Are we on the same paragraph?

13          A.   Okay.  Do you want to read it?

14          Q.   Does that say the Stevens' Order found

15      there is evidence of record of concerted action by

16      defendant and her husband to hinder and delay her

17      creditors?

18          A.   That's what it says.

19          Q.   And that defendant's noncompliance is

20      willful, deliberate, intentional, and with a bad

21      faith disregard for the authority of this court and

22      the law.  Correct?

23          A.   I don't understand that.

24          Q.   Do you understand that the defendant is

25      your wife, Marian Jones-Richmond?

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          A.   Yes.

3          Q.   Do you understand that her husband is you?

4          A.   Yes, and she was my wife.

5          Q.   Can you move to the -- go to the next page?

6     Paragraph number twelve is the fourth full paragraph

7     down.  It starts out Judge Stevens' order.  Are you

8     there on that paragraph?  The court notes that there

9     is evidence of record of concerted action by

10    defendant and her husband to hinder and delay her

11    creditors including a judgment against Dennis

12    Richmond in Alamance County Superior Court, case

13    number thirteen C.V.S thirteen twenty-one, to recover

14    funds fraudulently transferred to him by defendant to

15    hinder her creditors.  Did I read that right?

16         A.   I don't have anything -- I didn't have

17    anything to do with this.

18         Q.   But I read that right?

19         A.   I didn't have anything to do with it.  I

20    mean, you know, it was passed down.  I didn't have

21    anything to do with it and the way the Court did me,

22    they did it that way.  I didn't have anything to do

23    with this lawsuit.  I wasn't even part of it.

24         Q.   And the --/

25         A.   I live at 338 Baldwin Road.  That's my --

1    DFWMM Holdings LLC - 17-11413 - 7-19-19

2    that's my property.  This right here is over there on

3    Day Street [phonetic spelling].  I don't live over

4    there.  This is the property your grandmother and

5    auntie -- it's your people's property and you asked

6    me about something that I don't even know anything

7    about.  The only thing that I did was mow the yard

8    and all this other stuff that you got right here in

9    front of me, I don't know anything about it.  You

10   asked me about this right here, I don't know.  This -

11   - this is your property.  This is the -- this -- this

12   is Lydia Leath property that you're asking me about.

13       When I was married to your aunt, you asked me

14   was there money that she gave me?  No, I worked for

15   money.  I worked for money and this is your property.

16   This is your thing and you dragged me in it.  That's

17   what you did.  You -- you feel you drug me into this

18   saying that I was -- it was -- it was a fraudulent

19   transaction, but it wasn't.  You said it was forty-

20   eight thousand dollars and it wasn't forty-eight

21   thousand dollars.  It was twenty-four thousand

22   dollars on the invoices that I -- that we gave you

23   that you said that was not receipts.  It was twenty-

24   four.  Phil [phonetic spelling] said you know how the

25   lawyers add up.  We don't do it right.  That's what

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     he stated.  That's what he said.  He said that.  It

3     was twenty-four thousand on the invoices.

4          Q.   In that paragraph, defendant is your wife.

5     Correct?

6          A.   Yes.

7          Q.   And her husband you understand is you?

8          A.   Yes, ma'am.

9          Q.   And that Dennis -- judgment against Dennis

10    Richmond is you.  Right?

11         A.   It's because the way you all had did it.  I

12    wasn't a part of it.  You did it like this.  You drug

13    me in it and take my property.

14         Q.   So that's a yes?

15         A.   I don't know what you want to call it, but

16    that's what you did.

17         Q.   That Dennis Richmond is you?

18         A.   This -- that's me.

19         Q.   And then after -- at some point, your wife

20    went to jail for failing to -- to give us some

21    property.  Correct?

22         A.   I think so.

23         Q.   And you helped get her out.

24         A.   That's right.

25         Q.   And you did that by signing a settlement

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     agreement?

3          A.   It was under duress.

4          Q.   Why?  Because your wife was in jail?

5          A.   Because the property that you all wanted

6     her to give away was my property and you all first

7     put her in jail and that's how it happened.  We was -

8     - I was under duress.  She was under duress.  She was

9     in jail.

10          Q.   What's that property that's your property?

11          A.   338 Baldwin Road.

12          Q.   But this was personal property that she had

13     to hand over.  Correct?

14          A.   My gun, my sword, my CB radio, other --

15     other things that belonged to me.  They was -- they

16     was mind.

17          Q.   Any of your business equipment?

18          A.   Yes.

19          Q.   What?

20          A.   I can't name them all, tools.

21          Q.   What else?

22          A.   I can't name them all.  I don't know.

23          Q.   Big lawn mower?

24          A.   Yes.

25          Q.   Was it -- was it a good lawn mower?  What

1              DFWMM Holdings LLC - 17-11413 - 7-19-19

2         kind of lawn mower was it?

3              A.   I don't know.  It's been so long.

4              Q.   Do you still have it?

5              A.   No.

6              Q.   Well, what happened to the lawn mower?

7              A.   I don't know.  We had a flood.  It got

8         flooded and it's been towed once or twice.

9              Q.   It was a ride on lawn mower?

10             A.   Push.

11             Q.   Didn't you also have a ride on lawn mower?

12             A.   Yes.

13             Q.   And was that for your business?

14             A.   Yes.

15             Q.   And where's that ride on lawn mower?

16             A.   It's still there.

17             Q.   It's still at your house?

18             A.   Yeah.

19             Q.   How much is that worth?

20             A.   I don't know.  I don't know.

21             Q.   If you had to buy one, how much would it

22        cost?

23             A.   I don't know.

24             Q.   How big is it?

25             A.   I don't know.

1    DFWMM Holdings LLC - 17-11413 - 7-19-19

2        Q.   What kind of jobs do you take it on?  What

3    kind of jobs?

4        A.   I don't take it on jobs.

5        Q.   You said it's for your business -- the ride

6    on lawn mower?

7        A.   I meant my property.

8        Q.   You -- I'm sorry.  You -- can you say that

9    again?

10       A.   I was mowing my property with it and I was

11   mowing the property with it.  It's the one that

12   you're speaking about over on Day Street.

13       Q.   And it's -- it's an industrial sized lawn

14   mower?

15       A.   I'm not sure.  You took pictures of it.

16       Q.   How many guns do you have?

17       A.   I'm not sure.

18       Q.   More than two?

19       A.   Maybe.

20       Q.   Any big tool -- other kind of equipment

21   that you use for your business?

22       A.   (unintelligible).

23       Q.   Big air compressor, do you have one of

24   those?

25       A.   Uh-huh.

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          Q.   Is that a yes?

3          A.   Marriage property.

4          Q.   And is that used for your business?

5          A.   Yes.

6          THE COURT:  Sir, how do you use an air

7     compressor in your business?  I thought you were a

8     trucker?

9          THE WITNESS:  I am a trucker.  I don't know why

10    he had to (unintelligible).

11         THE COURT:  How do you use an air compressor as

12    a trucker?

13         THE WITNESS:  Okay.  If my tires go flat and I

14    need to take it up, I use the -- I reach to take it

15    out and put air in the tires.

16    BY MR. PINERO:  (Cont'g)

17         Q.   You still have the guns at your house?

18         A.   Yes.

19         Q.   Do you still have the tools -- the air

20    compressor?

21         A.   Yes.

22         Q.   How about the other tools that you use for

23    your business?  Do you still have all of them at your

24    house?

25         A.   I don't know what you're talking about --

1       DFWMM Holdings LLC - 17-11413 - 7-19-19

2    other tools.

3        Q.   You said you had tools and a CB radio and a

4    sword.

5        A.   Yes.

6        Q.   So the tools that you just mentioned, do

7    you have them at your house?

8        A.   They in my truck.  I told you that I got

9    flooded.  A lot of the stuff got washed away.

10        Q.   Mr. Richmond, can you turn to tab eight?

11    And on tab eight, I'll probably help you, but we're

12    going to go down to page thirteen of fifty-three on

13    the top.  It's doc one, page thirteen of fifty-three.

14    Let me see if I can --.

15        MR. PINERO:  If I may approach, Your Honor?

16        THE COURT:  Yes.

17        UNIDENTIFIED MALE:  You said doc one --?

18        BY MR. PINERO:  (Cont'g)

19        Q.   Mr. Richmond, is this from your petition

20    for bankruptcy?

21        A.   (unintelligible).

22        Q.   And do you see the number ten -- the top

23    sentence?

24        A.   Yeah.

25        Q.   And that says firearms and you checked no.

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     Is that correct?

3          A.    I didn't check it.

4          Q.    Can you go to the next page and that says

5     page fifteen of fifty-three of doc one of your

6     petition?

7          A.    Okay.  What --?

8          Q.    It's the next page.

9          MR. PINERO:  May I approach the witness, Your

10    Honor?

11         THE COURT:  Yes.

12         A.    Okay.  I have it.

13         BY MR. PINERO:  (Cont'g)

14         Q.    And number thirty-seven, do you own or have

15    any legal or equitable interest in any business-

16    related property, and you checked no.  Isn't that

17    right?

18         A.    I don't -- I don't remember this.

19         Q.    But you do have interest in business

20    related property.  Correct?

21         A.    I don't (unintelligible) business related

22    property.

23         Q.    Property that you use for your business.

24         A.    Like what?

25         THE COURT:  Sir, you don't get to ask him

1      DFWMM Holdings LLC - 17-11413 - 7-19-19

2    questions.  He gets to ask them of you.

3         THE WITNESS:  Okay.  I don't know what he's

4    speaking about business related property.

5         BY MR. PINERO:  (Cont'g)

6         Q.   If you can go to tab one and it's on the

7    bottom right corner, it says plaintiff zero zero zero

8    one one zero and it -- on the top it's page twelve of

9    twenty-seven.  Are you at that page?

10        MR. PINERO:  If I may approach the witness, Your

11   Honor?

12        THE COURT:  Yes.

13        BY MR. PINERO:  (Cont'g)

14        Q.   Do you recognize this document?  Is that

15   your handwriting on it?

16        A.   I don't know.

17        Q.   Can you go back to page one o seven, one o

18   nine, one o eight, one o seven?  And is that -- does

19   that document say Motion to Claim Exempt Property at

20   the top?  Is that a yes?

21        A.   That's what it says Motion to Claim

22   Exemption.

23        Q.   Yes.  Is this your Motion to Claim

24   Exemption that you filed in this case?

25        A.   Like I said before, I don't know anything,

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     you know, I don't know.

3          Q.   Okay.  Go to page one o nine, two pages

4     forward.  Is that your signature on that page?

5          A.   Yeah, it look like it.

6          Q.   It does look like it?

7          A.   Uh-huh.

8          Q.   Twice signed?

9          A.   No.  No, this is not my handwriting.

10         Q.   So whose handwriting is that?

11         A.   I don't know.

12         Q.   That -- that's not your signature there?

13         A.   It doesn't look like it.

14         Q.   Can you go forward to page one seventeen?

15    And is your signature on that page?

16         A.   It's my name, but I don't know if it's my

17    signature without -- I don't think I write my name

18    like that.

19         Q.   It's notarized.  Correct?

20         A.   Yes.

21         Q.   Going back to page one o seven, this -- I'm

22    going to represent to you that this is a Motion to

23    Claim Exempt Property that was filed in the lawsuit

24    seventeen C.V.S. one sixty-five against you and your

25    wife and it purports to be signed by you.

1

2      A.   Page one o what?

3      Q.   One o seven and on page one ten --

4 Plaintiff one ten, so go forward three pages.  You

5 list two thousand dollars' worth of equipment there

6 for your business.  Is that correct?

7      A.   That's what it says.

8      Q.   Can you go forward to page one fourteen --

9 Plaintiff one fourteen which is doc twenty-seven on

10 page sixteen of twenty-seven?

11     A.   Hold on.  You said there was -- you said on

12 the property did I claim how much?  On page one ten?

13 Go back to one ten.

14     Q.   You claimed two thousand dollars under

15 paragraph ten worth of business property.  Correct?

16     A.   Not two thousand -- like two hundred.  I

17 mean I don't even see (unintelligible).

18     Q.   Let's -- let's move on to page one one

19 four, Plaintiff's one one four.  That's forward four

20 pages.  And this was attached to your motion to claim

21 exempt property.  Correct?

22     A.   I don't know.

23     Q.   The John Deere lawn mower that's listed

24 there, it's the fourth -- fifth item down, is that

25 the ride on mower?

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          A.   I see it here.

3          Q.   Is that the ride on mower?

4          A.   Is it the riding lawn mower?

5          Q.   The ride on mower?

6          A.   Yeah.

7          Q.   Is that used for your business?

8          A.   Yeah.

9          Q.   The welding machine with helmet.  Is that

10    used for your business?

11          A.   Yes.

12          Q.   Do you still have it?

13          A.   Yes.

14          Q.   Do you still have the ride on mower?

15          A.   I -- yes.

16          Q.   And those handguns?

17          A.   Yes.

18          Q.   You still have those?  The hand tools, is

19    that used for your business?

20          A.   Yes.

21          Q.   How about that circular saw?

22          A.   Yes.

23          Q.   Tile cutter?  Was it used for your

24    business?

25          A.   Yes.

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          Q.   Electric drill?  Was that for your

3     business?

4          A.   Yes.

5          Q.   Electric jig saw?

6          A.   Uh-huh.

7          Q.   For your business?  Table saw for your

8     business?

9          A.   Uh-huh.

10         Q.   Handsaw is for your business?

11         A.   I don't use the table saw for my business,

12    but I -- I use my table saw when I was doing --

13    building around my house.

14         Q.   Okay.  So it's not a business?

15         A.   I used a -- I used a table saw when I was -

16    - when I was remodeling my house.  I used a jig saw

17    to -- to cut wood with.

18         Q.   Do you --?

19         A.   I used the tile saw to put down tile, so

20    the tile -- the tile is not used for the -- for --

21    for the trucking business.

22         Q.   Do you still have all that?

23         A.   I -- we spoke about it.  I said I had a

24    flood and it got flooded.  All my property -- the

25    majority of my property got ruined in the flood.

1

2    Q.   So after your wife -- let's go back to your

3    wife going to jail.  You then made an agreement with

4    her creditors.  Correct?

5    A.   No, I didn't make an agreement.  You all

6    made the agreement.  You all came up with the -- with

7    the promissory note and had on it that it was a loan.

8    Q.   But you signed it.  Correct?

9    A.   Yes.

10   Q.   And that agreement was --.

11   A.   Under duress.

12   Q.   That agreement was to get your wife out of

13   jail.

14   A.   Under duress, yes.

15   Q.   And do you remember --.

16   A.   It was with (unintelligible) the way that

17   it was.

18   Q.   And so you agreed to give a deed to your

19   house --

20   A.   Under duress.

21   Q.   -- to get your wife --

22   A.   Under duress.

23   Q.   -- under duress to get your wife out of

24   jail?

25   A.   Under duress.

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          Q.   And you had an attorney?

3          A.   Under duress.  I don't -- I don't know if I

4     had an attorney, but we was in an attorney office --

5          Q.   Yeah.

6          A.   -- because we had already spoke to Phil

7     about doing that and Phil said that he could force a

8     foreclosure.  That's what he said.  He said I can

9     force one.  That's what he did -- that's what he

10    said.

11         Q.   Chris Watkins represented you when you

12    signed that, didn't he?

13         A.   I don't know if he was or not.  I don't

14    know.  I just don't -- I don't -- I don't remember.

15    He was at one point, but I don't remember if at that

16    time he was.  I don't -- I don't remember, but I do

17    remember when Phil said that he could force a

18    foreclosure.

19         THE WITNESS:  May I say something, Your Honor?

20         THE COURT:  He gets to ask you questions, sir.

21         THE WITNESS:  Okay.

22         MR. PINERO:  If I may approach the witness, Your

23    Honor?

24         THE COURT:  Yes, sir.

25         BY MR. PINERO:  (Cont'g)

1               DFWMM Holdings LLC - 17-11413 - 7-19-19

2        Q.   Can you turn to page two of that document

3  and go to paragraph four?  And read it to yourself

4  and tell me if that refreshes your recollection about

5  having a lawyer at that time.

6        A.   I mean something like this, but she was

7  thinking about the agreement -- my wife was in jail.

8  She got out of jail.  She was paying you nine hundred

9  dollars a month and for nine months you said that you

10  didn't receive no payment and that's when you -- the

11  sheriff brought papers saying that we were in

12  default.  Nine months that you said that you didn't

13  receive anything and you did not send no kind of

14  notice saying that you hadn't received nine hundred

15  dollars and when I go to the post office which you

16  said that you went I think you said you went and said

17  that the checks wasn't cashed and the lady at the --

18  at the office -- post office said that there was no

19  way that you could get that kind of information

20  unless you had some type of number and the one who

21  could get that number was the one who purchased those

22  money orders and those money orders was not -- was

23  not cashed because my wife took the -- the stubs --

24  took it to the post office and then they sent the

25  checks back uncashed and I don't see why a person

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     would go nine months without letting a person know

3     that they hadn't received any money and you said that

4     they wasn't cashed and the only way that I could see

5     that they wasn't cashed, you was holding them.

6          Q.   Can you identify that document in front of

7     you?

8          A.   I don't -- like I said, I wasn't -- I

9     wasn't reading this stuff when it was going through

10    court.  At the time, my wife was there.

11         Q.   Is it a settlement agreement and covenant

12    not to sue?

13         A.   That's what it says.

14         Q.   And that's your signature on there?

15         A.   I don't know if it's mine or not.

16         MR. PINERO:  If I may approach, Your Honor?

17         THE COURT:  Yes, you may.  Do you want these

18    marked?

19         MR. PINERO:  Yes.

20         THE COURT:  Plaintiff's Exhibit One?

21         MR. PINERO:  Yes.

22         BY MR. PINERO:  (Cont'g)

23         Q.   And that settlement agreement was so that

24    we wouldn't execute on your wife's judgment.  Isn't

25    that right?

1

2    A.   I -- I don't -- like I said before I don't

3    know.  This -- this case -- like I said, this is your

4    property.  You come -- you -- you came up for my

5    property, you know, and I don't know (unintelligible)

6    because that's what happened.

7    Q.   And then we filed -- we filed a lawsuit

8    claiming -- after that we filed a lawsuit claiming

9    that you had stopped paying.  Isn't that right?

10    A.   I don't -- when the -- when the sheriff was

11    saying that we was in default.

12    Q.   And that lawsuit ended -- we ended up

13    winning that lawsuit.  Correct?

14    A.   I don't know if you did or not because at

15    that particular time I think because an attorney and

16    you said that  -- and the attorney said that you said

17    that you was going to call him to the witness stand

18    so he withdraw from representing.

19    Q.   Can you go under tab one please and go to

20    the second page of the first tab?

21    A.   One nine?

22    MR. PINERO:  If I may approach the witness, Your

23    Honor?

24    THE COURT:  Yes, you may.

25    BY MR. PINERO:  (Cont'g)

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          Q.   Plaintiff's one hundred doc twenty-seven

3     one, page two of twenty-seven.  Isn't this the order

4     and judgment against you concerning the promissory

5     note and security agreement?

6          A.   I don't -- like I said I don't know.  I

7     wasn't looking at this.  I wasn't reading this.  I

8     wasn't handling this.  At that time, my wife was

9     representing herself, so I don't know

10     (unintelligible).

11          Q.   The second line of that says present at the

12     hearing were counsel for plaintiff, the defendants --

13     you're one of the defendants.  Correct?

14          A.   You said two?

15          Q.   Let me start again.  Scratch that.  The

16     second sentence of that order says present at the

17     hearing were counsel for plaintiff, the defendants,

18     and counsel for defendants.

19          A.   (unintelligible).

20          Q.   Isn't that right?

21          A.   No.  No, you're reading two?

22          Q.   The second sentence.

23          MR. PINERO:  If I may approach, Your Honor?

24          THE COURT:  Yes, you may.

25          A.   Right here?

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          BY MR. PINERO:  (Cont'g)

3          Q.    Is that what that sentence says?

4          A.    Yeah, that's what it says.

5          Q.    And so you were a defendant in this case?

6          A.    You all pulled me into something that I

7     didn't -- I didn't know anything about it.

8          Q.    And your wife was a defendant in this case?

9          A.    She was the defendant.  You pulled me into

10    this.  I didn't know anything about this.  I didn't

11    have anything to do with this lawsuit.  Nothing.

12         Q.    This lawsuit was because you signed an

13    agreement.  Right?

14         A.    It was -- it was because -- all this come

15    about after you all put my wife in jail, but I didn't

16    have anything to do with this.  I -- this is your

17    property.  You're coming after my property.  I don't

18    know anything about this.  You're asking me about

19    Lydia Leath's property.  I don't know.  I don't know.

20    So, you know, I don't know about the property --

21    about the one on Day Street.

22         Q.    So let's go to the next page, paragraph

23    number -- with the number four on it.  At those

24    hearings, defendants contend that they mailed postal

25    money orders for payment of the promissory note but

1    DFWMM Holdings LLC - 17-11413 - 7-19-19

2    acknowledge that the envelopes were addressed to Oak

3    City Extortioners, a non-existent entity, and were

4    mailed without including the zip code and the

5    address.  Is that right?

6         A.   That's what it says.

7         Q.   And you're one of the defendants.  Right?

8         A.   Yeah.

9         Q.   Okay.

10        A.   When we offered to give you the money that

11   -- that the post office had sent back to us, you

12   refused to take it.  You said no, it's time to

13   foreclose.

14        Q.   Is that what that says here?

15        A.   That's what you say -- that's what you

16   said.  You said at the -- at the (unintelligible),

17   you said that.

18        THE COURT:  Sir, let me understand -- make sure

19   I understand.  As a result of this settlement

20   agreement and the covenant not to sue, that's when

21   the promissory note was executed and the security

22   agreement and we -- we had those in your pre-trial

23   exhibits.  Is that correct, but I don't know that

24   this was one of your pre-trial exhibits?

25        MR. PINERO:  This was not one of my pre-trial

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2      exhibits -- the settlement agreement.

3          THE COURT:  All right.  We -- we need to tag --

4      I'll speak with counsel in the conference room.

5      We'll take a recess for about ten minutes.

6          [Off the record]

7          THE COURT:  Sir, I'd just like to remind you

8      that you are still under oath.

9          THE WITNESS:  Yes, ma'am.

10          THE COURT:  Thank you.

11          BY MR. PINERO:  (Cont'g)

12          Q.   Mr. Richmond, do you own a Suzuki

13      motorcycle?

14          A.   No, sir.

15          Q.   Have you ever owned --?

16          A.   I don't own -- I don't own it, but it's in

17      my name.  I did it for a friend.

18          MR. JOHNSON:  Objection, Your Honor.  I think

19      he's misidentified the asset.

20          THE WITNESS:  Nope.

21          THE COURT:  I'll overrule the objection.

22          MR. JOHNSON:  All right.

23          BY MR. PINERO:  (Cont'g)

24          Q.   You own a Suzuki motorcycle?

25          A.   No, sir.

1       DFWMM Holdings LLC - 17-11413 - 7-19-19

2          Q.   Is there --.

3          A.   I don't own it.  I put it in my name for a

4       friend (unintelligible) Suzuki motorcycle.  It got

5       stolen and I think that you got -- got something

6       about it -- knew about it.

7          Q.   When did it get stolen?

8          A.   I don't -- I don't know when it was, but

9       there's a  -- it's a police record.  They have --

10      they have a record of it.  I put the bike in my name

11      for a friend.

12         Q.   So did it get stolen before or after you

13      declared bankruptcy?

14         A.   I don't know how -- I don't know when it

15      was.  I don't know.  I don't remember.

16         Q.   But you have testified prior to this under

17      oath that you own a Suzuki motorcycle.  Isn't that

18      correct?

19         A.   No, I don't own it.  I don't own it.  I

20      just put it in my name for a friend.

21         Q.   But you have testified that you owned it?

22         A.   No.

23         Q.   Did you ever buy a Harley Davidson?

24         A.   It's in my name.  I don't ride the bike.

25         Q.   Did you buy one?

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          A.   No, it was in my name.  I don't ride a

3    motorcycle.  I did it for a friend.

4          Q.   So if you said that you bought a Harley

5    Davidson motorcycle, that would have been a lie?

6          A.   I (unintelligible).  I never said I bought

7    a bike.

8          Q.   You never said that.

9          A.   No.

10          Q.   Okay.  Can you turn to tab five please?  Do

11    you recognize that document as the -- your -- the

12    transcript of your deposition taken on May 17, 2017?

13          A.   I (unintelligible).  Is it one six eight?

14    I don't  --.

15          Q.   It's number one sixty-eight on the bottom,

16    document twenty-seven dash twenty, page one of sixty-

17    one on the top.

18          A.   Okay.

19          Q.   Do you remember taking this deposition?

20          A.   It was in Chris Watkins' office.

21          Q.   Okay.  Can you turn to page one eighty-

22    seven -- Plaintiff's one eighty-seven under that same

23    tab, doc twenty-seven dash seven page twenty of

24    sixty-one?

25          A.   Okay.

1

2       Q.   And you were under oath at this time.

3    Right?

4       A.   Yes.

5       Q.   Just like you are now?

6       A.   Yes.

7       Q.   And under oath, I asked you did you buy a

8    Harley Davidson.  You responded did I buy one?

9    Question, yes.  Yes, I did.  Question, what year?

10   Answer, what year did you buy it?  Answer, this year.

11   Down to paragraph fourteen -- line fourteen, where

12   did you buy it?  Winston.  In Winston, from a dealer

13   or a private party?  A dealer.  Go to the next page,

14   do you remember how much you paid for that vehicle

15   under line seven and eight?  Your answer was it was

16   twenty -- like about twenty-one or twenty-two.

17   Question, and you still have it.  Correct?  Answer,

18   that's correct.  Thirteen, question, where do you

19   keep it at?  Your House?  Fourteen, A, sometimes.

20   That was your testimony then?

21      A.   I never -- I never said that I bought a

22   bike.  I never -- I never said I bought a bike.  I

23   never said that I kept a bike at my home sometimes.

24   I never made that statement.

25      Q.   How much money did you make in 2016?

1              DFWMM Holdings LLC - 17-11413 - 7-19-19

2         A.   I'm not sure what it was.

3         Q.   Do -- can you estimate what your income

4    was?

5         A.   I don't -- I don't -- no, I don't got --.

6         Q.   Do you know how much you reported to this

7    court -- what your income was?

8         A.   I -- if I had the paper, I could -- I could

9    show you.  I don't got what it was.

10        Q.   What's your monthly income?

11        A.   It varies.

12        Q.   Okay.  What do you estimate your monthly

13   income over the course of 2017 was?

14        A.   I don't know.  I don't -- I don't know.  I

15   don't got it because it varies.  I don't know.  My

16   work is -- it don't pay the same every year -- every

17   day.  It varies.

18        Q.   But you recognize you're in a bankruptcy

19   court and you have to be able to tell the Court what

20   your income is.  Correct?

21        A.   Well, it's on -- it's on paper.  I mean I

22   gave you  -- it's on paper.  I don't know.

23        Q.   So is your income what you put in the

24   schedule?

25        A.   It's on my -- it's on the paper.  I don't -

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2      - I done forgot what it was.  It was on my tax

3      return.

4          Q.   What was it on your tax return?

5          A.   I don't -- I don't know.  I done forgot.

6          Q.   Have you ever lied about your income?

7          A.   No.

8          Q.   So I want you to -- on tab five,

9      Plaintiff's one nine zero --.

10         A.   These are one six eight?

11         Q.   One nine zero.

12         A.   I don't see a one nine zero.

13         MR. PINERO:  Your Honor, if I may approach the

14     witness?

15         THE COURT:  Yes.

16         A.   You said tab five?  I don't see a one nine

17     zero.  I see one six eight.

18         BY MR. PINERO:  (Cont'g)

19         Q.   On line twenty, this is still your

20     deposition.  Correct?

21         A.   Okay.

22         Q.   Line twenty, your -- I asked you what did

23     you claim your income was and your answer was it was

24     about forty-nine thousand dollars give a little take

25     a little.  That's correct?

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          A.   Okay.

3          Q.   Was that your income?

4          A.   For that year?

5          Q.   For -- yes, for 2016?

6          A.   I -- I guess if -- if -- I mean I guess

7     that's what it was if -- if it was that year, yes.

8          Q.   Did your income go up or down from 2016 to

9     2017?

10         A.   It -- it has -- it can.

11         Q.   No, scratch that.  Did your income go up in

12    2017?

13         A.   I don't know if it did or not.

14         Q.   Does it stay mostly steady?

15         A.   No, I don't quite understand what you're

16    saying because I just told you that my income varies

17    and if it's for '16 forty-nine thousand, it's

18    different each year.  It's not the same every year.

19         Q.   Okay.  So what's your basis for saying

20    forty-nine thousand here?

21         A.   What -- no, what now?

22         Q.   What's your basis for saying that you made

23    forty-nine thousand dollars a year?

24         A.   I don't quite understand what you're saying

25    what's my basis of saying that?

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          Q.   Why did you say forty-nine thousand dollars

3     a year?

4          A.   If this -- that's on my -- that's what my

5     tax return.

6          Q.   Okay.  And this was in 2017, right, that

7     you claimed you made forty-nine thousand dollars a

8     year?

9          A.   If -- if that's on my tax return.

10         Q.   I need you to go to tab four and

11    Plaintiff's zero zero zero one two nine, that's four

12    pages into that tab.

13         MR. PINERO:  If I may approach, Your Honor?

14         THE COURT:  Yes, sir.

15         BY MR. PINERO:  (Cont'g)

16         Q.   Mr. Richmond, is that your signature on

17    that page?

18         A.   (unintelligible).

19         Q.   Is that a yes?

20         A.   Yes.

21         Q.   And can you identify that document?

22         A.   Be a black Cadillac (unintelligible).

23         Q.   And can -- is it a -- is it a credit

24    application?

25         A.   It look like a dealership application.

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          Q.   And this was when you were applying for

3     credit to buy your Cadillac.  Correct?

4          A.   I'm not sure about this.  I

5     (unintelligible).  My name is on it and --.

6          Q.   Can you look at the surrounding documents

7     on that tab?  Maybe that will refresh your

8     recollection about why you were applying for credit.

9          A.    (unintelligible).

10         Q.   Look at the other documents around that

11    document.  Does it refresh your recollection as to

12    why you were applying for credit?

13         A.   I just don't -- I know this was -- this was

14    an application from Bill Black Chevrolet, but some of

15    the stuff on here that I -- I just don't understand.

16    I applied for credit, but there's (unintelligible)

17    have it and --.

18         Q.   It does have your date of birth.  Doesn't

19    it?  It's blacked out.  Right?

20         A.   Yeah, it's blacked out, but what I'm saying

21    I don't -- I mean, you know, I don't understand why

22    it's being blacked out if I was applying for credit.

23         Q.   Okay.  And you signed this on March 10,

24    2017?

25         A.   That's what it says.

DFWMM Holdings LLC - 17-11413 - 7-19-19

1

2      Q.   And this was to buy a ninety thousand-

3   dollar Cadillac, wasn't it?

4      A.   I don't remember if it was ninety thousand

5   or not.

6      Q.   Okay.  Can you go back two pages and look

7   at the bill of sale?

8      A.   Okay.

9      Q.   And is that -- is that your car, the

10   Cadillac CT Six?

11      A.   Yes.

12      Q.   And you paid somewhere between sixty

13   thousand and ninety thousand dollars for that car.

14   Is that correct?

15      A.   Not ninety thousand.

16      Q.   But there's a number there, ninety thousand

17   at the bottom.  Isn't there?

18      A.   I didn't pay that.

19      Q.   How much did you pay?

20      A.   I forgot.  I don't have the -- the bill of

21   -- the bill of sale.  I done forgot.

22      Q.   Isn't that the bill of sale in front of

23   you?

24      A.   I don't know if it's the same or not.  I

25   have (unintelligible) one that I have.  I don't know

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     if it's the same one.  I don't know.

3          Q.   So if you can't remember how much you paid,

4     how -- how do you remember it's not ninety thousand

5     dollars?

6          A.   I know it wasn't that.

7          Q.   Okay.  Going back to page one twenty-nine

8     on the bottom right corner, go forward two pages.

9     What did you say your salary was there?

10         A.   On here it says it's five thousand four

11    hundred and sixteen dollars.

12         Q.   Is that what you told them?

13         A.   Huh?

14         Q.   Is that what you told them your salary was?

15         A.   This -- if it's on this paper right here.

16         Q.   And that's your signature on there?  Well,

17    you've already answered that.  Scratch that.  And

18    that's a monthly -- that's five thousand four hundred

19    and sixteen dollars a month?

20         A.   It don't say month right here.  It just

21    says salary.

22         Q.   There's a check mark in monthly.  Correct?

23         A.   Yes, there's -- there's a check there, but

24    it's --.

25         Q.   Did you include in that five thousand four

1

2          hundred and sixteen dollars, did you include your

3          social security benefits?

4               A.   I don't know if I did or not.

5               Q.   Well, does it include your social security

6          benefits?

7               A.   Huh?

8               Q.   Does it include your social security

9          benefits?

10              A.   I -- I don't know.

11              Q.   But this was your income.  Right?

12              A.   It says salary.

13              Q.   This was your salary.  Right?

14              A.   I don't -- I don't understand what you're

15         saying.  This was from a salary from what -- what

16         would you -- what -- what are you saying?  I mean --.

17              Q.   That's what you paid --

18              A.   I made --.

19              Q.   -- that's what you paid yourself from your

20         business?

21              A.   I paid my bills.

22              Q.   And you're applying for individual credit

23         here, right?  On that -- up at the top, you have

24         crossed out individual credit and you -- and --

25         correct?

DFWMM Holdings LLC - 17-11413 - 7-19-19

1

2          A.    Wait.

3          Q.    You have a little X by individual credit?

4          A.    On the same page?

5          Q.    Yes.

6          A.    What -- right hand corner?

7          Q.    It's -- it's got a number on in front of it

8    up at the top under instructions.

9          A.    I don't see that.

10         Q.    And there's also an X by if you're applying

11   for individual credit in your name and relying on

12   your own income and not the income or assets of

13   another person as the basis of repayment of the

14   credit requested, complete only section A and you

15   completed section A.  Right?

16         A.    I don't see anything here that you -- on

17   this page that you're talking about.

18         MR. PINERO:  If I may approach the witness?

19         THE COURT:  Yes, sir.

20         BY MR. PINERO:  (Cont'g)

21         Q.    Now do you see it on that page?  The

22   language --.

23         A.    Yeah, I see it.

24         Q.    And so this was -- this salary here is your

25   income  -- what you claimed your income was in March

1      DFWMM Holdings LLC - 17-11413 - 7-19-19

2      of 2017.

3          A.   After my deduction, it's -- what it says my

4      salary for what?  A week?  Month?  I don't quite

5      understand how you -- what you're speaking about.

6          MR. PINERO:  If I may approach the witness?

7          THE COURT:  Yes, sir.

8          BY MR. PINERO:  (Cont'g)

9          Q.   Do you see that part I highlighted?

10         A.   Yes.

11         Q.   Is it an X on monthly?

12         A.   Yes.

13         Q.   And so you understand that to mean it's

14     five thousand four hundred and sixteen dollars

15     monthly?  Can you -- is that a yes?

16         A.   Yes.

17         Q.   And under other income monthly, it's blank.

18     Correct?

19         MR. PINERO:  If I may approach, Your Honor?

20         THE COURT:  Yes.

21         BY MR. PINERO:  (Cont'g)

22         Q.   The highlighted portion is blank, other

23     income monthly?

24         A.   Uh-huh.

25         Q.   And so you didn't include your social

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     security benefits.  Correct?

3          A.   If -- if it wasn't asked, I -- I didn't --

4     I don't know.  I don't know if it was asked or not.

5     I don't know.  I didn't fill this paper out at Bill

6     Black Chevrolet.  I didn't do this.

7          Q.   Who filled out the paper?

8          A.   Bill Black.  I didn't -- I mean I didn't

9     put this on paper.

10         Q.   So where'd Bill Black get the number for

11    your salary?

12         A.   He got it from me.

13         Q.   Can you turn to tab eight?  And the first -

14    - first page is doc one, page thirty-five of fifty-

15    three, this is your statement of financial affairs

16    for individual filing for bankruptcy.  Correct?

17         A.   That's what it says.

18         Q.   And part two to explain the sources of your

19    income, number four from January 1st of current year

20    to the date you filed for bankruptcy, you listed zero

21    dollars income.  Correct?

22         A.   That's what it says on here.

23         Q.   Is that true?

24         A.   What -- I have any income coming in?

25         Q.   From January 1st of 2017 until December 15,

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     2017, you had zero income?

3          A.    No.

4          Q.    That's not true?

5          A.    That's not true.

6          Q.    How much money did you make that year?

7          A.    I don't -- maybe what fifty -- I think -- I

8     done forgot.  I'm not sure on that -- on my income

9     tax return.

10         Q.    About fifty?

11         A.    I'm not sure.

12         Q.    Give or take a little?

13         A.    Maybe.  I don't know.  I don't know.

14         Q.    If you go to the next page, you got your

15    income for 2016, you have gross income six thousand

16    one hundred and thirty-five dollars.  Is that right?

17         A.    Gross income?  Like I said, I don't -- I

18    don't remember.  I don't have my paperwork with me.

19    I'm just looking at this right here.  I don't

20    remember.  I can't say.  I mean I don't -- I'm trying

21    to answer your question as best I know how, but you -

22    - you got something in front of me that I -- that I

23    really don't know.

24         Q.    And how much money did you make in 2016?

25    Approximately?

1    DFWMM Holdings LLC - 17-11413 - 7-19-19

2         A.   I don't know.

3         Q.   Didn't you earlier say it was forty-nine

4    thousand dollars give or take a little bit?

5         A.   I don't know.  I don't -- I don't know.  It

6    could have.

7         Q.   Let's move forward, page thirty-one of

8    fifty-three of your petition.

9         A.   (unintelligible).

10        MR. PINERO:  May I approach, Your Honor?

11        THE COURT:  Yes.

12        BY MR. PINERO:  (Cont'g)

13        Q.   Mr. Richmond, here you've claimed one

14   thousand seven hundred and twenty-three dollars'

15   worth of income.  Correct?

16        A.   That's what's on this paper here.

17        Q.   And if you can go on to page eight of

18   fifty-three.

19        MR. PINERO:  If I may approach, Your Honor, the

20   witness?

21        THE COURT:  Yes, sir.

22        BY MR. PINERO:  (Cont'g)

23        Q.   Is this expense three thousand eighty-two

24   dollars, is that accurate -- your monthly expenses?

25        A.   I don't -- I don't know.  I mean like I

1      DFWMM Holdings LLC - 17-11413 - 7-19-19

2      said, I don't have my paperwork.  I don't know.

3          Q.    And did you disclose to the bankruptcy

4      court your liens on -- the liens in the security

5      agreement that we -- that you signed -- scratch all

6      that.

7          Did you disclose to the bankruptcy court the

8      liens on your personal property?

9          A.    The liens on my personal property -- I

10     don't (unintelligible) The lien on –

11     (unintelligible).

12         MR. PINERO:  If I may approach, Your Honor?

13         THE COURT:  Yes, sir.

14         BY MR. PINERO:  (Cont'g)

15         Q.    This is a copy of a security agreement that

16     you signed.  Isn't that correct?

17         A.    (unintelligible).

18         Q.    And that was doc twenty-seven dash eight in

19     the pre-trial disclosures.  I didn't have the one

20     with the number on the top, but that's the security

21     agreement.  Right?

22         A.    (unintelligible).

23         Q.    And can you go to the last page of that and

24     tell me if that's your signature on it?

25         A.    I don't know if this is my signature or

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     not, but at the top of here, like (unintelligible)

3     and here at the bottom Marian Jones-Richmond.

4          Q.   Okay.  But your signature is under that.

5     Correct?

6          A.   I don't know if I did this or not.  I don't

7     -- it's my name, but I don't know because I was just

8     looking at how the Marian signed this, you know, I'm

9     looking at Marian Jones (unintelligible) and

10    underneath of it is Marian Jones-Richmond.  She never

11    signs her name like that.

12         Q.   I'm not concerned with her signature.

13    We're concerned with your signature.

14         A.   Okay.

15         Q.   Does it look like your signature?

16         A.   It looks like it, but --

17         Q.   Okay.

18         A.   -- I know that -- I know everything has

19    been passed down, but this right here is pertaining

20    to property that I own and you already have property

21    of -- of your mother -- your auntie that you have

22    that, so why you coming after mine?

23         Q.   Did you disclose this in your petition?

24         A.   What?

25         Q.   This security agreement?

DFWMM Holdings LLC - 17-11413 - 7-19-19

1    A.    I didn't because I was under duress.

2    Q.    I'm asking whether you told the bankruptcy

3    court about this agreement.

4    A.    I'm pretty sure.

5    Q.    Okay.

6    A.    Everything that I done under duress of this

7    matter.

8    MR. PINERO:  Can I ask the Court to -- to mark

9    the book as Exhibit Two?

10    THE COURT:  Yes, sir.

11    MR. PINERO:  And that security agreement as

12    Exhibit Three?

13    THE COURT:  Yes.

14    MR. PINERO:  Your Honor, I move to have my

15    exhibits -- Exhibits One, Two, and Three admitted.

16    THE COURT:  Any objection?

17    MR. JOHNSON:  Your Honor, if I may, this is

18    quite a lengthy agreement.  Can I have just a couple

19    of minutes to finish going through it?  If I might

20    ask a question, was there an attachment to this

21    agreement to show exactly what is secured?

22    MR. PINERO:  It's there.  This was included in

23    our pre-trial disclosures.

24    THE COURT:  Yes, it was in the pre-trial

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     exhibits.

3          MR. JOHNSON:  Okay.  All right.

4          THE COURT:  I'll admit Exhibits One, Two, and

5     Three.

6          BY MR. PINERO:  (Cont'g)

7          Q.   Mr. Richmond, is your house being

8     foreclosed on?

9          A.   Yes, it is.

10         Q.   And do you know who the winning bidder was

11    on -- well, scratch that.  Do you know anything about

12    the sale of your house by the foreclosure?  Do you

13    know who the winning bidder was for the sale of your

14    house in foreclosure?

15         A.   No, I had heard.

16         Q.   What'd you hear?

17         A.   I heard that Felicia Richmond (phonetic

18    spelling).

19         Q.   Who is Felicia Richmond?

20         A.   That's my niece.

21         Q.   Do you know -- do you know where she got

22    the down payment?

23         A.   No, I don't.  I'm pretty sure she works.

24         Q.   Did you know that she didn't pay for the

25    house?

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          A.   No, I don't.

3          Q.   That she defaulted on the bid?

4          A.   I don't know anything about it.

5          MR. PINERO:  No further questions, Your Honor.

6          THE COURT:  Thank you, sir.

7          CROSS EXAMINATION

8          BY MR. JOHNSON:

9          Q.   Mr. Richmond, you've indicated that you

10    have P.T.S.D.  Is that -- is that service connected

11    by any chance?

12         A.   Yes.

13         THE COURT:  Mr. Johnson, could you speak up a

14    little?  (unintelligible).

15         BY MR. JOHNSON:  (Cont'g)

16         Q.   Do you have an accountant -- someone that

17    does your taxes?

18         A.   Yes.

19         Q.   Okay.  Who is that?

20         A.   She's Vivianne [phonetic spelling].  I

21    can't think of her last -- first name is Vivianne.

22         Q.   All right.  Do you turn over your invoices

23    each month to her or yearly?  How do you do that with

24    your accountant?

25         A.   No, I don't turn over my -- I -- at the end

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     of the year, I give her what I made.

3          Q.   Okay.  Okay.  How do you keep up with what

4     your -- what your gross income is?

5          A.   What I normally do is when I get paid, I

6     take and pay my bills and --.

7          Q.   No, how do you keep up with how much you

8     actually get in pay per month?

9          A.   I have invoices.

10         Q.   Okay.  And what you -- and tell me exactly

11    what your -- what you do with the dump truck that you

12    use in your business?

13         A.   I haul (unintelligible).

14         Q.   You haul what?

15         A.   (unintelligible).

16         Q.   Is that stuff that's used for making

17    highways?

18         A.   Yes, it's like asphalt.

19         Q.   And are you contracted with anybody to do

20    that or are you freelance?

21         A.   Yes.

22         Q.   Who are you contracted with?

23         A.   I'm contracted with -- I haul for

24    (unintelligible).  I'm not really contracted.  I

25    just, you know, I'm not under a contract.  I just --.

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          Q.    How -- how would it be determined if you

3     hauled tomorrow?

4          A.    Well, if -- when I go on a job -- for a

5     good example, if I go on a job on Monday, they'll let

6     me know that they need me all week and they'll let me

7     know if they need me for the whole week.  They'll let

8     me know if I can be here permanently.

9          Q.    All right.  And that varies from week --

10    when you say you'll be there permanently --

11         A.    Yeah.

12         Q.    -- does --?

13         A.    What I'm saying is that like they'll say

14    well, you  -- this is your -- you can be on this job

15    as -- as long as you come in.  This is my job like as

16    for now, I'm hauling (unintelligible) --

17         Q.    Uh-huh.

18         A.    -- here in Greensboro, so I'm there until

19    they say we're not doing anything today.  We're not

20    doing anything tomorrow.  We -- we don't have that

21    many yards pulled up for tomorrow and we won't need

22    you.

23         Q.    So are there periods of time that you don't

24    work at all for a day or a week at a time?

25         A.    Yes.

1       DFWMM Holdings LLC - 17-11413 - 7-19-19

2           Q.   What's the most periods you can recall

3       right now that you didn't work at all?

4           A.   Right now?

5           Q.   Yeah, in the last year, what was the

6       longest period that you can recall that you didn't

7       haul at all?

8           A.   Last year was a very terrible year.

9           Q.   It was very what?

10          A.   Terrible.

11          Q.   All right.  So in a month, were there weeks

12      or month or two that you didn't haul anything at all?

13          A.   Yes.

14          Q.   Now what is your major expense when you're

15      hauling?

16          A.   Diesel fuel, tires, engine -- changing oil.

17          Q.   Okay.  Now you have a very old truck.  Is

18      that correct?

19          A.   Yes, sir.

20          Q.   Is it mechanically sound?  Does it -- do

21      you have repairs often?

22          A.   I -- I do repairs (unintelligible) brake

23      shoes, clutch fan, just maintenance.

24          Q.   Right.  Now so once a year, you take your

25      invoices and by invoices you're speaking of like

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     Chandler [phonetic spelling] --

3          A.   Yes.

4          Q.   -- gives you showing how much they paid

5     you?

6          A.   Well, I take my -- okay.  For a good

7     example, they're paying me like -- for a good

8     example, they're paying me like three dollars per ton

9     and I'm able to haul like fourteen and a half to

10    fifteen tons on the interstate, so if you multiply

11    that by three dollars a ton, that's what I think per

12    load.

13         Q.   Okay.  But at the end of the day --.

14         A.   And then at the end of the week, I will

15    take and total all of that up and I will present the

16    invoice for how much I made.  Well, then he turn and

17    pay me.

18         Q.   Right.  Who prepares those invoices?

19         A.   I prepare them myself.

20         Q.   Okay.  And that is what you take to your

21    accountant.  How -- how do you keep up with your

22    expenses?  Fuel, repairs, all that, how do you keep

23    up with that?

24         A.   When I take my truck to (unintelligible),

25    they give me a whatever you call it -- for example,

1      DFWMM Holdings LLC - 17-11413 - 7-19-19

2      if I have a tire -- if the tire costs a hundred --

3      two hundred dollars, he give me an invoice of what it

4      costs and I pay it and I take those invoices -- I

5      keep them all together in a -- a folder --

6          Q.   Yes.

7          A.   -- and at the end of the year, I total up

8      everything and I give it to my -- the lady that does

9      my taxes.

10         Q.   All right.

11         A.   So it's not only just the tires, it's --

12     it's everything.

13         Q.   Everything.

14         A.   Everything you know.

15         Q.   And is that what she prepares your tax

16     return from?

17         A.   Yes.

18         Q.   Can you take cancelled checks to her?

19         A.   No.

20         Q.   Okay.  You do not take cancelled checks?

21         A.   No.

22         Q.   So she relies on the invoices that you

23     submit to Chandler and on the invoices that the

24     repair people or gas -- gas people --

25         A.   Yes.

1

2          Q.    -- diesel people --.

3          A.    Everything.  Everything (unintelligible)

4     the gas, the oil, the repairs, the welding, whatever.

5          Q.    All right.  Now you've been questioned

6     about a -- an application for a loan you made with

7     Black Cadillac.  Did Black Cadillac ask you to

8     present your tax returns?

9          A.    I don't think so.

10         Q.    Would you recall if they had?

11         A.    I'm not sure if they did or not.

12         Q.    Okay.  And filing for bankruptcy, did you

13    have to present your tax returns?

14         A.    Yes.

15         Q.    Okay.  And these returns, again, were

16    prepared by what's her name?

17         A.    Her first name is Vivianne.

18         Q.    Vivianne.

19         A.    Vivianne, I can't think of her last name,

20    Moore [phonetic spelling].  Moore.

21         Q.    Vivianne Moore

22         A.    Vivianne Moore like Vivianne Moore.

23         Q.    And for 2016 -- how long has she been

24    preparing your tax returns?

25         A.    She has been preparing my taxes maybe nine

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     or ten years.

3          Q.   All right.  So she certainly would have

4     prepared them for 2015/2016.

5          A.   Yes.

6          Q.   She also prepared 2017?

7          A.   Yes.

8          Q.   All right.  Your tax returns of course at

9     the time you filed this bankruptcy were not yet due.

10         A.   Yes.

11         Q.   Now you've also talked about a motion to

12    claim exemptions that was filed in Alamance County

13    and after filing that motion to claim exemption, the

14    most of it was dishonored or was not accepted.  Is

15    that right?

16         A.   Yes, it is.

17         Q.   And was it ultimately concluded that all of

18    the items listed in that motion to claim exemption

19    belonged to your wife?

20         A.   That's what it said.

21         Q.   Did that include the guns?

22         A.   That's what it said.

23         Q.   So it was concluded by the Alamance County

24    Superior Court or Clerk of Superior Court that items

25    that were listed in -- it's under tab -- tab one,

1    DFWMM Holdings LLC - 17-11413 - 7-19-19

2    Motion to Claim Exemptions, it was ultimately

3    determined that all of these -- these articles listed

4    in connection with that was not marital property, but

5    belonged to your wife?

6        A.   Yes.

7        Q.   In that motion to claim exemptions, the

8    truck that you're using in your business was also

9    listed.  Is that right?

10       A.   Yes.

11       Q.   That truck is titled in whose name?

12       A.   Dennis Richmond.

13       Q.   Dennis Richmond.

14       THE COURT:  I'm sorry.  What was your answer?

15   In your name?

16       THE WITNESS:  Dennis Richmond.

17       BY MR. JOHNSON:  (Cont'g)

18       Q.   Now you've mentioned in regard to a Suzuki

19   motorcycle that you essentially, I guess allowed some

20   -- allowed or you -- I'm sorry.  Strike that.

21       In regard to a Suzuki motorcycle and a Harley

22   Davidson motorcycle, you let someone use your credit

23   standing to buy these items.  Is that true?  Who

24   bought the -- who actually paid for the Suzuki?

25       A.   A friend of mine.

1          DFWMM Holdings LLC - 17-11413 - 7-19-19
2          Q.   What's his name?
3          A.   Marvin.
4          Q.   Marvin?
5          A.   Yes.
6          Q.   Do we know Marvin's last name?
7          A.   Bigelow [phonetic spelling].
8          Q.   Bigelow.  Who put up the money for the down
9    payment?
10         A.   Marvin.
11         Q.   Who made the monthly payments?
12         A.   Marvin.
13         Q.   And you said the Suzuki was subsequently --
14   was it stolen?
15         A.   Yes.
16         Q.   All right.  Who collected the insurance
17   money on it?
18         A.   Marvin.
19         Q.   And was the insurance money collected on
20   the Suzuki what was used as the down payment on the
21   Harley or do you know?
22         A.   I don't know.  I don't think -- well, he --
23   what he told me I read the police report.  They broke
24   in his -- his home and they spray painted the wall
25   and tore everything up and I think he had -- I don't

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     think he received any money from the bike because I

3     think the insurance in -- what do you call it?  The

4     insurance for like if something you save money on it,

5     I think they -- I think it's what happened because --

6          Q.   All right.

7          A.   -- him and I we did go back to a place in

8     (unintelligible).  I think (unintelligible) paid.  I

9     don't think (unintelligible).

10         Q.   All right.  And at some point, in early

11    2018, were you told that the trustee in your chapter

12    seven bankruptcy was questioning this Harley Davidson

13    motorcycle?

14         A.   Yes.

15         Q.   All right.  And were you instructed that if

16    what you just testified to from the witness stand was

17    true --

18         A.   Yes.

19         Q.   -- that you were going -- that we were

20    going to have to have Mr. --.

21         MR. PINERO:  Objection, leading.

22         BY MR. JOHNSON:  (Cont'g)

23         Q.   What did you tell Mr. Bigelow he would have

24    to do in regard to it?

25         A.   (unintelligible).

1            DFWMM Holdings LLC - 17-11413 - 7-19-19

2        Q.   Okay.

3        MR. JOHNSON:  Is it in the record?

4        UNIDENTIFIED MALE:  (unintelligible)

5        UNIDENTIFIED MALE:  It's not in the

6    (unintelligible).  Are you saying it's in the

7    (unintelligible)?

8        UNIDENTIFIED MALE:  Well, if I've never seen it,

9    I'm going to object to it.

10       MR. JOHNSON:  Okay.

11       UNIDENTIFIED MALE:  (unintelligible)

12       THE COURT:  I (unintelligible) listed on the

13    petition (unintelligible).

14       MR. PINERO:  Your Honor, I object to this.  I

15    haven't seen this.  I didn't see it in the pre-trial

16    disclosures.

17       THE COURT:  I'll -- I'll sustain the objection.

18       MR. JOHNSON:  Thank you very much, Your Honor.

19       BY MR. JOHNSON:  (Cont'g)

20       Q.   In your petition, you did not list

21    (unintelligible) security agreement that was shown to

22    you by Mr. Pinero, did you?

23       A.   No.

24       Q.   And is it your testimony that at the time

25    you filed this bankruptcy that the Alamance County

1

2       Clerk of Superior Court had already determined that

3       the personal property as listed on this agreement did

4       not belong to you?

5            A.   (unintelligible).

6            Q.   Has there been years in your trucking

7       business that at the end of the year after all of

8       your expenses are taken that you actually showed that

9       you lost money?

10           A.   Yes.

11           Q.   Okay.  Have there been many of those years

12      that you recall?

13           A.   (unintelligible).

14           Q.   And again, do you rely on Vivianne Moore to

15      determine what's owed -- the profit or loss is?

16           A.   What now?

17           Q.   Do you rely on Vivianne Moore to determine

18      --

19           A.   (unintelligible).

20           Q.   -- what your profit or loss is?

21           A.   Yes, she's a tax return.

22           Q.   Does she have a tax return business?

23           A.   Yes.

24           Q.   Is the business in her name?

25           A.   I think it's V -- V something.  I'm not

1       DFWMM Holdings LLC - 17-11413 - 7-19-19

2       sure.  I don't know how she had it listed, but it's a

3       business.  She -- she used to work for the I.R.S.

4               Q.   All right.  And this -- and this whole

5       matter started out, the first action filed in this

6       case, you were not a party to it at all.  Were you?

7               A.   That's right.

8               Q.   Who was it filed against?

9               A.   Marian Jones-Richmond.

10              Q.   Okay.  And what is Marian Jones-Richmond's

11      relationship to Flora Jones?

12              A.   Mother.

13              Q.   It's her mother.  And what is her

14      relationship to Kathy Laverne-Pinero?

15              A.   They sisters.

16              Q.   Sisters.  And this -- and Ms. Pinero is Mr.

17      Pinero's wife.  Is that correct?

18              A.   (unintelligible).

19              Q.   And Ms. -- Ms. Kathy Laverne-Pinero is

20      married to Mr. Pinero, the attorney?

21              A.   That's his mother.

22              Q.   It's his mother?

23              A.   Yeah.

24              Q.   Okay.  (unintelligible).  And who -- who is

25      this other -- what -- who is D.M.D -- I'm sorry.  In

1

2          the 2013 action, that action too started out

3          initially against just your wife.  Is that correct?

4                A.    I think it did.

5                Q.    But you were subsequently added to it?  If

6          you know.

7                A.    I --.

8                Q.    Do you know how you became a part of the

9          2013 action?

10               A.    My understanding it's because I mowed the

11         yard.  I was keeping the property up.  I was mowing -

12         - not that property, I was mowing two properties.

13               Q.    Uh-huh.

14               A.    I was mowing the property on Day Street and

15         I was mowing the property up here in Greensboro on

16         (unintelligible).  I was mowing the two properties.

17               Q.    All right.  So by 2013, you were no longer

18         doing that?

19               A.    I think I made it somewhere -- somewhere

20         around there.  I didn't -- I'm not to --.

21               Q.    All right.  Once these lawsuits were filed,

22         is it your recollection that you continued to render

23         service at these properties?

24               A.    No, I -- I didn't do anything to them.

25               Q.    You did not render any further services

1      DFWMM Holdings LLC - 17-11413 - 7-19-19

2      after the 2013 action was filed?

3          A.    Basically, I didn't mow no more yards.

4          Q.    All right.  Did you -- following the 2013

5      action, render any services at all related to these

6      properties -- any of the properties that had belonged

7      to Flora Jones?

8          A.    I don't think I did.

9          Q.    How many properties were there, if you

10     know?

11         A.    There was -- on Day Street it was like --

12     it was two houses on that property -- two houses and

13     I was mowing both of them.

14         Q.    All right.

15         A.    And the one up here in Greensboro didn't

16     have anything on it.  It was just a lot and I was

17     keeping it mowed because I had to keep it down to the

18     city -- for the city ordinance.

19         Q.    Uh-huh.

20         A.    I had -- I took care of that.  I mowed this

21     and here in Greensboro there was two houses on that

22     property there in Burlington [phonetic spelling] and

23     I mowed both those -- no, I only just mowed -- I had

24     two or three times and I mowed it and I had to weed

25     eat it.  I had to take (unintelligible).

DFWMM Holdings LLC - 17-11413 - 7-19-19

1

2     Q.   All right.  But the -- but the point is --
3     the question is after -- following the filing of the
4     2013 action, you did none of that?  You did -- you
5     did nothing more associated with any of these
6     properties?

7     A.   No.

8     Q.   Did you do any other services that you know
9     of on behalf of Flora Jones?

10    A.   No.

11    Q.   All right.  Now at some point D.F.W.M.M.
12    Holdings L.L.C. filed a lawsuit against you.  Is that
13    correct?

14    A.   Yes.

15    Q.   Did you at any time ever provide any
16    services of any kind whatsoever to D.F.W.M.M.
17    Holdings L.L.C.?

18    A.   Did I --?

19    Q.   Did you ever do any work for them?  Did you
20    mow?  Did you do anything --

21    A.   No.

22    Q.   -- for D.F.W.M.M. Holdings?

23    A.   No.

24    Q.   You did nothing?

25    A.   I did nothing.

1              DFWMM Holdings LLC - 17-11413 - 7-19-19

2          Q.   Do you know who the managing partner is in

3     that L.L.C.?

4          A.   What -- what's that?

5          Q.   Do you -- tell me what you know about

6     D.F.W.M.M. Holdings.

7          A.   All I know is (unintelligible).

8          Q.   Okay.  And you -- you rendered no services

9     of any kind whatsoever for that entity?

10         A.   I think no.  Not that I can recall.

11         Q.   Was it ever explained to you by them or

12    anyone else how it is that that entity came to be a

13    party in -- well, party who had the ability to sue?

14         A.   I don't -- that's -- no, I don't think so.

15         Q.   All right.  Now quite a few things happened

16    on October 27, 2014.  That's when I think your wife

17    was incarcerated at County Jail.  Is that correct?

18         A.   That's correct.

19         Q.   All right.  In addition to a settlement

20    agreement and covenant not to sue that was entered

21    into, there was also a security agreement which we

22    just mentioned.  There was also a  -- was there also

23    a note that talked about the monthly payments and so

24    on if you remember?

25         A.   Yes.

1    DFWMM Holdings LLC - 17-11413 - 7-19-19

2         Q.   Was there also a Deed of Trust that you

3    entered into?

4         A.   I think so.

5         Q.   Now how was she able to do that if she was

6    in jail?

7         A.   They took the papers up there to her.

8         Q.   They took the papers up to the jailhouse?

9         A.   Yes.

10        Q.   Did you go up there?

11        A.   No, they wouldn't allow me up there.

12        Q.   Did they take a notary with them?

13        A.   I -- I don't know.  I don't remember.  I

14   don't know, but I do know they took -- they took

15   (unintelligible) --

16        Q.   Okay.

17        A.   -- because the only way she could sign

18   them.

19        Q.   All right.  And so you know that they --

20   you did not accompany them to the jailhouse.

21        A.   No.

22        Q.   All right.  But you -- but you knew that if

23   -- well, strike that.

24        Were you told that if these papers were not

25   signed, she was going to remain in jail?

1

2      A.   Yes.

3      Q.   Who told you that?

4      A.   (unintelligible)  I don't know who -- who

5  was telling -- talking because I was -- I was just,

6  you know, I was all to pieces because my wife was in

7  jail and -- and, you know, I just didn't know.  I --

8  I don't -- I was just -- just all upset.  I don't

9  know.

10     Q.   All right.  Was -- how many meetings took

11 place while your wife was in jail?

12     A.   How many meetings?

13     Q.   Yeah, how many times did you meet with

14 attorneys while your wife was in jail before these

15 documents were signed?

16     A.   Okay.  While she was in jail, we was all

17 down in there -- in I think it's (unintelligible).

18     Q.   But how did you get there?  Who told you to

19 come there?  Why were you there?

20     A.   They had court that day and -- and they

21 said for me to come down to the Courthouse and I

22 can't quite remember what it was, but I knew that I

23 was -- I was -- I think it was at work and I got a

24 call saying to come down to the Courthouse.  They're

25 going to put Marian in jail, you know, I'm driving

1

2       and I'm loaded, you know, and I -- I just doing the

3       best I can -- I could.  I did make it down there

4       though.

5            Q.   All right.

6            A.   And then after I got there, you know, I

7       think it was (unintelligible) put her in jail.

8            Q.   How many days did she spend in jail?

9            A.   She didn't -- she didn't stay in there no

10      days.

11           Q.   All right.  So she was picked up and put in

12      jail --.

13           A.   Well, see they took her from the

14      Courthouse.

15           Q.   Uh-huh.

16           A.   When I got there to the Courthouse, I never

17      left anymore.  I stayed there and we didn't -- and

18      Phil took the -- Phil took the security agreement,

19      the promissory note, and all of that.  He -- he took

20      it to the judge there in Wake Forest.  It was about

21      nine or ten o'clock at night.

22           Q.   All right.

23           A.   That's what he did.  I mean --.

24           Q.   Okay.  No, back up a little.  So on October

25      27, 2014, you represent to the Court that your wife

1    DFWMM Holdings LLC - 17-11413 - 7-19-19

2    was picked up for contempt I think as the order

3    states and in jail that day?

4         A.   Well, I don't think she was picked up.  She

5    was -- they took her from the -- from the Court.

6         Q.   Well, she took -- they took her from the

7    Courthouse.

8         A.   Uh-huh.

9         Q.   She had -- had she gone down to the

10   Courthouse for a hearing to the best of your

11   knowledge?

12        A.   She went down there for -- I done forgot

13   what it was, but -- I done forgot what it was -- what

14   she was down there for.  I don't know.  If I can

15   remember, you know, I got the call saying that

16   they're going to put her in jail, that I have to get

17   down there, and so I came down and from the time that

18   I got there because I didn't leave the Courthouse --

19   it was late that night on that same day.  If it was -

20   - if it was the 27th.

21        Q.   So on one day your wife was picked up and

22   was -- was incarcerated for contempt.  Is that

23   correct?  On the same day.

24        A.   I'm not sure.  I'm not sure.

25   (unintelligible) contempt.  I don't -- I don't think

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     -- no, I don't think she was put in jail for

3     contempt.  I don't think -- but all -- the time she

4     went to jail, it was -- it was -- I done forgot what

5     it was, but -- but -- I can't remember.

6          MR. JOHNSON:  May I approach, Your Honor, and

7     I'll be showing Tab Two of Plaintiff page four

8     (unintelligible) zero zero zero zero four, Tab Two?

9          THE COURT:  Yes, sir.

10         MR. JOHNSON:  At the bottom right, zero zero

11    zero zero four.

12         THE COURT:  Uh-huh.

13         BY MR. JOHNSON:  (Cont'g)

14         Q.   I'm going to show you a document that was

15    called Order in the Superior Court Division case ten

16    C.V.S. (unintelligible) and it starts with a decision

17    of court (unintelligible) superior court judge on

18    October 2, 2017.  Do you see that first paragraph?

19         A.   Yes.

20         Q.   All right.  And on that page look at

21    paragraph four and the Court -- and the

22    (unintelligible) by testimony (unintelligible) legal

23    authority (unintelligible).  Now what is not here

24    that -- it doesn't indicate that you and your wife

25    had counsel.  (unintelligible) represent yourself at

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     that --?

3          A.   Yes.

4          Q.   And on that day looking at page five of

5     that document, Superior Court judge presiding

6     determined that defendants -- that she was in

7     contempt (unintelligible) shall not exceed ninety

8     days total (unintelligible) date of execution.  Did

9     anybody serve you and your wife with

10    (unintelligible)?

11         A.   (unintelligible).

12         Q.   Quite a bit of this stuff occurred when

13    your wife was either trying to represent herself or

14    you all were down here trying to -- as a team trying

15    to represent yourself.  A lot of this occurred, you

16    all did not have an attorney?

17         A.   Yes.

18         Q.   All right.  So per this order, you would

19    note you were on the job on October 27, 2017 as best

20    you can recall?

21         A.   Yes.

22         Q.   Okay.  And you were -- you were notified by

23    -- how  -- who notified you?

24         A.   I done forgotten that, but I don't know if

25    it was my -- my niece -- I think it was my niece or

1    DFWMM Holdings LLC - 17-11413 - 7-19-19

2    my sister or my cousin that called me and said they

3    put Marian in jail.

4         Q.   All right.  So between October 2, 2017 and

5    October 27, 2017 -- between October 2, 2017 and

6    October 27, 2017, did you meet with any attorney

7    concerning the deed of trust and note or -- or the

8    security agreement that you entered into?

9         A.   Did I meet with any attorneys?

10        Q.   Yeah.

11        A.   You mean like --.

12        Q.   Did you at any time meet with any attorney

13   concerning the two agreements that you'd entered into

14   in 2014?

15        A.   No, I don't think so.

16        Q.   Okay.  But on that date, you proceeded to

17   the Courthouse.  How -- how -- how did you come to go

18   to Attorney Watkins' office?

19        A.   How did I?

20        Q.   Yes, who directed -- who instructed you to

21   go?

22        A.   Well, he had -- he was my attorney for, I

23   done forgot, for something and --.

24        Q.   Was he representing you in --?

25        A.   (unintelligible) I think how -- how -- I

1

2    think one of -- I don't know if it was Phil or

3    (unintelligible) said well -- because they had --

4    they had their -- what the -- deposition --

5         Q.   Yes.

6         A.   -- in the case and I think that Phil said

7    if it's all right with him (unintelligible) said

8    we'll -- we'll sign it and it was kind of late at

9    night and they said it's fine if I stay here.

10        Q.   This -- this took place late at night?

11        A.   Well, it was around -- it was around --

12   yeah, it was about eight -- nine because she was in

13   jail and Phil had -- Phil had -- they drew all this

14   up in their -- in their office.  They drew everything

15   up in Chris' office there and -- and explained it to

16   me, telling me (unintelligible).  She get out and you

17   paid this nine hundred dollars a month, this

18   promissory note, and that's what we was going for.

19        Q.   All right.

20        A.   It was --.

21        Q.   So Chris Watkins was not actually

22   representing you in this matter?

23        A.   No.

24        Q.   You went in his -- you went in his office

25   as a matter of convenience?

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          A.   Yes, because he had been my attorney

3     (unintelligible).

4          Q.   All right.  So the deed of trust and the

5     note, you  -- you signed at Chris' office --

6          A.   Yeah.

7          Q.   -- Mr. Watkins' office --

8          A.   Yes.

9          Q.   -- and your wife signed the deed of trust

10    and the note at the jail.

11         A.   In jail.

12         Q.   Okay.  And once -- who signed first?

13         A.   I did.

14         Q.   All right.  Did you at any time have a

15    discussion with your wife about signing?  Did you go

16    down to the jail and talk to her before she signed?

17         A.   No.

18         Q.   Did Chris Watkins go down and talk to her

19    before she signed?

20         A.   I think Chris -- Chris and Phil -- they

21    did.

22         Q.   Chris and Phil went?

23         A.   (unintelligible).

24         Q.   Okay.  But at this time, you had already

25    signed it?

1

2       A.   Yes.

3       Q.   And where -- did you remain at Chris

4   Watkins' office while they went to the jail?

5       A.   Yes.

6       Q.   All right.  And what happened when they

7   returned?

8       A.   After -- when they returned and Phil left

9   all the papers because he had -- he had the -- the

10   judge had to sign it.  I tell you who was

11   representing -- he's a -- an attorney

12   (unintelligible).

13       Q.   What did he have to do with it?

14       A.   He was -- he was -- he was there.  I think

15   he was representing -- I think he was -- I think --.

16       Q.   If he was there, who was he representing if

17   you know?

18       A.   I think he was -- had been representing

19   Marian I think.

20       Q.   Okay.  All right.  So he had been

21   representing Marian and did he accompany them to the

22   jail?

23       A.   I think so.

24       Q.   All right.  Did -- when they came back, did

25   they tell you that you could go get her or did they

1

2      bring her with them?

3      A.   No.  No, they won't let her out until Phil

4      took those papers to (unintelligible) to a Judge's

5      house and they signed them at his house.

6      Q.   Okay.  And do you -- if you can -- how --

7      how -- what length of time did that take if you

8      recall?

9      A.   Well, I'm pretty sure it was about forty-

10     five or fifty minutes around Wake Forest --

11     Q.   Okay.

12     A.   -- and he had to call to let

13     (unintelligible), I think his name is

14     (unintelligible), I might be mistaken of name, and he

15     got the answer, we went to the jail house to get her

16     out and like I said it was about eleven.  It was --

17     it was midnight.

18     MR. JOHNSON:  Nothing further at this point,

19     Your Honor.

20     THE COURT:  Yes, sir?

21     REDIRECT EXAMINATION

22     BY MR. PINERO:  (Cont'g)

23     Q.   Mr. Richmond, your wife's been held in

24     contempt multiple times.  Right?

25     A.   In contempt, multiple?

1         DFWMM Holdings LLC - 17-11413 - 7-19-19

2        Q.   Multiple times, more than once.

3        A.   What you mean?  Been in jail?

4        Q.   Not been in jail.  Been held in contempt by

5 the Court.

6        A.   I don't -- I'm not sure.

7        Q.   Well, wasn't she held in contempt and put

8 in jail in 2014?

9      MR. JOHNSON:  We'd object to that line of

10 questioning unless it comes after October 27, 2014.

11 The basis of our objection is the settlement

12 agreement and covenant to not sue was entered into on

13 October 27, 2014 which is -- which is essentially

14 resolving any and all bad behavior up until that time

15 per this agreement.

16      THE COURT:  I'll -- I'll allow the question.

17      BY MR. PINERO:  (Cont'g)

18        Q.   She was held in contempt in 2014.  Correct?

19        A.   I'm not sure because a lot of the times I

20 wasn't there.

21        Q.   I'm just trying to get the timeline right

22 because you -- you -- you just said you got her out

23 of jail in 2017.  You were talking about a 2017 order

24 and getting her out of jail, but you actually got her

25 out of jail in 2014, didn't you?

1

2      A.   That's what -- that's what date that was --

3    that's when we signed the promissory note.  I mean I

4    don't know what  -- I forgot what year it was.  I

5    didn't keep up with it.  Whatever year it was that --

6    that Phil was in Chris Watkins' office and they had

7    me to sign that paper.  Whatever year it was -- what

8    date it was, that's when -- when she went to jail on

9    that day.

10       Q.   The day you signed the promissory note was

11    the date she went to jail.  Correct?

12       A.   That's the date.

13       Q.   2014 is when you signed the promissory

14    note.  Correct?

15       A.   If that's -- if that's -- if that's what it

16    is.

17       Q.   Yes.  And the date that your counsel now is

18    talking about and conflating here is the 2017

19    contempt, isn't it?  He  -- he pointed out a 2017

20    order, didn't he?

21       A.   Yes.

22       Q.   And then he said well, did you go to Chris

23    Watkins, did you get your wife out of jail.  Right?

24       A.   Did I --?

25       Q.   Did you get your wife out of jail in 2017?

DFWMM Holdings LLC - 17-11413 - 7-19-19

1

2      A.   No.

3      Q.   Because she wasn't in jail in 2017.

4 Correct?

5      A.   No.

6      Q.   There was a contempt order, but she had

7 been -- she has -- the sheriff hasn't found her.

8 Correct?

9      A.   That's right.

10     Q.   So who was your attorney when you signed

11 this document -- the promissory note and the -- and

12 the other?

13     A.   I didn't have an attorney at the -- at the

14 time.

15     Q.   Wasn't Chris Watkins your attorney at the

16 time?

17     A.   I don't think so.

18     Q.   Didn't he appear for you at that hearing?

19     A.   I don't know if he did or not.

20     Q.   Didn't you testify that he was your

21 attorney at that time?

22     A.   No, he was -- he was my attorney for

23 another time.  I don't know if it was for that.  I

24 don't know.

25     Q.   Do you still have your book?

1

2      A.    Excuse me?

3      Q.    Do you still have that book I gave you?

4      A.    The book -- yeah, right here.

5      Q.    Can you turn to tab five and go to

6      Plaintiff's one nine seven?

7      A.    Okay.

8      Q.    Paragraph twenty-two or line -- let me --.

9      MR. PINERO:  If I may approach the witness, Your

10     Honor?

11     THE COURT:  Yes.

12     MR. PINERO:  Strike what I said please.

13     BY MR. PINERO:  (Cont'g)

14     Q.    Paragraph two, let's talk real quick about

15     Chris Watkins.  This is your deposition.  Right?  We

16     looked at it earlier.

17     A.    Yeah, okay.

18     Q.    Let's talk real quick about Chris Watkins.

19     You hired Chris -- Chris Watkins at some point to

20     defend you in the case against Marian Jones-Richmond.

21     Correct?  Okay.  When you signed these documents, you

22     said you had an attorney.  Correct?

23     A.    Uh-huh.

24     Q.    And the attorney -- well you signed these

25     documents before the attorney.  Right?  He was with

1           DFWMM Holdings LLC - 17-11413 - 7-19-19

2       you when you signed the documents?  Yes?  Was that

3       your testimony then?

4           A.   I don't understand the questions you're

5       asking me.

6           Q.   The order that your -- your attorney just

7       pointed out, tab two, the fourth page, and that's

8       Plaintiff's four.  You just testified that your wife

9       didn't have an attorney at this hearing.  Correct?

10      This is the one where she's held -- held in contempt.

11      Correct?

12          A.   I -- I don't know if she has an attorney or

13      not.  I don't think so.  I don't know.  I don't --

14      because I didn't go to court with her every time when

15      she went.

16          Q.   Doesn't it say on the second line there the

17      defendant was present in court represented by

18      attorney Bryan Ray?

19          A.   I mean was -- why you -- what's -- what

20      page you on?

21          MR. PINERO:  If I may approach, Your Honor?

22          THE COURT:  Yes.

23          MR. JOHNSON:  What tab are we on and what page

24      are we on?

25          MR. PINERO:  We're on Plaintiff's Four.

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          MR. JOHNSON:  Tab four?

3          MR. PINERO:  Tab two of Plaintiff's Four.

4          MR. JOHNSON:  Okay.

5          BY MR. PINERO:  (Cont'g)

6          Q.   Isn't this the order that your attorney

7     just questioned you about, about what the -- that

8     held your wife in contempt in 2017?

9          A.   I don't know if I see - (unintelligible) or

10    not.  I don't know.  I don't know.

11         Q.   But that second sentence definitely says

12    that your wife was represented by Bryan Ray.

13    Correct?

14         A.   That's what it says, yeah.

15         Q.   Were you represented by Bryan Ray at that

16    time?

17         A.   I don't think I was.

18         Q.   Were you represented by Chris Watkins at

19    that time?

20         A.   I don't think so.  No, because this is when

21    I -- this is -- I don't think so.

22         Q.   And that settlement -- those papers have

23    nothing to do with this order.  Right?  They

24    couldn't.

25         A.   What papers?

1

2      Q.   The settlement, the promissory note, the

3      deed of trust, all that had nothing to do with this

4      order, do they?

5      A.   I don't quite understand having to do

6      anything with this.

7      Q.   The papers that you signed in 2014, do they

8      have anything to do with the order in 2017?

9      A.   I -- I don't know.

10     Q.   Did you sign the papers in 2014 because of

11     this order that was entered in 2017?

12     A.   I signed -- I signed the papers under

13     duress to get my wife out of jail and if all this

14     covers that -- this covers that.

15     Q.   So you're claiming your expenses are three

16     thousand eighty-two dollars, correct, a month?

17     Correct?

18     A.   If that's what you have on the paper.

19     Q.   And that your income is two thousand six

20     hundred seventy-five dollars a month?

21     A.   If that's -- that's on the paper.

22     Q.   And -- so you're negative four hundred

23     dollars in the hole, right, every month?

24     A.   I don't -- I don't know.

25     Q.   But it -- in a different --?

DFWMM Holdings LLC - 17-11413 - 7-19-19

1

2          A.    If that's related because my taxes -- if

3     that's what is on the tax return, that's what's on

4     the tax return.

5          Q.    Okay.  And -- and your wife left.  Right?

6          A.    Yeah.

7          Q.    So you're paying all these bills yourself?

8          A.    Yes.

9          Q.    And you don't have any savings?

10         A.    No.

11         Q.    And you're not getting rid of any of the

12    debts -- you're reaffirming all the debts that you

13    listed in your expenses.  Correct?

14         A.    I'm doing what?

15         Q.    You're not getting rid of any of the debts

16    that you listed in the expenses, are you?

17         A.    (unintelligible)?

18         Q.    Are you -- are you going to stop paying for

19    your -- your home -- your mortgage to Proponent?

20         A.    (unintelligible).

21         Q.    Are you reaffirming your debt with

22    Proponent -- your mortgage?

23         A.    You -- you did that in court.  You did --

24    you set that up before Proponent would not accept my

25    payment --

1

2        Q.    Okay.

3        A.    -- and I went down to Proponent to make my

4    payment, they said that D.F. Holding Company had

5    something that they wouldn't accept my -- my payment

6    and they -- you did that and like I said before, you

7    had (unintelligible), why you coming after mine?

8        Q.    That's --.

9        A.    You all put my wife in jail to get my

10    property, so why you coming after mine?  I don't have

11    anything to do with that.  You all brought the

12    lawsuit against my wife.  You going to bring -- why

13    didn't you bring against both of us at the same time?

14    You didn't do that.  You came back and did that, so I

15    don't understand how you did it, but I'm not

16    understanding nobody.  I'm not understanding nobody.

17    The way that happened, it happened, I'm not

18    understanding you or the Court.  I'm not angry with

19    no one.  I have love for people.  I -- but I just

20    don't understand why you coming after my property and

21    you got your aunt property.  You -- I don't

22    understand that and I know it's been passed down, but

23    I'm not angry about it and you can backwards and

24    forward all you want to.  It's not going to change

25    anything.  It's out of love.

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          Q.   If you have no savings and you don't -- and

3     you make less money every month than you spend, how

4     are you paying your bills right now?

5          A.   I work.

6          Q.   Okay.  But you only make -- you don't make

7     enough money to pay your bills is what you're saying

8     aren't you?

9          A.   I -- I (unintelligible).  I pay -- I work.

10    I pay my bills.

11         Q.   You pay all your bills?

12         A.   Yes.

13         Q.   By yourself?

14         A.   Yes.

15         Q.   With the income you listed here in the

16    bankruptcy?

17         A.   I pay what I can.

18         Q.   Do you pay what you can or do you pay all

19    of them?

20         A.   I pay what I can.

21         Q.   Isn't it true that your wife is still

22    living with you?

23         A.   No.

24         Q.   So how are you paying these bills?

25         A.   I work and sometimes I have to get money

1

2      from friends.  I have to borrow money.

3           Q.   Have you borrowed money in the last year?

4           A.   Yes.

5           Q.   Have you borrowed money in the last month?

6           A.   Yes.

7           Q.   Who'd you borrow the money from?

8           A.   A friend.

9           Q.   Who?

10          A.   A friend.

11          Q.   What's the name of your friend?

12          A.   A friend.

13          Q.   What's the name of your friend?

14          A.   I don't recall his name.

15          Q.   What's the name of your friend who lent you

16     money last month?

17          A.   I don't recall the person's name.

18          MR. PINERO:  Your Honor, I'm going to request

19     him --.

20          THE COURT:  I'm waiting for an objection because

21     I'll sustain the objection.  I don't see the

22     relevance.

23          MR. JOHNSON:  It's been asked and answered

24     several times and I agree as to relevance.

25          THE COURT:  I mean as to who the person is, I

1        DFWMM Holdings LLC - 17-11413 - 7-19-19

2    mean what relevance is it to the matter we have

3    before us today?

4        MR. PINERO:  The relevance is that we believe

5    Mr. -- Mr. Richmond is lying in this petition about

6    not having his wife live with him and -- and pay for

7    these bills.

8        MR. JOHNSON:  No, actually, he -- he filed

9    individually of course which he has an absolute --

10       THE COURT:  Right to do.

11       MR. JOHNSON:  -- right to do.

12       THE COURT:  So I'm not going to tell him to --

13   to answer the name of the individual.

14       BY MR. PINERO:  (Cont'g)

15       Q.   And so you're -- so when you said you were

16   separated from your wife, you were telling the truth

17   here on this document, so she doesn't live in your

18   house?

19       A.   No.

20       Q.   Okay.

21       A.   You all foreclosed on the house.

22       Q.   What does the foreclosure have to do with

23   anything?

24       A.   I have to get out.

25       Q.   You haven't moved out though?

DFWMM Holdings LLC - 17-11413 - 7-19-19

1

2      A.    I'm there sometimes.

3      Q.    You have another residence?

4      A.    No.

5      Q.    So when you're not there, where are you?

6      A.    In my car.

7      MR. JOHNSON:  Objection to relevance.

8      THE COURT:  Sustained.

9      BY MR. PINERO:  (Cont'g)

10     Q.    Are you discharging any other -- attempting

11  to discharge any debts other than the debt that --

12  that you have with D.F.W.M.M.?

13     THE COURT:  Sir, I'm not --

14     MR. JOHNSON:  Objection (unintelligible).

15     THE COURT:  -- I'm going to direct him not to

16  answer that question.  You're asking for a legal

17  conclusion.

18     BY MR. PINERO:  (Cont'g)

19     Q.    When you used to get paid, did you get paid

20  in -- I'm sorry.  Scratch that.

21     Do you get paid in cash or check?

22     A.    For what?

23     Q.    When you contract for your work?

24     A.    A check.

25     Q.    Do you know how many loads per day you

1

2     normally do?

3         A.   It varies.

4         Q.   Can you give an estimate?

5         A.   Three, five, ten, eleven, it varies.

6         Q.   And how many days a week do you work?

7         A.   I try to work five, but sometimes I don't.

8         MR. PINERO:  No further questions, Your Honor.

9         THE COURT:  Okay.

10        MR. JOHNSON:  I have no further questions, Your

11    Honor.

12        THE COURT:  Thank you, sir.  You can step down.

13        THE WITNESS:  Thank you.  (unintelligible)?

14        THE COURT:  You can just leave it.  Just leave

15    those there.

16        THE WITNESS:  Right here?

17        THE COURT:  Just don't take them with you.

18        THE WITNESS:  All right.  Thank you.

19        THE COURT:  All right.  Any further evidence?

20        MR. PINERO:  Yes, Your Honor.  I want to -- I'm

21    asking to mark the official copies of the underlying

22    state records as an exhibit?

23        THE COURT:  That's fine.  We admitted that as

24    the book.  The book was admitted as Exhibit Two.

25        MR. PINERO:  But they're not -- they're not all

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     in there.

3          THE COURT:  Okay.

4          MR. PINERO:  All the documents that are in here

5     -- well, I didn't know if you needed the one with the

6     seal, Your Honor.

7          THE COURT:  If Mr. Johnson doesn't object, I

8     mean --.

9          MR. PINERO:  They're not in the book, but these

10    are the  --

11         MR. JOHNSON:  But are all of these --

12         MR. PINERO:  -- pre-trial disclosure.

13         MR. JOHNSON:  -- documents --.

14         MR. PINERO:  They're not all in the book.  This

15    is a certified copy from the Court.

16         MR. JOHNSON:  It's different from what you've

17    already offered.

18         MR. PINERO:  Well, this -- it's the same cover

19    page -- well, I don't know that it's any different

20    actually.

21         THE COURT:  The ones we have here have a

22    certification.

23         MR. PINERO:  Yes, the same document.  I may not

24    have included every page in the book.

25         THE COURT:  So you're just asking to supplement

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2      it with the entire document?

3          MR. PINERO:  Yes.

4          MR. JOHNSON:  Your Honor, to the extent that

5      these documents are really the same that are in the

6      book, I would have no objection.  To the extent that

7      there's a difference, they have no foundation really

8      that's been laid to their admission, I would.

9          THE COURT:  Were they listed -- were the -- in

10     the pre-trial disclosure, does the pre-trial

11     disclosure have what is in this book and nothing more

12     or does it have the complete documents?

13         MR. PINERO:  The pre-trial disclosure has the

14     complete documents and they're here.

15         THE COURT:  And it's nothing more than documents

16     in the state court?

17         MR. PINERO:  Correct.  These are just the state

18     court documents that were submitted in the pre-trial

19     disclosure, but for the ease of the Court, I didn't

20     want to include a bunch of documents that maybe I

21     didn't have to ask the witness about.

22         MR. JOHNSON:  I'll tell you what the

23     (unintelligible) on that second one, fourteen to

24     thirty-six is missing, so on the second one, the

25     second half of is missing.

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2          MR. PINERO:  If it helps the Court, the cover

3     page for each of these describes all the documents

4     that are in there and there's no other documents than

5     are listed in the cover page.

6          THE COURT:  Thank you.

7          MR. JOHNSON:  I have --

8          THE COURT:  Thank you.

9          MR. JOHNSON:  -- I have no objection.

10         THE COURT:  I'll admit them as Exhibit --

11    Exhibit Four.

12         MR. PINERO:  And that was admitted, Your Honor?

13         THE COURT:  Yes.

14         MR. PINERO:  Thank you, Your Honor.

15         THE COURT:  As Exhibit Four.  And this -- is

16    that the close of the Plaintiff's evidence?

17         MR. PINERO:  Yes, Your Honor.

18         THE COURT:  Okay.  Thank you.  Mr. Johnson?

19         MR. JOHNSON:  Your Honor, one thing that strikes

20    me as a glaring absence in this whole matter is this

21    actually started out again based on statutory fraud

22    against Ms. Richmond and I-- I understand how Mr.

23    Richmond was later brought in a 2013 case, but what

24    is absolutely missing here is how D.F.W.M.M. Holdings

25    came to be a party and interest under any situation.

1    DFWMM Holdings LLC - 17-11413 - 7-19-19

2    There's nothing in -- there's nothing in the

3    documents that are being presented today.  There's no

4    -- there's nothing to indicate that they at any point

5    purchased, were given or signed the judgment that had

6    come to pass in this matter under the 2010 and 2013

7    cases.  In the meantime, of course, the agreement was

8    entered into in 2014 which settled both of those

9    matters and -- and what is likely is how in the end

10   did they become a party at interest?

11        The Ritz [phonetic spelling] case of course has

12   been handed up and I understand that that is the new

13   order of the day, but the glaring difference between

14   this matter and the Ritz case is that in -- number

15   one, it was actual versus constructive or statutory

16   fraud.  The only -- the only thing that's been proven

17   here today is that there was this matter that started

18   in 2010 and 2013 on the back of statutory and

19   constructive fraud, both of which -- both of which

20   were merged into a settlement agreement and covenant

21   not to sue.  There's absolutely no showing today of

22   any actual fraud that followed thereafter.

23        Now I can certainly understand the question

24   about the motorcycle.  The trustee in this matter had

25   the exact same questions which is what forced us to

1          DFWMM Holdings LLC - 17-11413 - 7-19-19

2     get information to back up what Mr. Richmond was

3     telling us and what we were telling him and we

4     presented that information.  The schedules I've -- I

5     would gladly admit have some -- some issue about it.

6     The information that was provided therein came from

7     Mr. Richmond and his tax -- his tax returns and to

8     the extent that his tax returns reflected what he --

9     what his income or loss was for that -- for the two

10     years immediately preceding his -- his filing, that

11     is what we used to prepare his petition.

12          Now it is certainly a fact that the -- what the

13     tax return indicates as far as a loss or -- or a

14     profit is, it does not have a whole lot to do

15     sometimes with what actual gross and spendable income

16     is.  There are a number of deductions and other

17     things that can be taken, credits and so on, so that

18     you end up with what I have in my pocket from month

19     to month may -- may differ considerably from what a

20     tax return shows my actual income was, so I would

21     think to show that there was some fraud in that

22     regard would -- would at least require a -- a showing

23     or a requirement that he bring in actual invoices to

24     back -- to back up what he's -- he has put in his

25     petition or to challenge the tax return, but to just

1

2    ask the questions and with nothing more to show that

3    disputes what he put in there, then I would say that

4    certainly doesn't constitute actual fraud.

5         The most concerning thing to me here has to do

6    with the Cadillac automobile and he did not complete

7    that petition.  He did not complete that application.

8    He, of course, is held accountable for what is in it

9    and to the extent that whoever financed this

10   automobile or Bill Black Cadillac or both have a

11   problem, they -- they may very well -- we may very

12   well circle around and be right back here again, but

13   that -- what he put in that other than to the extent

14   that Mr. Pinero attempts to say that that somehow

15   makes what he put in his petition which again was

16   based on a social security report and a -- a tax --

17   and a tax return, the two are in separate universes

18   and I can't explain what the difference is and

19   perhaps -- perhaps even from the tax return when it

20   started out would not show a gross that would

21   substantiate that particular document, but

22   nonetheless, that is -- that is not proof that there

23   is anything wrong with the petition yet.

24        The Suzuki motorcycle was not put on the

25   petition because at the time he filed, the Suzuki

DFWMM Holdings LLC - 17-11413 - 7-19-19

1

2   motorcycle was no longer around.  The Harley Davidson

3   was prominently displayed on the petition which

4   raised Mr. -- the trustee's questions about it.

5   That's on there.  Then the -- all of the personal

6   property including the guns at the time of this

7   filing, somehow had -- had been held by the clerk of

8   the Superior Court to have been sole property of the

9   wife.  That is not being disputed here today and for

10  that reason, (unintelligible), there was no call for

11  him to list that at a secured level wise because it

12  had already been deemed by a lower court that it

13  wasn't his and that's -- that is precisely the reason

14  we didn't put it in.  I admit I knew nothing at all

15  about the security agreement which may otherwise have

16  covered it had it -- had it not been for the

17  circumstances at hand, but the circumstances at hand

18  is for the most part, the objects that did not have a

19  title to them, we went by what -- what had been found

20  by the Clerk of Alamance Court -- the Clerk of

21  Superior Court of Alamance County.

22       The controlling case at this point in time still

23  calls for a -- for the fraud contemplated by Section

24  Five Twenty-three A, two, A, it still calls for

25  actual fraud.  Now there's no question it was -- it

1       DFWMM Holdings LLC - 17-11413 - 7-19-19

2       was like night and day up until this case and what

3       came after, you know, and their definition

4       (unintelligible) actual fraud, but nonetheless, it

5       still stands the statute speaks to actual fraud and

6       there's been no actual fraud demonstrated here for

7       which any money owed to D -- to this entity should be

8       -- should be -- should not be -- should not be

9       discharged.  D.F.W.M.M. Holdings L.L.C. of course by

10      reason of deed of trust was signed under duress and -

11      - and I don't think we can escape that, but

12      nonetheless, it was signed, and they have foreclosed

13      on it.  They have -- they have their means of trying

14      to satisfy this judgment outside of this court and

15      for that reason and other reasons as stated, this

16      man's discharge of this debt should not be denied.

17          THE COURT:  Thank you.  Closing?

18          MR. PINERO:  Your Honor, I didn't hear any

19      evidence being presented about -- just now.  I heard

20      a closing, but I didn't hear any evidence being

21      presented so the Plaintiff's evidence is the only

22      evidence before you and -- and the -- and the

23      petition, Your Honor.  The Defendant here is -- is a

24      liar, Your Honor.  He'll lie when it helps him.  In

25      this case, he's lying so he can make - he can have --

1

2    meet the means test.  He's lying on the petition

3    about his income.  He lied on the stand when he said

4    that he didn't put the number in -- in the Bill Black

5    because in his testimony or he lied when he claimed -

6    - when he said he claimed his income was forty-nine

7    thousand dollars or he's lying in the petition.  We

8    don't see how he can pay the bills that he's going to

9    have to continue to pay unless he's lying about his

10    income.

11        He's not getting any of that discharged.  All

12    he's getting discharged is our debt -- my client's

13    debt.  He's either -- he's -- we've shown that he

14    will lie under oath.  The -- the way this came about

15    was that he got under oath and testified about money

16    his wife gave him which -- which put him in a

17    situation where he had a fraudulent transfer action

18    against him.  Then --.

19        THE COURT:  I don't mean to interrupt your

20    closing, but there are no reaffirmation agreements on

21    file.  That means any debt that would be entitled to

22    discharge would -- would be discharged.  He hasn't

23    reaffirmed any debt.

24        MR. PINERO:  He's --.

25        THE COURT:  So I don't know -- I don't -- I'm

117 of

1      DFWMM Holdings LLC - 17-11413 - 7-19-19

2      not following your statement that he's going to

3      continue to pay for things other than your client's

4      debt?

5          MR. PINERO:  Well, he's claiming he's going to

6      reaffirm the mortgage and the -- and the car payment.

7          THE COURT:  Well, but that time period has long

8      since passed and he didn't -- there were no

9      reaffirmation agreements filed with the Court.  He

10     can voluntarily choose to pay debts, but there's no

11     binding obligation that makes that an ongoing

12     obligation.  There are no reaffirmations.

13         MR. PINERO:  I apologize for making that

14     argument, Your Honor, based off of that information.

15     Nonetheless, Mr. Richmond has lied under oath many

16     times.  He came up here and he lied under oath.  He

17     said that he never lied about how much money he made,

18     so either he's lying when he said he never lied about

19     it or he was lying when he lied about it, but the

20     point is you got somebody who is lying about his

21     income and just so  -- just enough so that he can

22     stay under that -- the amount that he will need --

23     under the petition, he needs -- in order to not --

24     not have to do the means test, he has to make under

25     forty-five thousand dollars and lo and behold, his

1     DFWMM Holdings LLC - 17-11413 - 7-19-19

2     income is under forty-five thousand dollars, so he

3     doesn't have to do the means test and he won't

4     qualify for the means test with forty-nine thousand

5     dollars or with five thousand four hundred dollars.

6          He won't qualify for a chapter seven bankruptcy.

7     That's why he's lying about his income.  He's lying

8     either now or he was lying when he testified under

9     oath about owning a Harley Davidson.  He's lying

10    either now or he's lying about - about   -- about it

11    when he was under oath about his property.  He's

12    lying about the Suzuki and he will use -- it's --

13    it's clear from his testimony -- well, strike that.

14         In his testimony, you could hear him discussing

15    how he uses his family and friends to help him lie

16    and make -- make up these stories.  He said his --

17    when -- when it suits him, his income is high.  When

18    it suits him, his income is low.  I -- our position

19    on the -- that's -- that's our argument on Seven

20    twenty-seven.

21         Our position on 523 is that the Ritz case

22    controls and that that case says that the recipient

23    of a transfer can obtain, sorry, obtain assets by his

24    participation in the fraud and that debts traceable

25    to him are fraudulent conveyance and would be non-

```
1              DFWMM Holdings LLC - 17-11413 - 7-19-19
2         dischargeable under 523(a)(2)(a).  We're basing that
3         on the orders that we have put into evidence, Your
4         Honor.
5              THE COURT:  All right.
6              MR. PINERO:  Thank you, Your Honor.
7              THE COURT:  Thank you.
8              MR. JOHNSON:  Just -- just one thing, Your
9         Honor.  These transfers and so forth to which he
10        refers as specifically was not objected to nor was it
11        crossed.  What, if any, transactions, consideration
12        or anything had been extended to or by the -- the
13        Plaintiff in this matter today, the client has
14        testified that there is nothing, so the settlement
15        agreement settled all of those transgressions as I
16        indicated.
17             THE COURT:  Okay.  Thank you, gentlemen.  I'm
18        going to take this matter under advisement.  We're
19        adjourned.
20                            CERTIFICATE
21             I certify that the foregoing is a correct
22   transcript from the electronic sound recording of the
23   proceedings in the above-entitled matter.
24
25
```

1        DFWMM Holdings LLC - 17-11413 - 7-19-19

2    _____

3    Judith Spriggs                    26 August 2019
     Transcriptionist                  Date

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

800.523.7887          5-16-2019, WORD INDEX, DFWMM case          Associated Reporters Int'l., Inc.

Page 1

## A

**ability** 8:25 19:23 82:13
**able** 48:19 69:9 83:5
**above-entitled** 119:23
**absence** 110:20
**absolute** 105:9
**absolutely** 110:24 111:21
**accept** 101:24 102:5
**accepted** 72:14
**accompany** 83:20 92:21
**accountable** 113:8
**accountant** 65:16,24 69:21
**accurate** 60:24
**acknowledge** 43:2
**action** 21:15 22:9 78:5 79:2,2,9
  80:2,5 81:4 116:17
**actual** 1:10 111:15,22 112:15,20
  112:23 113:4 114:25 115:4,5,6
**add** 23:25
**added** 79:5
**addition** 82:19
**address** 3:12 6:20 43:5
**addressed** 43:2
**adhere** 4:3
**adjourned** 119:19
**Administrator** 1:17
**admission** 109:8
**admit** 64:4 110:10 112:5 114:14
**admitted** 63:16 107:23,24 110:12
**Adversary** 1:4
**advisement** 119:18
**affairs** 58:15
**affect** 19:23 20:25
**affirm** 6:2,3,5
**affirmation** 6:8
**affirming** 5:25
**ago** 7:17
**agree** 104:24
**agreed** 17:9 36:18
**agreement** 25:2 36:3,5,6,10,12
  38:7 39:11,23 41:5 42:13
  43:20,22 44:2 61:5,15,21
  62:25 63:4,12,19,22 76:21
  77:3 82:20,21 85:18 89:8
  94:12,15 111:7,20 114:15
  119:15
**agreements** 89:13 116:20 117:9
**air** 27:23 28:6,11,15,19
**AL** 1:4

**Alamance** 22:12 72:12,23 76:25
  114:20,21
**allege** 14:21,22
**allow** 83:11 94:16
**allowed** 73:19,20
**amount** 117:22
**angry** 102:18,23
**answer** 15:20 47:10,10,15,17
  49:23 59:21 73:14 93:15
  105:13 106:16
**answered** 15:16,18 54:17 104:23
**anybody** 66:19 88:9
**anymore** 85:17
**anyone's** 4:23
**apologize** 12:12 117:13
**appear** 14:13,15 96:18
**APPEARANCES** 1:12
**appeared** 14:10,15 15:2,3
**application** 51:24,25 52:14 71:6
  113:7
**applied** 52:16
**applying** 52:2,8,12,22 55:22
  56:10
**approach** 6:14 8:3 11:24 12:18
  13:20 18:8 29:15 30:9 31:10
  37:22 39:16 40:22 41:23 49:13
  51:13 56:18 57:6,19 60:10,19
  61:12 87:6 97:9 98:21
**Approximately** 59:25
**aren't** 103:8
**argument** 117:14 118:19
**ARON** 1:6
**articles** 73:3
**asked** 5:3 15:18 23:5,10,13 47:7
  49:22 58:3,4 104:23
**asking** 9:5,6 23:12 42:18 63:3
  98:5 106:16 107:21 108:25
**asphalt** 66:18
**asset** 44:19
**assets** 56:12 118:23
**associated** 2:6 81:5
**attached** 33:20
**attachment** 63:21
**attempting** 106:10
**attempts** 113:14
**attention** 4:2 20:7
**attorney** 37:2,4,4 40:15,16
  78:20 88:16 89:6,12,18,22
  91:2 92:11 96:10,13,15,21,22
  97:22,24,25 98:6,9,12,18 99:6

800.523.7887          5-16-2019, WORD INDEX, DFWMM case     Associated Reporters Int'l., Inc.

Page 2

**attorneys** 84:14 89:9
**August** 120:3
**aunt** 23:13 102:21
**auntie** 23:5 62:21
**authority** 21:21 87:23
**automobile** 113:6,10
**aware** 4:5

### B

**back** 9:13 31:17 32:21 33:13
  36:2 38:25 43:11 53:6 54:7
  75:7 85:24 92:24 102:14
  111:18 112:2,24,24 113:12
**backwards** 102:23
**bad** 21:20 94:14
**Baldwin** 6:24 22:25 25:11
**bankruptcy** 1:2,7,17 29:20 45:13
  48:18 58:16,20 61:3,7 63:3
  71:12 72:9 75:12 76:25 103:16
  118:6
**based** 110:21 113:16 117:14
**Basically** 80:3
**basing** 119:2
**basis** 50:19,22,25 56:13 94:11
**began** 3:14
**begged** 3:20
**behalf** 81:9
**behavior** 94:14
**behold** 117:25
**believe** 105:4
**belong** 77:4
**belonged** 17:5 25:15 72:19 73:5
  80:6
**benefits** 55:3,6,9 58:2
**best** 4:3 8:25 59:21 85:3 86:10
  88:19
**bible** 5:25
**bid** 65:3
**bidder** 64:10,13
**big** 25:23 26:24 27:20,23
**Bigelow** 74:7,8 75:23
**bike** 45:10,24 46:7 47:22,22,23
  75:2
**bill** 52:14 53:7,20,21,22 58:5,8
  58:10 113:10 116:4
**bills** 55:21 66:6 101:7 103:4,7
  103:10,11,24 105:7 116:8
**binding** 117:11
**birth** 52:18
**bit** 60:4 88:12

**black** 51:22 52:14 58:6,8,10
  71:7,7 113:10 116:4
**blacked** 52:19,20,22
**blank** 57:17,22
**Blount** 1:16
**Bob** 10:3,9,12,14,21 11:8,9
**book** 63:10 96:25 97:3,4 107:24
  107:24 108:9,14,24 109:6,11
**borrow** 104:2,7
**borrowed** 104:3,5
**bottom** 19:4 21:8 31:7 46:15
  53:17 54:8 62:3 87:10
**bought** 46:4,6 47:21,22 73:24
**Box** 1:24 2:4
**brake** 68:22
**briefing** 5:6
**bring** 4:2 93:2 102:12,13 112:23
**broke** 74:23
**brought** 20:6 38:11 102:11
  110:23
**Bryan** 98:18 99:12,15
**building** 35:13
**bunch** 109:20
**Burlington** 6:24 80:22
**business** 7:7 25:17 26:13 27:5
  27:21 28:4,7,23 30:19,21,23
  31:4 33:6,15 34:7,10,19,24
  35:3,7,8,10,11,14,21 55:20
  66:12 73:8 77:7,22,24 78:3
**business-** 30:15
**buy** 26:21 45:23,25 47:7,8,10,12
  52:3 53:2 73:23

### C

**C.V.S** 7:22 11:16 22:13 32:24
  87:16
**Cadillac** 51:22 52:3 53:3,10
  71:7,7 113:6,10
**call** 5:21 24:15 40:17 69:25
  75:3 84:24 86:15 93:12 114:10
**called** 3:18 87:15 89:2
**calls** 114:23,24
**can't** 9:8,8 20:2 25:20,22 54:3
  59:20 65:21 71:19 84:22 87:5
  113:18
**cancelled** 70:18,20
**car** 53:9,13 106:6 117:6
**care** 80:20
**CAROLINA** 1:3
**case** 1:4,4 7:23 8:8 11:9 16:8

800.523.7887          5-16-2019, WORD INDEX, DFWMM case          Associated Reporters Int'l., Inc.

Page 3

22:12 31:24 40:3 42:5,8 78:6
87:15 90:6 97:20 110:23
111:11,14 114:22 115:2,25
118:21,22
cases 111:7
cash 106:21
cashed 38:17,23 39:4,5
CATHARINE 1:6
cause 14:4
CB 25:14 29:3
certainly 72:3 111:23 112:12
113:4
CERTIFICATE 119:20
certification 108:22
certified 108:15
certify 119:21
challenge 112:25
chance 4:6 65:11
Chandler 69:2 70:23
change 102:24
changing 68:16
chapter 75:11 118:6
check 30:3 54:22,23 106:21,24
checked 29:25 30:16
checks 38:17,25 70:18,20
Chevrolet 52:14 58:6
choose 117:10
Chris 37:11 46:20 90:15,21 91:5
91:18,20,20,22 92:3 95:6,22
96:15 97:15,18,19,19 99:18
circle 113:12
circular 34:21
circumstances 4:4 114:17,17
city 1:15 43:3 80:18,18
civil 12:16,25
claim 31:19,21,23 32:23 33:12
33:20 49:23 72:12,13,18 73:2
73:7
claimed 33:14 51:7 56:25 60:13
116:5,6
claiming 40:8,8 100:15 117:5
clear 118:13
clerk 3:2 7:22 72:24 77:2 114:7
114:20,20
client 16:11 119:13
client's 116:12 117:3
clients 14:22
close 110:16
closing 115:17,20 116:20
clutch 68:23

code 43:4
collect 16:21
collected 74:16,19
come 5:23 17:14,20,21,24 40:4
42:14 67:15 84:19,21,24 89:17
111:6
comes 14:4 94:10
coming 42:17 58:24 62:22 102:7
102:10,20
Company 102:4
complete 56:14 109:12,14 113:6
113:7
completed 56:15
compressor 27:23 28:7,11,20
concerned 62:12,13
concerning 41:4 89:7,13 113:5
concerted 21:15 22:9
conclude 4:17
concluded 72:17,23
conclusion 106:17
conference 44:4
conflating 95:18
conflict 3:25
connected 65:10
connection 73:4
considerably 112:19
consideration 119:11
consistently 19:2
constitute 113:4
constructive 111:15,19
Cont'g 6:24,25 8:7 9:10 12:3,21
14:9 15:23 18:11 19:5 28:16
29:18 30:13 31:5,13 37:25
39:22 40:25 42:2 44:11,23
49:18 51:15 56:20 57:8,21
60:12,22 61:14 64:6 65:15
73:17 75:22 76:19 87:13 93:22
94:17 97:13 99:5 105:14 106:9
106:18
contemplated 114:23
contempt 86:2,22,25 87:3 88:7
93:24,25 94:4,7,18 95:19 96:6
98:10 99:8
contend 42:24
continue 116:9 117:3
continued 79:22
contract 66:25 106:23
contracted 66:19,22,23,24
controlling 114:22
controls 118:22

800.523.7887      5-16-2019, WORD INDEX, DFWMM case     Associated Reporters Int'l., Inc.

Page 4

**convenience** 90:25
**conveyance** 118:25
**copies** 107:21
**copy** 7:21,21 61:15 108:15
**corner** 18:21 31:7 54:8 56:6
**correct** 11:2 13:6,17 14:10,17
  16:13,20 17:22 21:22 24:5,21
  25:13 30:2,20 32:19 33:6,15
  33:21 36:4,8 40:13 41:13
  43:23 45:18 47:17,18 48:20
  49:20,25 52:3 53:14 54:22
  55:25 57:18 58:2,16,21 60:15
  61:16 62:5 68:18 78:17 79:3
  81:13 82:17,18 86:23 94:18
  95:11,14 96:4,8 97:21,22 98:9
  98:11 99:13 100:16,17 101:13
  109:17 119:21
**cost** 26:22
**costs** 70:2,4
**couldn't** 99:24
**counsel** 14:13 41:12,17,18 44:4
  87:25 95:17
**County** 22:12 72:12,23 76:25
  82:17 114:21
**couple** 63:19
**course** 4:3 18:20 48:13 72:8
  105:9 111:7,11 113:8 115:9
**court** 1:2 3:2,7,11,16 4:3,6,10
  4:14,19,22 5:5,7,11,15,18,20
  5:23 6:4,12,15,22 7:22 8:5,21
  8:24 9:5 10:4,9,16 12:2,20
  13:21,23 14:2,4,7 15:20,25
  16:6,7,22 18:10 20:7 21:21
  22:8,12,21 28:6,11 29:16
  30:11,25 31:12 37:20,24 39:10
  39:17,20 40:24 41:24 43:18
  44:3,7,10,21 48:7,19,19 49:15
  51:14 56:19 57:7,20 60:11,21
  61:4,7,13 63:4,9,11,14,17,25
  64:4 65:6,13 72:24,24 73:14
  76:12,17 77:2 84:20 85:25
  86:5 87:9,12,15,17,17,21 88:5
  93:20 94:5,16 97:11 98:14,17
  98:22 101:23 102:18 104:20,25
  105:10,12 106:8,13,15 107:9
  107:12,14,17,19,23 108:3,7,15
  108:21,25 109:9,15,16,18,19
  110:2,6,8,10,13,15,18 114:8
  114:12,20,21 115:14,17 116:19
  116:25 117:7,9 119:5,7,17

**Court's** 4:2 20:6
**Courthouse** 84:21,24 85:14,16
  86:7,10,18 89:17
**cousin** 89:2
**covenant** 39:11 43:20 82:20
  94:12 111:20
**cover** 108:18 110:2,5
**covered** 114:16
**covers** 100:14,14
**credibility** 10:4,10,15
**credible** 11:11,12
**credit** 1:20 51:23 52:3,8,12,16
  52:22 55:22,24 56:3,11,14
  73:22
**creditors** 16:3 21:17 22:11,15
  36:4
**credits** 112:17
**CROSS** 65:7
**crossed** 55:24 119:11
**CT** 53:10
**current** 58:19
**cut** 35:17
**cutter** 34:23

**D**

**D** 115:7
**D.F** 102:4
**D.F.W.M.M** 81:11,16,22 82:6
  106:12 110:24 115:9
**D.M.D** 78:25
**dash** 8:11 12:8,10,10,12,15,15
  12:22,23 18:16 21:8 46:16,23
  61:18
**date** 52:18 58:20 88:8 89:16
  95:2,8,11,12,17 120:3
**Davidson** 45:23 46:5 47:8 73:22
  75:12 114:2 118:9
**day** 3:24 4:16 23:3 27:12 42:21
  48:17 67:24 69:13 79:14 80:11
  84:20 86:3,19,21,23 88:4 95:9
  95:10 106:25 111:13 115:2
**days** 85:8,10 88:8 107:6
**dealer** 47:12,13
**dealership** 51:25
**debt** 3:4 101:21 106:11 115:16
  116:12,13,21,23 117:4
**debts** 101:12,12,15 106:11
  117:10 118:24
**December** 58:25
**decision** 87:16

800.523.7887          5-16-2019, WORD INDEX, DFWMM case          Associated Reporters Int'l., Inc.

Page 5

declared 45:13
deduction 57:3
deductions 112:16
deed 36:18 83:2 89:7 91:4,9
  100:3 115:10
deemed 114:12
Deere 33:23
default 38:12 40:11
defaulted 65:3
defend 97:20
defendant 1:22 14:15,16 21:16
  21:24 22:10,14 24:4 42:5,8,9
  98:17 115:23
Defendant: 701 2:3
defendant's 21:19
defendants 3:5 41:12,13,17,18
  42:24 43:7 88:6
definitely 99:11
definition 115:3
delay 21:16 22:10
deliberate 21:20
demonstrated 115:6
denied 115:16
Dennis 2:2 5:22 6:3,10,21 10:10
  10:15 11:18 14:13,14 19:10
  22:11 24:9,9,17 73:12,13,16
deposition 46:12,19 49:20 90:4
  97:15
describes 110:3
determine 3:3 77:15,17
determined 67:2 73:3 77:2 88:6
DFWMM 1:4,13 3:2 8:18
didn't 8:2 10:18 13:3 16:3,3,6
  16:8 18:3 22:16,19,20,22
  26:11 30:3 36:5 37:12 38:10
  38:12 42:7,7,10,10,15 53:18
  57:25 58:3,5,6,8,8 60:3 61:19
  63:2 64:24 68:3,6,12 76:15
  79:20,24 80:3,15 84:7 85:9,9
  85:17 86:18 94:25 95:5,20
  96:13,18,20 98:9,14 102:13,14
  108:5 109:19,21 114:14 115:18
  115:20 116:4 117:8
diesel 68:16 71:2
differ 112:19
difference 109:7 111:13 113:18
different 8:16 50:18 100:25
  108:16,19
direct 6:17 106:15
directed 89:20

DIRK 1:21 3:9
discharge 1:8 3:4 106:11 115:16
  116:22
dischargeability 1:9,10 3:4
dischargeable 119:2
discharged 115:9 116:11,12,22
discharging 106:10
disclose 61:3,7 62:23
disclosure 108:12 109:10,11,13
  109:19
disclosures 61:19 63:24 76:16
discussing 118:14
discussion 91:15
dishonored 72:14
displayed 114:3
disputed 114:9
disputes 113:3
disregard 21:21
disregarded 21:4
DISTRICT 1:3
Division 87:15
doc 8:11 12:8,12,23 18:15 21:8
  29:13,17 30:5 33:9 41:2 46:23
  58:14 61:18
doctor 20:8 21:3
document 12:22 18:24,25 31:14
  31:19 38:2 39:6 46:11,16
  51:21 52:11 87:14 88:5 96:11
  105:17 108:23 109:2 113:21
documents 52:6,10 84:15 97:21
  97:25 98:2 108:4,13 109:5,12
  109:14,15,18,20 110:3,4 111:3
doesn't 32:13 52:18 87:24 98:16
  105:17 108:7 113:4 118:3
doing 20:15,21 35:12 37:7 67:19
  67:20 79:18 85:2 101:14
dollar 53:3
dollars 23:20,21,22 33:5,14
  38:9,15 49:24 50:23 51:2,7
  53:13 54:5,11,19 55:2 57:14
  58:21 59:16 60:4,14,24 69:8
  69:11 70:3 90:17 100:16,20,23
  116:7 117:25 118:2,5,5
don't 4:14,22 5:8,13 7:10,12,14
  7:16,16,18 8:9,14,19,19,20
  9:2,3,3,9,17 10:20,20 13:4,18
  14:11,11,14 16:7 17:7,7,12,12
  17:13,25 19:7,14,19 20:12,12
  20:13,14,14,14,15,18 21:2,23
  22:16 23:3,6,9,10,25 24:15

800.523.7887          5-16-2019, WORD INDEX, DFWMM case          Associated Reporters Int'l., Inc.

Page 6

25:22 26:3,7,20,20,23,25 27:4
28:9,25 30:18,18,21,25 31:3
31:16,25 32:2,11,16,17 33:17
33:22 35:11 37:3,3,13,13,14
37:14,14,15,16,16 38:25 39:8
39:15 40:2,2,5,10,14 41:6,6,9
42:17,19,19,20 43:23 44:16,16
45:3,8,8,14,14,15,15,19,19,24
46:2,14 48:5,5,5,9,14,14,14
48:15,15,16,22,25 49:5,5,12
49:16 50:13,15,24 52:13,15,21
52:21 53:4,20,24,25 54:2,20
55:4,10,14,14 56:9,16 57:4
58:4,4,5 59:7,13,13,17,18,18
59:19,20,23 60:2,5,5,5,25,25
61:2,2,10,25 62:6,6,7 64:23
65:2,4,25 67:20,23 71:9 74:22
74:22,25 75:9 78:2 80:8 82:14
82:14 83:13,13,14 84:4,8,8
86:4,14,25,25 87:2,3 88:24
89:15 90:2 94:6 95:4 96:17,19
96:23,24 98:4,12,13,13,13
99:9,10,10,17,20,21 100:5,9
100:24,24 101:9 102:10,15,20
102:21 103:2,6 104:14,17,21
107:7,17 108:19 115:11 116:8
116:19,25,25
**dragged** 23:16
**drew** 90:13,14
**drill** 35:2
**driver** 7:6
**driving** 84:25
**drug** 15:7 23:17 24:12
**due** 72:9
**dump** 66:11
**duress** 25:3,8,8 36:11,14,20,22
  36:23,25 37:3 63:2,7 100:13
  115:10

---

**E**

**E** 1:13 2:3
**earlier** 60:3 97:16
**early** 75:10
**ease** 109:19
**eat** 80:25
**Edgeworth** 1:18
**eight** 23:20 29:10,11 31:18
  46:13 47:15 49:10,17 58:13
  60:17 61:18 90:12
**eighty-** 46:21

**eighty-seven** 46:22
**eighty-two** 60:23 100:16
**either** 88:13 116:13 117:18
  118:8,10
**Electric** 35:2,5
**electronic** 2:7 119:22
**eleven** 93:16 107:5
**Elm** 1:23
**ended** 40:12,12
**engine** 68:16
**entered** 82:20 83:3 89:8,13
  94:12 100:11 111:8
**entire** 109:2
**entirely** 5:12
**entitled** 116:21
**entity** 43:3 82:9,12 115:7
**entry** 17:10
**envelopes** 43:2
**equipment** 25:17 27:20 33:5
**equitable** 30:15
**escape** 115:11
**especially** 18:22
**essentially** 73:19 94:13
**Estate** 8:17 9:13
**estimate** 48:3,12 107:4
**ET** 1:4
**events** 8:25
**evidence** 21:15 22:9 107:19
  110:16 115:19,20,21,22 119:3
**exact** 111:25
**exactly** 63:22 66:10
**EXAMINATION** 6:17 65:7 93:21
**example** 67:5 69:7,8,25
**exceed** 88:7
**Excuse** 97:2
**execute** 39:24
**executed** 43:21
**execution** 88:8
**exempt** 31:19 32:23 33:21
**exemption** 31:22,24 72:13,18
**exemptions** 72:12 73:2,7
**exhibit** 39:20 63:10,13 107:22
  107:24 110:10,11,15
**exhibits** 6:14 43:23,24 44:2
  63:16,16 64:2,4
**expense** 60:23 68:14
**expenses** 60:24 69:22 77:8
  100:15 101:13,16
**explain** 58:18 113:18
**explained** 82:11 90:15

800.523.7887          5-16-2019, WORD INDEX, DFWMM case          Associated Reporters Int'l., Inc.

Page  7

**extended** 119:12
**extent** 1:7 109:4,6 112:8 113:9
  113:13
**Extortioners** 43:3

---

**F**

**fact** 112:12
**failed** 14:15
**failing** 24:20
**faith** 21:21
**false** 1:9,10
**familiar** 7:23
**family** 118:15
**fan** 68:23
**far** 112:13
**Federal** 1:20
**feel** 5:8 23:17
**feels** 4:3
**Felicia** 64:17,19
**FIELDS** 1:13
**fifteen** 30:5 69:10
**fifth** 33:24
**fifty** 59:7,10 93:10
**fifty-** 58:14
**fifty-three** 29:12,13 30:5 60:8
  60:18
**file** 7:21 116:21
**filed** 11:16 12:5 14:21 31:24
  32:23 40:7,7,8 58:20 72:9,12
  76:25 78:5,8 79:21 80:2 81:12
  105:8 113:25 117:9
**filing** 58:16 71:12 72:13 81:3
  112:10 114:7
**fill** 58:5
**filled** 58:7
**financed** 113:9
**financial** 58:15
**find** 16:6 18:6
**fine** 4:18,21 14:7,7 19:2 90:9
  107:23
**finish** 4:7,14 63:20
**firearms** 29:25
**first** 11:21 13:15 14:2,20 25:6
  40:20 58:13,14 65:21 71:17
  78:5 87:18 91:12
**five** 3:17 7:23 18:6 21:7,8
  46:10 49:8,16 54:10,18,25
  57:14 88:4 93:10 97:5 107:5,7
  114:24 118:5
**flat** 28:13

**flood** 26:7 35:24,25
**flooded** 26:8 29:9 35:24
**Flora** 8:17 9:13 78:11 80:7 81:9
**folder** 70:5
**followed** 111:22
**following** 80:4 81:3 117:2
**force** 37:7,9,17
**forced** 111:25
**foreclose** 43:13
**foreclosed** 64:8 105:21 115:12
**foreclosure** 37:8,18 64:12,14
  105:22
**foregoing** 119:21
**Forest** 85:20 93:10
**forgot** 49:2,5 53:20,21 59:8
  86:12,13 87:4 89:23 95:4
**forgotten** 88:24
**forth** 119:9
**forty-** 23:19 93:9
**forty-eight** 23:20
**forty-five** 117:25 118:2
**forty-four** 10:8
**forty-nine** 49:24 50:17,20,23
  51:2,7 60:3 116:6 118:4
**forward** 32:4,14 33:4,8,19 54:8
  60:7 102:24
**found** 11:11 15:25 16:7 21:14
  96:7 114:19
**foundation** 109:7
**four** 18:12,15 19:3 21:11,12
  23:24 33:19,19,19 38:3 42:23
  51:10,11 54:10,18,25 57:14
  58:19 87:7,8,11,21 98:8,25
  99:2,3 100:22 110:11,15 118:5
**fourteen** 33:8,9 47:11,11,19
  69:9 109:23
**fourth** 19:9 22:6 33:24 98:7
**fraud** 1:10 110:21 111:16,19,22
  112:21 113:4 114:23,25 115:4
  115:5,6 118:24
**fraudulent** 9:16,17,25 23:18
  116:17 118:25
**fraudulently** 16:2 22:14
**freelance** 66:20
**friend** 44:17 45:4,11,20 46:3
  73:25 104:8,10,11,12,13,15
**friends** 104:2 118:15
**front** 12:4 23:9 39:6 53:22 56:7
  59:22
**fuel** 68:16 69:22

800.523.7887          5-16-2019, WORD INDEX, DFWMM case          Associated Reporters Int'l., Inc.

Page  8

**full** 22:6
**funds** 15:12 22:14
**further** 65:5 79:25 93:18 107:8
  107:10,19

---

### G
**gas** 70:24,24 71:4
**Gatton** 1:22
**gentlemen** 119:17
**getting** 9:23 12:9,16,24 94:24
  101:11,15 116:11,12
**give** 4:10,11 6:6 16:9 21:4
  24:20 25:6 36:18 43:10 49:24
  59:12 60:4 66:2 69:25 70:3,8
  107:4
**given** 21:3,3 111:5
**gives** 69:4
**glad** 4:19
**gladly** 112:5
**glaring** 110:20 111:13
**go** 3:15 4:7,19 5:17 13:15,16
  18:18 22:5 28:13 29:12 30:4
  31:6,17 32:3,14 33:4,8,13
  36:2 38:3,15 39:2 40:19,19
  42:22 47:13 50:8,11 51:10
  53:6 54:8 59:14 60:17 61:23
  67:4,5 75:7 83:10 89:17,21
  91:15,18 92:25 95:22 97:5
  98:14
**going** 5:24 7:20 14:19 18:5 19:7
  29:12 32:21,22 36:3 39:9
  40:17 54:7 63:20 75:19,20
  76:9 83:25 84:25 86:16 87:14
  90:18 101:18 102:12,24 104:18
  105:12 106:15 116:8 117:2,5
  119:18
**good** 3:7,8,9,10 25:25 67:5 69:6
  69:7
**grandmother** 23:4
**Greensboro** 1:5,19 2:4 67:18
  79:15 80:15,21
**gross** 59:15,17 66:4 112:15
  113:20
**guess** 50:6,6 73:19
**gun** 25:14
**guns** 27:16 28:17 72:21 114:6
**guy's** 18:2

---

### H
**hadn't** 38:14 39:3

**half** 3:15 69:9 109:25
**hand** 6:4,5 16:17 17:9 18:21
  25:13 34:18 56:6 114:17,17
**handed** 111:12
**handguns** 34:16
**handling** 41:8
**Handsaw** 35:10
**handwriting** 31:15 32:9,10
**happened** 13:10 16:11 17:8 25:7
  26:6 40:6 75:5 82:15 92:6
  102:17,17
**Harley** 45:23 46:4 47:8 73:21
  74:21 75:12 114:2 118:9
**hasn't** 96:7 116:22
**haul** 66:13,14,23 68:7,12 69:9
**hauled** 67:3
**hauling** 67:16 68:15
**haven't** 76:15 105:25
**He'll** 115:24
**he's** 9:5,6,6 11:9 31:3 44:19
  92:11 112:24 115:25 116:2,7,8
  116:9,11,12,13,13,24 117:2,5
  117:5,18 118:7,7,9,10,11
**hear** 13:3 64:16 115:18,20
  118:14
**heard** 64:15,17 115:19
**hearing** 3:14 41:12,17 86:10
  96:18 98:9
**hearings** 42:24
**held** 93:23 94:4,7,18 98:10,10
  99:8 113:8 114:7
**helmet** 34:9
**help** 18:6,21 29:11 118:15
**helped** 24:23
**helps** 110:2 115:24
**high** 118:17
**highlighted** 57:9,22
**highways** 66:17
**hinder** 21:16 22:10,15
**hired** 97:19
**Hold** 33:11
**holding** 39:5 102:4
**Holdings** 1:4,13 3:2 81:12,17,22
  82:6 110:24 115:9
**hole** 100:23
**home** 47:23 74:24 101:19
**Honor** 3:9,10,13 5:10,13,21 6:13
  8:4 11:25 12:19 13:20 18:8
  29:15 30:10 31:11 37:19,23
  39:16 40:23 41:23 44:18 49:13

800.523.7887 5-16-2019, WORD INDEX, DFWMM case Associated Reporters Int'l., Inc.

Page 9

51:13 57:19 60:10,19 61:12
63:15,18 65:5 76:14,18 87:6
93:19 97:10 98:21 104:18
107:8,11,20 108:6 109:4
110:12,14,17,19 115:18,23,24
117:14 119:4,6,9
**HONORABLE** 1:6
**hope** 4:9
**Hossel** 10:3,9,12,14,21 11:8,9
**hour** 3:15
**house** 26:17 28:17,24 29:7 35:13
35:16 36:19 47:19 64:7,12,14
64:25 93:5,5,15 105:18,21
**houses** 80:12,12,21
**Hudson** 16:22 17:14,17
**Huh** 54:13 55:7
**hundred** 33:16 38:8,14 41:2
54:11,18 55:2 57:14 59:16
60:14 70:2,3 90:17 100:20,22
118:5
**husband** 19:10 21:16 22:3,10
24:7

---

**I**

**I--** 110:22
**I.R.S** 78:3
**I'd** 8:21,24 19:2 44:7
**I'll** 4:19 18:6 29:11 44:4,21
64:4 76:17,17 87:7 94:16,16
104:21 109:22 110:10
**I'm** 4:23,23 7:20,25 9:3 10:14
12:10 13:3 14:19 18:13 19:19
19:19,24 20:2 27:8,15,17
32:21 48:2 52:4,20 59:8,11,19
59:20 62:8,12 63:3,5 64:23
66:23,24,25 67:13,16,18 69:9
71:11 73:14,20 76:9 77:25
78:25 79:20 84:25 85:2 86:24
86:24 87:14 93:9 94:6,19,21
101:14 102:15,16,17,18,23
104:18,20 105:12 106:2,13,15
106:20 107:20 116:25 119:17
**I've** 9:9 76:8 112:4
**identify** 39:6 51:21
**II** 1:15
**III** 1:13
**immediately** 112:10
**incarcerated** 82:17 86:22
**include** 54:25 55:2,5,8 57:25
72:21 109:20

**included** 63:23 108:24
**including** 22:11 43:4 114:6
**income** 48:3,7,10,13,20,23 49:6
49:23 50:3,8,11,16 55:11
56:12,12,25,25 57:17,23 58:19
58:21,24 59:2,8,15,15,17
60:15 66:4 100:19 103:15
112:9,15,20 116:3,6,10 117:21
118:2,7,17,18
**indicate** 87:24 111:4
**indicated** 65:9 119:16
**indicates** 112:13
**individual** 55:22,24 56:3,11
58:16 105:13
**individually** 105:9
**industrial** 27:13
**information** 38:19 112:2,4,6
117:14
**initially** 79:3
**injury** 1:11
**instructed** 75:15 89:20
**instructions** 56:8
**insurance** 74:16,19 75:3,4
**Int'l** 2:6
**intentional** 21:20
**interest** 1:8 30:15,19 110:25
111:10
**interrupt** 116:19
**interstate** 69:10
**invoice** 10:7 69:16 70:3
**invoices** 10:5,16 11:14 23:22
24:3 65:22 66:9 68:25,25
69:18 70:4,22,23 112:23
**involved** 8:16
**isn't** 16:17 17:15 30:16 39:24
40:9 41:3,20 45:17 53:17,22
61:16 95:19 99:6 103:21
**issue** 112:5
**issues** 5:16
**it's** 5:12,12 12:8,17 14:11
16:20 18:15,16 19:20 23:5
24:11 26:3,8,16,17 27:5,11,13
27:13 29:13 30:8 31:6,8 32:16
32:16,19 33:24 35:14 39:15
43:12 44:16 45:9,24 46:15
48:21,21,22,25,25 50:17,17,18
52:19,20,22 53:24 54:2,4,10
54:15,24 56:7,7 57:3,13,17
62:7 63:23 66:18 70:11,11,12
72:25 75:5 76:5,6 77:25 78:2

800.523.7887    5-16-2019, WORD INDEX, DFWMM case    Associated Reporters Int'l., Inc.

Page 10

78:13,22 79:10 84:17 90:7,9
102:22,24,25 104:23 108:16,18
108:19 109:15 118:12,13
**item** 33:24
**items** 72:18,24 73:23
**Ivey** 1:22

---
**J**

**jail** 24:20 25:4,7,9 36:3,13,24
38:7,8 42:15 82:17 83:6,25
84:7,11,14,16,25 85:7,8,12
86:3,16 87:2,4 89:3 90:13
91:10,11,16 92:4,22 93:15
94:3,4,8,23,24,25 95:8,11,23
95:25 96:3 100:13 102:9
**jailhouse** 83:8,20
**January** 58:19,25
**jig** 35:5,16
**job** 67:4,5,14,15 88:19
**jobs** 27:2,3,4
**John** 33:23
**Johnson** 2:3 3:6,10,13 4:9,11,12
4:18,21,25 5:6 44:18,22 63:18
64:3 65:8,13,15 73:17 75:22
76:3,10,18,19 87:6,10,13
93:18 94:9 98:23 99:2,4
104:23 105:8,11 106:7,14
107:10 108:7,11,13,16 109:4
109:22 110:7,9,18,19 119:8
**Jones** 8:17 9:13 62:9 78:11 80:7
81:9
**Jones-** 15:12
**Jones-Richmond** 7:9 21:25 62:3
62:10 78:9 97:20
**Jones-Richmond's** 78:10
**judge** 1:7 16:22 17:14,15,19
18:24 21:4 22:7 85:20 87:17
88:5 92:10
**Judge's** 93:4
**judgment** 22:11 24:9 39:24 41:4
111:5 115:14
**Judith** 120:3
**July** 1:5

---
**K**

**Kathy** 11:17 78:14,19
**keep** 16:3 18:5,21,22 47:19 66:3
66:7 69:21,22 70:5 80:17 95:5
**keeping** 14:23 79:11 80:17
**Kenneth** 2:3 3:6,10

**kept** 47:23
**kind** 15:6 19:25 26:2 27:2,3,20
38:13,19 81:16 82:9 90:8
**knew** 45:6 83:22 84:22 114:14
**know** 5:13 7:9,11,14,16 8:20 9:2
9:3 13:18 14:11 16:7 17:7,7
17:12,12,13,13 18:2 20:15
21:2 22:20 23:6,9,10,24 24:15
25:22 26:3,7,20,20,23,25 28:9
28:25 31:3,16,25 32:2,2,11,16
33:22 37:3,13,14 39:2,15 40:3
40:5,5,14 41:6,9 42:7,10,18
42:19,19,20,20 43:23 45:8,14
45:14,15 48:6,14,14,15,22
49:5 50:13 52:13,21 53:24,25
54:2,6 55:4,10 58:4,4,5 59:13
59:13,21,23 60:2,5,5,25 61:2
61:25 62:6,7,8,18,18 64:10,11
64:13,21,21,24 65:4 66:25
67:6,7,8 70:14 74:6,21,22
78:2 79:6,8 80:10 81:8 82:2,5
82:7 83:13,14,14,19 84:4,6,7
84:7,9,25 85:2,6 86:14,15
88:24 90:2 92:17 95:4 96:19
96:23,24 98:12,13 99:9,10,10
100:9,24 102:22 106:25 108:5
108:19 115:3 116:25
**knowledge** 86:11

---
**L**

**L.L.C** 81:12,17 82:3 115:9
**lady** 38:17 70:8
**laid** 109:8
**language** 56:22
**late** 86:19 90:8,10
**Laverne** 11:17
**Laverne-Pinero** 78:14,19
**law** 1:15 9:3,6 17:7 21:22
**lawn** 9:20 10:23 15:15 25:23,25
26:2,6,9,11,15 27:6,13 33:23
34:4
**lawsuit** 9:12,15 10:19 11:16,18
11:22 12:5 13:6,13,17 14:20
14:24,25 15:2,8,11,24,25
22:23 32:23 40:7,8,12,13
42:11,12 81:12 102:12
**lawsuits** 8:16,18 79:21
**lawyer** 38:5
**lawyers** 23:25
**Lead** 1:4

800.523.7887          5-16-2019, WORD INDEX, DFWMM case          Associated Reporters Int'l., Inc.

Page 11

**leading** 75:21
**Leath** 23:12
**Leath's** 42:19
**leave** 86:18 107:14,14
**left** 85:17 92:8 101:5
**legal** 30:15 87:22 106:16
**length** 93:7
**lengthy** 63:19
**lent** 104:15
**let's** 5:7 9:11 18:5,5 33:18,18
  36:2 42:22 60:7 97:14,18
**letting** 39:2
**level** 114:11
**liar** 115:24
**lie** 46:5 115:24 116:14 118:15
**lied** 49:6 116:3,5 117:15,16,17
  117:18,19
**lien** 1:7 61:10
**liens** 61:4,4,8,9
**line** 41:11 47:11,15 49:19,22
  94:9 97:8 98:16
**list** 33:5 76:20 114:11
**listed** 33:23 58:20 72:18,25
  73:3,9 76:12 77:3 78:2 101:13
  101:16 103:15 109:9 110:5
**little** 3:21 5:4,16 18:18 49:24
  49:25 56:3 59:12 60:4 65:14
  85:24
**live** 7:2 19:10 22:25 23:3 105:6
  105:17
**lives** 7:11
**living** 103:22
**LLC** 1:4 3:2
**LLP** 1:15,23
**lo** 117:25
**load** 69:12
**loaded** 85:2
**loads** 106:25
**loan** 36:7 71:6
**long** 19:20 26:3 67:15 71:23
  117:7
**longer** 79:17 114:2
**longest** 68:6
**look** 11:20 12:22 17:18 32:5,6
  32:13 51:25 52:6,10 53:6
  62:15 87:20
**looked** 97:16
**looking** 7:25 12:10 17:11 19:8
  20:18 41:7 59:19 62:8,9 88:4
**looks** 62:16

**loss** 77:15,20 112:9,13
**lost** 13:5 77:9
**lot** 29:9 80:16 88:15 94:19
  112:14
**love** 102:19,25
**low** 118:18
**lower** 18:20 114:12
**Lydia** 23:12 42:19
**lying** 10:13 105:5 115:25 116:2
  116:7,9 117:18,19,20 118:7,7
  118:8,9,10,12

### M

**M** 2:3
**ma'am** 3:13 4:12 8:23 13:22,25
  24:8 44:9
**machine** 34:9
**mailed** 42:24 43:4
**maintenance** 68:23
**major** 68:14
**majority** 35:25
**making** 66:16 117:13
**MALE** 18:13,17,25 29:17 76:4,5,8
  76:11
**malicious** 1:11
**man's** 115:16
**managing** 82:2
**March** 52:23 56:25
**Marian** 7:9 15:12 21:25 62:3,8,9
  62:10 78:9,10 84:25 89:3
  92:19,21 97:20
**marital** 73:4
**mark** 54:22 63:9 107:21
**marked** 39:18
**Market** 2:3
**Marriage** 28:3
**married** 23:13 78:20
**Marvin** 74:3,4,10,12,18
**Marvin's** 74:6
**matter** 3:19,21,24 4:15 63:8
  78:5 90:22,25 105:2 110:20
  111:6,14,17,24 119:13,18,23
**matters** 3:12 111:9
**McClellan** 1:22
**mean** 4:6 19:20 20:10 22:20
  33:17 38:6 48:21 50:6 52:21
  55:16 57:13 58:8 59:20 60:25
  85:23 89:11 94:3 95:3 98:19
  104:25 105:2 108:8 116:19
**means** 115:13 116:2,21 117:24

800.523.7887    5-16-2019, WORD INDEX, DFWMM case    Associated Reporters Int'l., Inc.

Page 12

118:3, 4
**meant** 27:7
**mechanically** 68:20
**medication** 19:21,22,25 20:9,13
    20:24
**meet** 84:13 89:6,9,12 116:2
**meetings** 84:10,12
**mentioned** 11:8 29:6 73:18 82:22
**merged** 111:20
**microphone** 6:23
**MIDDLE** 1:3
**midnight** 93:17
**MILLER** 1:18
**mind** 25:16
**mine** 16:24 17:5 39:15 62:22
    73:25 102:7,10
**minutes** 44:5 63:20 93:10
**misidentified** 44:19
**missing** 109:24,25 110:24
**mistaken** 93:14
**Monday** 67:5
**money** 14:24 16:2,9 23:14,15,15
    38:22,22 39:3 42:25 43:10
    47:25 59:6,24 74:8,17,19 75:2
    75:4 77:9 103:3,7,25 104:2,3
    104:5,7,16 115:7 116:15
    117:17
**monies** 10:23
**month** 7:15 38:9 54:19,20 57:4
    65:23 66:8 68:11,12 90:17
    100:16,20,23 103:3 104:5,16
    112:18,19
**monthly** 48:10,12 54:18,22 57:11
    57:15,17,23 60:24 74:11 82:23
**months** 38:9,12 39:2
**Moore** 71:20,20,21,22,22 77:14
    77:17
**morning** 3:7,8,9,10,19
**mortgage** 101:19,22 117:6
**mother** 62:21 78:12,13,21,22
**motion** 31:19,21,23 32:22 33:20
    72:11,13,18 73:2,7
**motorcycle** 44:13,24 45:4,17
    46:3,5 73:19,21,22 75:13
    111:24 113:24 114:2
**move** 22:5 33:18 60:7 63:15
**moved** 105:25
**mow** 9:20 10:23 23:7 80:3 81:20
**mowed** 79:10 80:17,20,23,23,24
**mower** 25:23,25 26:2,6,9,11,15

27:6,14 33:23,25 34:3,4,5,14
**mowing** 15:15 16:9 27:10,11
    79:11,12,14,15,16 80:13
**multiple** 93:24,25 94:2
**multiply** 69:10

## N

**name** 6:19 16:23 18:2 20:2 25:20
    25:22 32:16,17 44:17 45:3,10
    45:20,24 46:2 52:5 56:11 62:7
    62:11 65:21 71:16,17,19 73:11
    73:15 74:2,6 77:24 93:13,14
    104:11,13,14,15,17 105:13
**NC** 1:5,16,19 2:4
**necessary** 5:14
**need** 3:12 7:24 14:8 15:20 28:14
    44:3 51:10 67:6,7,21 117:22
**needed** 108:5
**needs** 7:24 117:23
**negative** 100:22
**never** 46:6,8 47:21,21,22,22,23
    47:24 62:10 76:8 85:16 117:17
    117:18
**new** 111:12
**niece** 64:20 88:25,25
**night** 85:21 86:19 90:9,10 115:2
**nine** 3:19,22 31:18 32:3 38:8,9
    38:12,14 39:2 40:21 49:9,11
    49:12,16 51:11 71:25 85:21
    90:12,17 97:6
**ninety** 53:2,4,13,15,16 54:4
    88:7
**non-** 118:25
**non-existent** 43:3
**noncompliance** 21:19
**Nope** 44:20
**normally** 66:5 107:2
**North** 1:3,16
**notarized** 32:19
**notary** 83:12
**note** 21:4 36:7 41:5 42:25 43:21
    82:23 85:19 88:19 89:7 90:18
    91:5,10 95:3,10,14 96:11
    100:2
**notebook** 7:19
**notebooks** 6:14
**notes** 22:8
**notice** 14:5 38:14
**notified** 88:22,23
**November** 14:5

800.523.7887        5-16-2019, WORD INDEX, DFWMM case        Associated Reporters Int'l., Inc.

Page 13

**number** 13:8,11 18:19,20,25 22:6
  22:13 29:22 30:14 38:20,21
  42:23,23 46:15 53:16 56:7
  58:10,19 61:20 111:14 112:16
  116:4
**numbered** 21:12
**numbers** 18:24

O

**o** 31:17,17,18,18 32:3,21 33:2,3
**o' clock** 3:14,17,23 85:21
**Oak** 1:15 43:2
**oath** 5:24,25 8:22 44:8 45:17
  47:2,7 116:14,15 117:15,16
  118:9,11
**object** 76:9,14 94:9 108:7
**objected** 119:10
**objection** 3:4 44:18,21 63:17
  75:21 76:17 94:11 104:20,21
  106:7,14 109:6 110:9
**Objection/revocation** 1:8
**objects** 114:18
**obligation** 117:11,12
**obtain** 118:23,23
**occupation** 7:5
**occurred** 88:12,15
**October** 82:16 85:24 87:18 88:19
  89:4,5,5,6 94:10,13
**offered** 43:10 108:17
**office** 37:4 38:15,18,18,24
  43:11 46:20 89:18 90:14,15,24
  91:5,7 92:4 95:6
**official** 107:21
**oil** 68:16 71:4
**okay** 5:5,9,15 7:2 10:2,2 11:13
  12:7 13:5 14:19 15:5,11 16:11
  16:20 18:23 20:20,23 21:6,10
  21:13 28:13 30:7,12 31:3 32:3
  35:14 37:21 43:9 46:10,18,21
  46:25 48:12 49:21 50:2,19
  51:6 52:23 53:6,8 54:7 62:4
  62:14,17 63:6 64:3 65:19 66:3
  66:3,10 68:17 69:6,13,20
  70:20 71:12,15 76:2,10 77:11
  78:10,24 82:8 83:16 84:16
  85:24 88:22 89:16 91:12,24
  92:20 93:6,11 97:7,17,21 99:4
  101:5 102:2 103:6 105:20
  107:9 108:3 110:18 119:17
**old** 68:17

**once** 26:8 68:24 79:21 91:12
  94:2
**ones** 108:21
**ongoing** 117:11
**Opening** 5:11
**opportunity** 4:23
**order** 8:13 9:7,9 13:24 14:10
  17:10,16 18:12 19:6 20:8
  21:14 22:7 41:3,16 86:2 87:15
  88:18 94:23 95:20 96:6 98:6
  99:6,23 100:4,8,11 111:13
  117:23
**orders** 16:12 38:22,22 42:25
  119:3
**ordinance** 80:18
**Orlando** 16:22 17:14
**outside** 115:14
**overrule** 44:21
**owed** 77:15 115:7
**owned** 16:25 17:2 44:15 45:21
**owning** 118:9

P

**P** 1:18
**p.m** 5:6
**P.O** 1:24 2:4
**P.T.S.D** 20:5 65:10
**page** 7:25 8:2,10 11:21 12:4,7
  12:13,24 13:16,16,18,23 17:18
  18:6,12,14,15,19,20 19:12,15
  21:6,8 22:5 29:12,13 30:4,5,8
  31:8,9,17 32:3,4,14,15,21
  33:2,3,8,10,12,18 38:2 40:20
  41:3 42:22 46:16,21,23 47:13
  51:17 54:7 56:4,17,21 58:14
  58:14 59:14 60:7,17 61:23
  87:7,20 88:4 98:7,20,23
  108:19,24 110:3,5
**pages** 18:5 32:3 33:4,20 51:12
  53:6 54:8
**paid** 9:20 10:4,11,15,19,22,24
  10:25 11:3,4,5,7 15:19 16:9
  47:14 53:12 54:3 55:17,19,21
  66:5 69:4 73:24 75:8 90:17
  106:19,19,21
**painted** 74:24
**paper** 48:8,21,22,25 54:15 58:5
  58:7,9 60:16 95:7 100:18,21
**papers** 19:8 38:11 83:7,8,24
  92:9 93:4 99:22,25 100:7,10

800.523.7887          5-16-2019, WORD INDEX, DFWMM case          Associated Reporters Int'l., Inc.

Page 14

100:12
**paperwork** 59:18 61:2
**paragraph** 14:2 19:9 21:11,11,12
    22:6,6,8 24:4 33:15 38:3
    42:22 47:11 87:18,21 97:8,14
**part** 14:25 15:3,7,9 22:23 24:12
    57:9 58:18 79:8 114:18
**participating** 13:12
**participation** 118:24
**particular** 20:12 21:2 40:15
    113:21
**partner** 82:2
**party** 47:13 78:6 82:13,13
    110:25 111:10
**pass** 111:6
**passed** 22:20 62:19 102:22 117:8
**pay** 48:16 53:18,19 64:24 66:6,8
    69:17 70:4 103:7,9,10,11,17
    103:18,18,20 105:6 116:8,9
    117:3,10
**paying** 38:8 40:9 69:7,8 101:7
    101:18 103:4,24
**payment** 38:10 42:25 64:22 74:9
    74:20 101:25 102:4,5 117:6
**payments** 74:11 82:23
**people** 4:24 70:24,24 71:2
    102:19
**people's** 23:5
**period** 68:6 117:7
**periods** 67:23 68:2
**permanently** 67:8,10
**person** 38:25 39:2 56:13 104:25
**person's** 104:17
**personal** 16:13 25:12 61:8,9
    77:3 114:5
**personally** 9:13
**pertaining** 62:19
**petition** 29:19 30:6 60:8 62:23
    76:13,20 105:5 112:11,25
    113:7,15,23,25 114:3 115:23
    116:2,7 117:23
**Phil** 23:24 37:6,7,17 85:18,18
    90:2,6,13,13 91:20,22 92:8
    93:3 95:6
**phonetic** 23:3,24 64:17 65:20
    69:2 71:20 74:7 80:22 111:11
**pick** 18:2
**picked** 85:11 86:2,4,21
**pictures** 27:15
**pieces** 14:23 84:6

**Pinero** 1:15 3:5,8 5:10,13,16,19
    5:21 6:13,16,18,25 8:3,7 9:10
    11:17,24 12:3,18,21 13:20
    14:9 15:23 18:8,11,15,23 19:3
    19:5 28:16 29:15,18 30:9,13
    31:5,10,13 37:22,25 39:16,19
    39:21,22 40:22,25 41:23 42:2
    43:25 44:11,23 49:13,18 51:13
    51:15 56:18,20 57:6,8,19,21
    60:10,12,19,22 61:12,14 63:9
    63:12,15,23 64:6 65:5 75:21
    76:14,22 78:16,20 93:22 94:17
    97:9,12,13 98:21,25 99:3,5
    104:18 105:4,14 106:9,18
    107:8,20,25 108:4,9,12,14,18
    108:23 109:3,13,17 110:2,12
    110:14,17 113:14 115:18
    116:24 117:5,13 119:6
**Pinero's** 78:17
**place** 75:7 84:11 90:10
**placed** 5:24
**plaintiff** 1:14 14:14 31:7 33:4
    33:9 41:12,17 87:7 119:13
**plaintiff's** 14:12 19:3 21:7
    33:19 39:20 41:2 46:22 49:9
    51:11 97:6 98:8,25 99:3
    110:16 115:21
**please** 5:23 6:4,22,23 14:3
    15:21 18:14 40:19 46:10 97:12
**pocket** 112:18
**point** 24:19 37:15 75:10 81:2,11
    93:18 97:19 111:4 114:22
    117:20
**pointed** 95:19 98:7
**police** 45:9 74:23
**portion** 57:22
**position** 118:18,21
**post** 38:15,18,24 43:11
**Post-Traumatic** 20:5
**postal** 42:24
**pre-trial** 43:22,24,25 61:19
    63:24,25 76:15 108:12 109:10
    109:10,13,18
**preceding** 112:10
**precisely** 114:13
**preliminary** 3:12
**prepare** 69:19 112:11
**prepared** 71:16 72:4,6
**prepares** 69:18 70:15
**preparing** 71:24,25

800.523.7887          5-16-2019, WORD INDEX, DFWMM case          Associated Reporters Int'l., Inc.

Page 15

**present** 41:11,16 69:15 71:8,13
  98:17
**presented** 111:3 112:4 115:19,21
**presiding** 88:5
**presumptuous** 3:21
**pretenses** 1:10
**pretty** 63:5 64:23 93:9
**prior** 17:10,12 45:16
**priority** 1:7
**private** 47:13
**probably** 18:21 29:11
**problem** 113:11
**proceed** 5:18
**proceeded** 89:16
**proceeding** 6:6
**proceedings** 2:7 119:23
**produced** 2:7
**profit** 77:15,20 112:14
**projected** 3:24
**prominently** 114:3
**promissory** 36:7 41:4 42:25
  43:21 85:19 90:18 95:3,10,13
  96:11 100:2
**proof** 113:22
**properties** 79:12,16,23 80:6,6,9
  81:6
**property** 1:8 14:22,23 15:10
  16:12,13,16,16,19,21,24,25
  17:2,4,10,25 23:2,4,5,11,12
  23:15 24:13,21 25:5,6,10,10
  25:12 27:7,10,11 28:3 30:16
  30:20,22,23 31:4,19 32:23
  33:12,15,21 35:24,25 40:4,5
  42:17,17,19,20 61:8,9 62:20
  62:20 73:4 77:3 79:11,12,14
  79:15 80:12,22 102:10,20,21
  114:6,8 118:11
**Proponent** 1:20 101:19,22,24
  102:3
**proven** 111:16
**provide** 81:15
**provided** 112:6
**pulled** 42:6,9 67:21
**purchased** 38:21 111:5
**purports** 32:25
**Push** 26:10
**put** 25:7 28:15 35:19 42:15 45:3
  45:10,20 48:23 58:9 74:8
  84:25 85:7,11 86:16 87:2 89:3
  94:7 102:9 112:24 113:3,13,15

  113:24 114:14 116:4,16 119:3

---
**Q**
---
**qualify** 118:4,6
**question** 15:16,21 47:9,9,17,18
  59:21 63:21 81:3 94:16 106:16
  111:23 114:25
**questioned** 71:5 99:7
**questioning** 75:12 94:10
**questions** 31:2 37:20 65:5 98:4
  107:8,10 111:25 113:2 114:4
**quick** 97:14,18
**quite** 50:15,24 57:4 63:19 82:15
  84:22 88:12 100:5

---
**R**
---
**R** 1:6
**radio** 25:14 29:3
**raise** 6:4,5
**raised** 114:4
**Raleigh** 1:16
**Ray** 98:18 99:12,15
**reach** 28:14
**read** 14:2 21:13 22:15,18 38:3
  74:23
**reading** 20:16 39:9 41:7,21
**reaffirm** 117:6
**reaffirmation** 116:20 117:9
**reaffirmations** 117:12
**reaffirmed** 116:23
**reaffirming** 101:12,21
**real** 14:23 97:14,18
**really** 59:23 66:24 109:5,7
**reason** 114:10,13 115:10,15
**reasons** 115:15
**reassemble** 5:3
**recall** 8:18,25 9:18,21,23 11:18
  12:9,16,24 13:12 15:8,11 68:2
  68:6 71:10 77:12 82:10 88:20
  93:8 104:14,17
**receipts** 10:6,7,17 11:15 23:23
**receive** 38:10,13
**received** 10:9 16:12 38:14 39:3
  75:2
**receiving** 15:12
**recess** 4:15 44:5
**recipient** 118:22
**recognize** 8:13 18:12 19:6 31:14
  46:11 48:18
**recollection** 11:22 12:5 20:11

800.523.7887        5-16-2019, WORD INDEX, DFWMM case        Associated Reporters Int'l., Inc.

Page 16

20:24 38:4 52:8,11 79:22
**record** 6:20 21:15 22:9 44:6
  45:9,10 76:3
**recorded** 2:7
**recording** 2:7 119:22
**records** 107:22
**recover** 22:13
**redacted** 13:8,9,11
**REDIRECT** 93:21
**referee** 11:8,9
**refers** 119:10
**reflected** 112:8
**refresh** 11:21 12:4 52:7,11
**refreshes** 38:4
**refused** 43:12
**regard** 73:18,21 75:24 112:22
**related** 30:16,20,21 31:4 80:5
  101:2
**relationship** 78:11,14
**relevance** 104:22,24 105:2,4
  106:7
**relies** 70:22
**rely** 77:14,17
**relying** 56:11
**remain** 83:25 92:3
**remember** 7:16,18 8:6,8,14,18,19
  9:6,8,9,12,12,17 10:2,6,20,21
  13:7,10 14:24 15:9 16:13
  19:14 20:14,15 30:18 36:15
  37:14,15,16,17 45:15 46:19
  47:14 53:4 54:3,4 59:18,20
  82:24 83:13 84:22 86:15 87:5
**remind** 8:21 44:7
**remodeling** 35:16
**render** 79:22,25 80:5
**rendered** 82:8
**renting** 14:23
**rents** 9:19
**repair** 70:24
**repairs** 68:21,22 69:22 71:4
**repayment** 56:13
**repeat** 18:13
**report** 74:23 113:16
**reported** 48:6
**Reporters** 2:6
**represent** 7:20 14:20 32:22
  85:25 87:25 88:13,15
**representation** 1:10
**represented** 37:11 98:17 99:12
  99:15,18

**representing** 40:18 41:9 89:24
  90:22 92:11,15,16,18,21
**request** 104:18
**requested** 56:14
**require** 112:22
**requirement** 112:23
**residence** 106:3
**resolving** 94:14
**responded** 47:8
**result** 43:19
**resulted** 15:24
**resume** 3:19
**return** 49:3,4 51:5,9 59:9 70:16
  77:21,22 101:3,4 112:13,20,25
  113:17,19
**returned** 92:7,8
**returns** 71:8,13,15,24 72:8
  112:7,8
**Richmond** 1:4 2:2 3:3 5:22 6:3,9
  6:10,19,21 7:2 8:15 9:11
  10:10,18 11:18 13:21 14:13,15
  15:13 19:11 22:12 24:10,17
  29:10,19 44:12 51:16 60:13
  64:7,17,19 65:9 73:12,13,16
  93:23 105:5 110:22,23 112:2,7
  117:15
**rid** 101:11,15
**ride** 26:9,11,15 27:5 33:25 34:3
  34:5,14 45:24 46:2
**riding** 34:4
**right** 3:11 4:10 5:7,18,19 6:4,5
  14:13 15:2 16:18 18:17 22:15
  22:18 23:2,8,10,25 24:10,24
  30:17 31:7 39:25 40:9 41:20
  41:25 42:13 43:5,7 44:3,22
  47:3 51:6 52:19 54:8,15,20
  55:11,13,23 56:6,15 59:16,19
  61:21 62:19 64:3 65:22 67:9
  68:3,4,11,24 69:18 70:10 71:5
  72:3,8,15 73:9 74:16 75:6,10
  75:15 78:4,7 79:17,21 80:4,14
  81:2,11 82:15,19 83:19,22
  84:10 85:5,11,22 87:10,20
  88:18 89:4 90:7,19 91:4,14
  92:6,20,24 93:24 94:21 95:23
  96:9 97:4,15,25 99:23 100:23
  101:5 103:4 105:10,11 107:16
  107:18,19 113:12 119:5
**right-** 18:20
**Ritz** 111:11,14 118:21

800.523.7887          5-16-2019, WORD INDEX, DFWMM case          Associated Reporters Int'l., Inc.

Page 17

**Road** 6:24 22:25 25:11
**ROBERT** 1:13
**room** 3:16 44:4
**ruined** 35:25
**rush** 4:22
**rushed** 5:8

**S**

**S** 1:23
**salary** 54:9,14,21 55:12,13,15
  56:24 57:4 58:11
**sale** 53:7,21,22 64:12,13
**SAMUEL** 1:15 3:8
**satisfy** 115:14
**save** 75:4
**savings** 101:9 103:2
**saw** 34:21 35:5,7,11,12,15,16,19
**saying** 9:3,24 10:12,14 13:10
  23:18 38:11,14 40:11 50:16,19
  50:22,24,25 52:20 55:15,16
  67:13 76:6 84:24 86:15 103:7
**says** 8:10 12:8,13 14:12 19:3,15
  21:7,18 29:25 30:4 31:7,21
  33:7 39:13 41:11,16 42:3,4
  43:6,14 52:25 54:10,21 55:12
  57:3 58:17,22 99:11,14 118:22
**scared** 3:20
**schedule** 4:16 48:24
**scheduled** 3:15,22,23
**schedules** 112:4
**scratch** 41:15 50:11 54:17 61:5
  64:11 106:20
**seal** 108:6
**second** 8:10 14:12 21:11 40:20
  41:11,16,22 98:16 99:11
  109:23,24,25
**section** 56:14,15 114:23
**secured** 63:22 114:11
**security** 13:8,11 41:5 43:21
  55:3,5,8 58:2 61:4,15,20
  62:25 63:12 76:21 82:21 85:18
  89:8 113:16 114:15
**see** 5:7 8:2,12 12:23 14:14,14
  19:11,15 29:14,22 33:17 34:2
  38:25 39:4 49:12,16,17 56:9
  56:16,21,23 57:9 76:15 85:13
  87:18 99:9 104:21 116:8
**seen** 9:7,9 76:8,15
**send** 17:25 38:13
**sent** 38:24 43:11

**sentence** 14:12 29:23 41:16,22
  42:3 99:11
**separate** 113:17
**separated** 105:16
**serve** 88:9
**served** 13:5
**service** 2:5,7 65:10 79:23
**services** 79:25 80:5 81:8,16
  82:8
**session** 14:6
**set** 101:24
**settled** 111:8 119:15
**settlement** 24:25 39:11,23 43:19
  44:2 82:19 94:11 99:22 100:2
  111:20 119:14
**seven** 12:23 31:17,18 32:21 33:3
  46:22,23 47:15 60:14 75:12
  97:6 118:6,19
**seventeen** 7:22 32:14,24
**seventy-five** 100:20
**she's** 65:20 77:21 98:10
**sheriff** 38:11 40:10 96:7
**shoes** 68:23
**show** 7:25 48:9 63:22 87:14
  112:21 113:2,20
**showed** 77:8
**showing** 69:4 87:7 111:21 112:22
**shown** 76:21 116:13
**shows** 112:20
**Siegmund** 1:21,23 3:9
**sign** 83:17 90:8 92:10 95:7
  100:10
**signature** 32:4,12,15,17 39:14
  51:16 54:16 61:24,25 62:4,12
  62:13,15
**signed** 17:15 32:8,25 36:8 37:12
  42:12 52:23 61:5,16 62:8
  83:25 84:15 91:5,9,12,16,19
  91:25 93:5 95:3,10,13 96:10
  97:21,24 98:2 100:7,12,12
  111:5 115:10,12
**signing** 24:25 91:15
**signs** 62:11
**sir** 5:23 6:22 8:21 12:2 15:20
  16:5 18:10 28:6 30:25 37:20
  37:24 43:18 44:7,14,25 51:14
  56:19 57:7 60:21 61:13 63:11
  65:6 68:19 87:9 93:20 106:13
  107:12
**sister** 89:2

ARII@courtsteno.com          www.courtsteno.com

Case 1:19-cv-00667-WO   Document 7   Filed 09/17/19   Page 137 of 143

800.523.7887          5-16-2019, WORD INDEX, DFWMM case          Associated Reporters Int'l., Inc.

Page 18

**sisters** 78:15,16
**situation** 4:5 110:25 116:17
**six** 46:13 49:10,17 53:10 59:15
  100:19
**sixteen** 33:10 54:11,19 55:2
  57:14
**sixty** 53:12
**sixty-** 7:22 46:16
**sixty-eight** 46:15
**sixty-five** 32:24
**sixty-one** 46:24
**sixty-two** 12:13,24
**sized** 27:13
**smoother** 18:19
**snag** 3:25
**social** 13:8,11 55:3,5,8 57:25
  113:16
**sole** 114:8
**solemn** 6:8
**solemnly** 6:5
**somebody** 117:20
**sorry** 13:3 18:13 27:8 73:14,20
  78:25 106:20 118:23
**sound** 2:7 68:20 119:22
**sources** 58:18
**South** 1:18
**speak** 6:22 44:4 65:13
**speaking** 27:12 31:4 57:5 68:25
**speaks** 115:5
**specifically** 119:10
**spelling** 23:3,24 64:18 65:20
  69:2 71:20 74:7 80:22 111:11
**spend** 85:8 103:3
**spendable** 112:15
**spoke** 7:13 8:2 35:23 37:6
**spray** 74:24
**Spriggs** 120:3
**stand** 5:22 6:12 40:17 75:16
  116:3
**standing** 73:23
**stands** 115:5
**start** 41:15
**started** 78:5 79:2 110:21 111:17
  113:20
**starts** 22:7 87:16
**state** 6:19 107:22 109:16,17
**stated** 24:2 115:15
**statement** 47:24 58:15 117:2
**statements** 5:11
**states** 1:2,7 86:3

**statute** 115:5
**statutory** 110:21 111:15,18
**stay** 50:14 85:9 90:9 117:22
**stayed** 85:17
**steady** 50:14
**step** 107:12
**Stevens** 21:14 22:7
**stolen** 45:5,7,12 74:14
**stop** 101:18
**stopped** 40:9
**stories** 118:16
**straight** 4:8,19
**Street** 1:16,18,23 2:3 23:3
  27:12 42:21 79:14 80:11
**Stress** 20:5
**strike** 73:20 83:23 97:12 118:13
**strikes** 110:19
**stubs** 38:23
**stuff** 23:8 29:9 39:9 52:15
  66:16 88:12
**submit** 70:23
**submitted** 109:18
**subsequently** 74:13 79:5
**substantiate** 113:21
**sue** 39:12 43:20 82:13,20 94:12
  111:21
**sued** 9:18
**suggestion** 18:18
**suing** 9:23
**Suite** 1:24
**suits** 118:17,18
**summons** 12:9,16,25
**superior** 7:22 22:12 72:24,24
  77:2 87:15,17 88:5 114:8,21
**supplement** 108:25
**supposed** 3:19 17:23,24
**sure** 4:24 19:19 27:15,17 43:18
  48:2 52:4 59:8,11 63:5 64:23
  71:11 78:2 86:24,24 93:9 94:6
  94:19
**surrounding** 52:6
**sustain** 76:17 104:21
**Sustained** 106:8
**Suzuki** 44:12,24 45:4,17 73:18
  73:21,24 74:13,20 113:24,25
  118:12
**swear** 6:2
**swearing** 5:25
**sword** 25:14 29:4
**Sworn** 6:10

800.523.7887     5-16-2019, WORD INDEX, DFWMM case     Associated Reporters Int'l., Inc.

Page 19

| **T** |
| --- |

**tab** 7:19 11:20,21 13:15,16,16
  18:16,19 29:10,11 31:6 40:19
  40:20 46:10,23 49:8,16 51:10
  51:12 52:7 58:13 72:25,25
  87:7,8 97:5 98:7,23 99:2,3
**table** 35:7,11,12,15
**tag** 44:3
**take** 4:15,22 5:24 6:12 18:3,3
  24:13 27:2,4 28:14,14 43:12
  44:5 49:24 59:12 60:4 66:6
  68:24 69:6,15,20,24 70:4,18
  70:20 80:25 83:12 93:7 107:17
  119:18
**taken** 46:12 77:8 112:17
**talk** 9:11 91:16,18 97:14,18
**talked** 72:11 82:23
**talking** 13:18 28:25 56:17 84:5
  94:23 95:18
**talks** 19:9
**tax** 49:2,4 51:5,9 59:9 70:15
  71:8,13,24 72:8 77:21,22
  101:3,4 112:7,7,8,13,20,25
  113:16,17,19
**taxes** 65:17 70:9 71:25 101:2
**team** 88:14
**tell** 38:4 48:19 61:24 66:10
  75:23 82:5 92:10,25 105:12
  109:22
**telling** 84:5 90:16 105:16 112:3
  112:3
**ten** 29:22 33:3,4,12,13,15 44:5
  72:2 85:21 87:15 107:5
**terrible** 68:8,10
**test** 116:2 117:24 118:3,4
**testified** 9:19 10:25 11:4 19:16
  45:16,21 75:16 98:8 116:15
  118:8 119:14
**testify** 10:18 19:23 96:20
**testifying** 15:12
**testimony** 6:6 19:10 20:25 47:20
  76:24 87:22 98:3 116:5 118:13
  118:14
**Thank** 5:10,20 14:8 44:10 65:6
  76:18 107:12,13,18 110:6,8,14
  110:18 115:17 119:6,7,17
**that's** 4:18,21 5:2,14 11:6 13:9
  13:10 14:7,7,7 15:17 16:23
  17:8,19 21:18 22:25 23:2,16

  23:25 24:2,14,16,18,24 25:7
  25:10 31:21 32:12 33:7,19,23
  37:8,9,9 38:10 39:13,14 40:6
  42:4 43:6,15,15,20 47:18
  49:25 50:7 51:4,4,9,11 52:25
  54:16,18,18 55:17,19 58:17,22
  59:4,5 60:16 61:20,24 64:20
  66:16 69:11 72:20,22 78:7,21
  82:14,16,18 85:23 90:18 95:2
  95:2,3,8,12,15,15,15 96:9
  98:7 99:14 100:18,21,21 101:2
  101:3,3 102:8 107:23 109:8
  111:16 114:5,13 118:7,19,19
**there's** 5:16 45:9 52:16 53:16
  54:22,23,23 56:10 109:7 110:4
  111:2,2,3,4,21 114:25 115:6
  117:10
**they'll** 67:5,6,7,13
**they're** 69:7,8 84:24 86:16
  107:25,25 108:9,14 109:14
**thing** 23:7,16 110:19 111:16
  113:5 119:8
**things** 25:15 82:15 112:17 117:3
**think** 7:24 9:22 10:7 12:15 13:9
  13:14 15:9 16:14,23,23 20:2
  24:22 32:17 38:16 40:15 44:18
  45:5 59:7 65:21 69:11 71:9,19
  74:22,25 75:2,3,5,8,9 77:25
  79:4,19 80:8 82:10,14,16 83:4
  84:17,23 85:7 86:2,4,25 87:2
  87:3 88:25 89:15,25 90:2,6
  91:20 92:14,15,15,18,19,23
  93:13 96:17 98:13 99:17,20,21
  112:21 115:11
**thinking** 38:7
**thirteen** 11:16,17 22:13,13
  29:12,13 47:18
**thirty** 3:20,22 4:7,15,20 5:2
**thirty-five** 58:14 59:16
**thirty-one** 60:7
**thirty-seven** 30:14
**thirty-six** 18:6,15 21:9 109:24
**thought** 28:7
**thousand** 10:8 23:20,21,21 24:3
  33:5,14,16 49:24 50:17,20,23
  51:2,7 53:4,13,13,15,16 54:4
  54:10,18,25 57:14 59:15 60:4
  60:14,23 100:16,19 116:7
  117:25 118:2,4,5
**thousand-** 53:2

800.523.7887     5-16-2019, WORD INDEX, DFWMM case     Associated Reporters Int'l., Inc.

Page 20

**three** 3:18 11:20 12:9,12,23
  18:5 33:4 58:15 60:23 63:13
  63:16 64:5 69:8,11 80:24
  100:15 107:5
**tile** 34:23 35:19,19,20,20
**time** 4:11 7:13 20:13 21:2 37:16
  38:5 39:10 40:15 41:8 43:12
  47:2 67:23,24 72:9 76:24
  81:15 86:17 87:3 89:12 91:14
  91:24 93:7 94:14 96:14,16,21
  96:23 98:14 99:16,19 102:13
  113:25 114:6,22 117:7
**timeline** 94:21
**times** 80:24 84:13 93:24 94:2,19
  104:24 117:16
**tire** 70:2,2
**tires** 28:13,15 68:16 70:11
**title** 114:19
**titled** 73:11
**today** 3:22 4:7 19:23 67:19
  105:3 111:3,17,21 114:9
  119:13
**told** 10:3,9,15 16:22 17:13,19
  17:21,23 18:3 29:8 50:16
  54:12,14 63:3 74:23 75:11
  83:24 84:3,18
**tomorrow** 67:3,20,21
**ton** 69:8,11
**tons** 69:10
**tool** 27:20
**tools** 25:20 28:19,22 29:2,3,6
  34:18
**top** 12:8,14 29:13,22 31:8,20
  46:17 55:23 56:8 61:20 62:2
**tore** 74:25
**total** 69:15 70:7 88:8
**towed** 26:8
**traceable** 118:24
**transaction** 23:19
**transactions** 119:11
**transcript** 2:7 46:12 119:22
**transcription** 2:5,7
**Transcriptionist** 120:3
**transfer** 9:16,17 116:17 118:23
**transferred** 22:14
**transfers** 9:24 119:9
**transgressions** 119:15
**treat** 20:4
**trial** 3:3
**tried** 16:15

**truck** 7:6 29:8 66:11 68:17
  69:24 73:8,11
**trucker** 28:8,9,12
**trucking** 35:21 77:6
**true** 7:21 58:23 59:4,5 73:23
  75:17 103:21
**trust** 83:2 89:7 91:4,9 100:3
  115:10
**trustee** 75:11 111:24
**trustee's** 114:4
**truth** 6:7,7,8 105:16
**try** 107:7
**trying** 4:23 18:23 59:20 88:13
  88:14,14 94:21 115:13
**turn** 7:19 8:10,10 11:20 12:7
  21:6 29:10 38:2 46:10,21
  58:13 65:22,25 69:16 97:5
**turns** 5:2
**twelve** 22:6 31:8
**twenty** 46:16,23 47:16 49:19,22
**twenty-** 12:22 23:23
**twenty-four** 23:21 24:3
**twenty-nine** 54:7
**twenty-one** 11:17 22:13 47:16
**twenty-seven** 8:11 12:8,10,12,15
  12:23 18:16 21:8 31:9 33:9,10
  41:2,3 46:16,23 61:18 118:20
**twenty-three** 60:14 114:24
**twenty-two** 47:16 97:8
**twice** 26:8 32:8
**two** 3:14,23 5:6,16 8:16,18
  12:11,13,15,24 13:15,16,16,23
  14:22 18:16,16 21:8 27:18
  32:3 33:5,14,16,16 38:2 41:3
  41:14,21 51:11 53:6 54:8
  58:18 63:10,16 64:4 68:12
  70:3 79:12,16 80:12,12,21,24
  87:7,8 89:13 97:14 98:7 99:3
  100:19 107:24 112:9 113:17
  114:24
**type** 38:20

### U

**Uh-huh** 27:25 32:7 35:6,9 57:24
  67:17 79:13 80:19 85:15 86:8
  87:12 97:23
**ultimately** 72:17 73:2
**uncashed** 38:25
**underlying** 107:21
**underneath** 62:10

800.523.7887          5-16-2019, WORD INDEX, DFWMM case          Associated Reporters Int'l., Inc.

Page 21

**understand** 21:23,24 22:3 24:7
  43:18,19 50:15,24 52:15,21
  55:14 57:5,13 98:4 100:5
  102:15,20,22 110:22 111:12,23
**understanding** 79:10 102:16,16
  102:18
**UNIDENTIFIED** 18:13,17,25 29:17
  76:4,5,8,11
**unintelligible** 3:5,16,23,25
  4:13 6:21 10:3 11:3,23 12:6
  14:5,6 15:10 16:23,25 18:22
  19:17 27:22 28:10 29:21 30:21
  33:17 36:16 40:5 41:10,19
  43:16 45:4 46:6,13 51:18,22
  52:5,9,16 53:25 60:9 61:10,11
  61:17,22 62:2,9 65:14 66:13
  66:15,24 67:16 68:22 69:24
  71:3 75:8,8,9,25 76:4,6,7,11
  76:12,13,21 77:5,13,19 78:18
  78:24 79:16 80:25 82:7 83:15
  84:4,17 85:7 86:25 87:8,16,17
  87:22,22,23,25 88:7,8,10,11
  89:25 90:3,7,16 91:3,23 92:12
  93:4,13,14 99:9 101:17,20
  102:7 103:9 106:14 107:13
  109:23 114:10 115:4
**Union** 1:20
**UNITED** 1:2,7
**universes** 113:17
**upset** 84:8
**use** 8:24 18:19,23 27:21 28:6,11
  28:14,22 30:23 35:11,12 66:12
  73:22 118:12
**uses** 118:15
**utilizing** 3:16

---

                    V

**v** 1:4 77:25,25
**Validity** 1:7
**varies** 48:11,15,17 50:16 67:9
  107:3,5
**vehicle** 47:14
**versus** 3:2 11:17 111:15
**Vivianne** 65:20,21 71:17,18,19
  71:21,22,22 77:14,17
**voluntarily** 117:10

---

                    W

**W** 1:21
**Wait** 56:2

**waiting** 4:24 104:20
**Wake** 85:20 93:10
**wall** 74:24
**want** 4:22 5:8,11 21:13 24:15
  39:17 49:8 102:24 107:20
  109:20
**wanted** 3:25 4:4 25:5
**washed** 29:9
**wasn't** 14:25 15:3,4,7,7,9 16:8
  19:8 20:15,16,18 22:23 23:19
  23:20 24:12 38:17 39:4,5,8,9
  41:7,7,8 53:3 54:6 58:3 94:7
  94:20 96:3,15 114:13
**Watkins** 37:11 46:20 89:18 90:21
  91:7,18 92:4 95:6,23 96:15
  97:15,18,19 99:18
**way** 15:6 17:4,6 22:21,22 24:11
  36:16 38:19 39:4 83:17 102:17
  116:14
**we'd** 5:21 94:9
**we'll** 4:15,15,16 44:5 90:8,8
**we're** 29:11 62:13 67:19,19
  98:25 119:2,18
**we've** 116:13
**weed** 80:24
**week** 57:4 67:6,7,9,24 69:14
  107:6
**weeks** 68:11
**welding** 34:9 71:4
**went** 24:20 38:16,16 86:12 87:4
  90:24,24 91:22 92:4 93:15
  95:8,11 98:15 102:3 114:19
**What'd** 64:16
**what's** 7:5 20:4 25:10 48:10
  50:19,22,25 60:16 68:2 71:16
  74:2 77:15 82:4 98:19 101:3
  104:11,13,15
**whatsoever** 81:16 82:9
**where'd** 58:10
**where's** 26:15
**Who'd** 104:7
**wife** 9:18 10:22 13:17 14:16,21
  16:2 20:17 21:25 22:4 24:4,19
  25:4 32:25 36:2,3,12,21,23
  38:7,23 39:10 41:8 42:8,15
  72:19 73:5 78:17 79:3 82:16
  84:6,11,14 85:25 86:21 87:24
  88:9,13 91:9,15 95:23,25 98:8
  99:8,12 100:13 101:5 102:9,12
  103:21 105:6,16 114:9 116:16

800.523.7887    5-16-2019, WORD INDEX, DFWMM case    Associated Reporters Int'l., Inc.

Page 22

**wife's** 16:12,15 39:24 93:23
**willful** 1:10 21:20
**WILLIAM** 1:18
**winning** 40:13 64:10,13
**Winston** 47:12,12
**wise** 114:11
**wish** 6:2
**withdraw** 40:18
**witness** 6:10,11,12 8:3,23 9:2,8
  11:24 12:18 13:22,25 14:4
  18:9 28:9,13 30:9 31:3,10
  37:19,21,22 40:17,22 44:9,20
  49:14 56:18 57:6 60:20 73:16
  75:16 97:9 107:13,16,18
  109:21
**witnesses** 3:18
**won't** 67:21 93:3 118:3,6
**wood** 35:17
**work** 48:16 67:24 68:3 78:3
  81:19 84:23 103:5,9,25 106:23
  107:6,7
**worked** 23:14,15
**works** 64:23
**worth** 26:19 33:5,15 60:15
**wouldn't** 16:17,17,20 18:4 39:24
  83:11 102:5
**write** 32:17
**wrong** 113:23

          **X**
**X** 56:3,10 57:11

          **Y**
**yard** 16:10 23:7 79:11
**yards** 67:21 80:3
**yeah** 12:15 17:19,23,23 26:18
  29:24 32:5 34:6,8 37:5 42:4
  43:8 52:20 56:23 67:11 68:5
  78:23 84:13 89:10 90:12 91:6
  97:4,17 99:14 101:6
**year** 7:17 47:9,10,10 48:16 50:4
  50:7,18,18,23 51:3,8 58:19
  59:6 66:2 68:5,8,8,24 70:7
  77:7 95:4,5,7 104:3
**yearly** 65:23
**years** 9:20,20 72:2 77:6,11
  112:10
**yesterday** 3:14
**you'd** 89:13
**you'll** 67:10

**you're** 5:24 6:6 7:25 13:18
  17:10 20:9 23:12 27:12 28:25
  41:13,21 42:17,18 43:7 48:18
  50:15,24 55:14,22 56:10,17
  57:5 68:14,25 73:8 98:4
  100:15,22 101:7,11,12,15
  103:7 105:15 106:5,16 108:25
**you've** 4:24 9:7 54:17 60:13
  65:9 71:5 72:11 73:18 108:16

          **Z**
**zero** 21:7,7,7,7,7 31:7,7,7,8
  49:9,11,12,17 51:11,11,11
  58:20 59:2 87:8,8,8,8,10,10
  87:11,11
**zip** 43:4

          **0**

          **1**
**10** 52:23
**100** 1:23
**101** 1:18
**15** 58:25
**16** 50:17
**17** 46:12
**17-11413** 1:4
**18-02010** 1:4
**19** 1:5
**1st** 58:19,25

          **2**
**2** 87:18 89:4,5
**2010** 111:6,18
**2013** 9:14 11:18 79:2,9,17 80:2
  80:4 81:4 110:23 111:6,18
**2014** 82:16 85:25 89:14 94:8,10
  94:13,18,25 95:13 100:7,10
  111:8
**2015/2016** 72:4
**2016** 47:25 50:5,8 59:15,24
  71:23
**2017** 14:5 46:12 48:13 50:9,12
  51:6 52:24 57:2 58:25 59:2
  72:6 87:18 88:19 89:4,5,5,6
  94:23,23 95:18,19,25 96:3
  99:8 100:8,11
**2018** 75:11
**2019** 1:5 120:3
**21** 1:7

800.523.7887          5-16-2019, WORD INDEX, DFWMM case          Associated Reporters Int'l., Inc.

Page 23

**21247** 2:4
**26** 120:3
**27** 82:16 85:25 88:19 89:5,6 94:10,13
**27401** 1:19
**27420** 2:4
**27604** 1:16
**27th** 86:20

---
**3**
---

**3324** 1:24
**338** 6:24 22:25 25:11

---
**4**
---

**41** 1:8

---
**5**
---

**500** 1:24
**523** 118:21
**523-7887** 2:6
**523(a)(2)** 1:9
**523(a)(2)(a)** 119:2
**523(a)(6)** 1:10

---
**6**
---

**6** 14:5
**62** 1:9
**68** 1:10

---
**7**
---

**702** 1:16
**727(c)(d)(e)** 1:9

---
**8**
---

**800** 2:6

---
**9**
---