IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

In re:                                )
                                      )
DENNIS RICHMOND,                      )
                                      )
            Debtor,                   )
                                      )
_____)
                                      )
DFWMM HOLDINGS LLC,                   )
                                      )
            Appellant,                )
                                      )
      v.                              )           1:19CV667
                                      )
DENNIS RICHMOND,                      )
                                      )
            Appellee.                 )


## **MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

       This case is before the court on Appellant DFWMM Holdings

LLC's ("DFWMM") appeal from the June 21, 2019 Order of the

United States Bankruptcy Court for the Middle District of North

Carolina (the "Bankruptcy Court"). That order dismissed

Appellant's claims for nondischargeability of Debtor-Appellee

Dennis Richmond's (the "Debtor") prior court judgments and held

that Appellant did not have standing as an assignee of a

creditor to bring an adversary proceeding against Debtor. (Doc.

5-3.) Debtor did not file a responsive brief.

The court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. Accordingly, this matter is ripe for ruling. The court exercises jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

For the reasons contained herein, the court will affirm the Bankruptcy Court with one exception, that is, to remand the case for additional findings as to any advice of counsel.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

    A.  **Parties**

DFWMM Holdings LLC, is a limited liability company organized under the laws of North Carolina and doing business there as well. (Bankruptcy Record on Appeal (Doc. 5) Ex. 3, Complaint Seeking Determination of Dischargeability of Judgment Debts ("DFWMM's Compl.") (Doc. 5-3) ¶ 1.)

Debtor Dennis Richmond is an individual debtor in Alamance County, North Carolina. (Bankruptcy Record on Appeal (Doc. 5) Ex. 4, Voluntary Petition (Doc. 5-4) at 1-2.)[1]

_____

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

**B.** **DFWMM's Judgments**

A brief review of the proceedings related to the judgments at issue is appropriate here.

**1.** **The 2014 Judgment**

In a previous case, the Estate of Flora Jones (the "Estate"), Appellant's predecessor in interest, filed suit in North Carolina Superior Court against Debtor's wife for constructive fraud and waste, receiving a judgment for $176,061 in addition to $55,000 in punitive damages. (Doc. 5-10 at 15–17.) This judgment was awarded to the ancillary administratrix (the "Administratrix") of the Estate. (Id. at 15, 17.) In 2013, the Administratrix, on behalf of the Estate, filed suit in North Carolina Superior Court against Debtor, alleging Debtor's wife fraudulently transferred $46,850 to Debtor, which the Estate only learned about through discovery in the previous action. (DFWMM's Compl. (Doc. 5-3) ¶ 8; Bankruptcy Record on Appeal (Doc. 5) Ex. 1, Bankruptcy Court Memorandum Opinion ("Mem. Op.") (Doc. 5-1) at 4.) Debtor apparently refused to comply with discovery orders, resulting in the North Carolina Superior Court striking his pleadings. (Doc. 5-10 at 41, 43–44.) On July 18, 2014, the North Carolina Superior Court "deemed all of [Appellant's] allegations admitted and entered judgment [(the

"2014 Judgment")] in favor of [Appellant's] predecessor in interest against [Appellee] for $46,850 plus costs and interest for [Appellee's] 'fraudulent transfers,'" which apparently remains unsatisfied. (DFWMM's Compl. (Doc. 5-3) ¶ 9; see also Doc. 5-10 at 46–47.)

On October 27, 2014, Debtor "executed a promissory note and settlement agreement [(the "2014 Settlement Agreement")] for $157,334.00 secured by all of his personal and real property in favor of [Appellant]." (DFWMM's Compl. (Doc. 5-3) ¶ 10; Doc. 6-3 at 20.) Under the 2014 Settlement Agreement, Debtor and his spouse agreed to execute a promissory note and a security agreement with DFWMM. (DFWMM's Compl. (Doc. 5-3) ¶ 10; Mem. Op. (Doc. 5-1) at 4.) Debtor, however, defaulted on his obligations to pay the promissory note, and the promissory note was reduced to a judgment in July 2017. (DFWMM's Compl. (Doc. 5-3) ¶ 11; Doc. 5-8 at 2, 6–7.)

### 2. **The 2017 Judgment**

"The Court awarded the [Appellant] judgment for $152,324.41, attorney's fees of $22,848.66 plus costs and interest [(the "2017 Judgment")]. The Court also ordered that the security agreement be enforced." (DFWMM's Compl. (Doc. 5-3)

¶ 11; <u>see also</u> Doc. 5-8 at 6.) This judgment also remains

unsatisfied. (DFWMM's Compl. (Doc. 5-3) ¶ 11.)

### C. **Debtor's Bankruptcy Filing**

In December 2017, Debtor filed a voluntary petition for

relief under Chapter 7 of Title 11 of the United States

Bankruptcy Code, 11 U.S.C. § 101 <u>et seq.</u> (the "Bankruptcy

Code"). (DFWMM's Compl. (Doc. 5-3) ¶ 5; Voluntary Petition (Doc.

5-4).)

Appellant brought an adversary proceeding in the bankruptcy

action, raising two counts in its Complaint: (1) The 2014 and

2017 Judgments were nondischargeable under 11 U.S.C. § 523(a)(2)

and (a)(6); and (2) an objection to discharge of Appellee's

bankruptcy filing under Fed. R. Bankr. P. 7001(2) alleging

Appellee failed to disclose assets and liabilities to the

Bankruptcy Court. (DFWMM's Compl. (Doc. 5-3) ¶¶ 15–29.)

The Bankruptcy Court held a hearing on Appellant's adversary

proceeding complaint on May 16, 2019. (Mem. Op. (Doc. 5-1) at 1;

Doc. 7.)

The Bankruptcy Court concluded that Appellant lacked

standing to object to the discharge of the 2014 Judgment but

found Appellant did have standing to contest the discharge of

the 2017 Judgment. (Mem. Op. (Doc. 5-1) at 9–10.) The Bankruptcy

Court then held that the 2017 Judgment was dischargeable. (<u>Id.</u> at 11–12.) The Bankruptcy Court also denied Appellant's motion to deny Debtor's discharge under § 727(a)(4), finding Appellant failed to establish that Debtor "in fact made any misstatements or omissions on his petition with fraudulent intent." (<u>Id.</u> at 15–16.)

Appellant filed the present appeal on July 8, 2019. (Doc. 1.) Appellant argues that the Bankruptcy Court erred in concluding it did not have standing to contest the 2014 Judgment, that collateral estoppel did not apply to the 2014 Judgment thus allowing the 2017 Judgment to be discharged, and that Debtor had shown the affirmative defense of reliance on counsel when debtor failed to plead or argue that defense.

## II.    <u>STANDARD OF REVIEW</u>

On appeal from the Bankruptcy Court, this court functions as an appellate court and reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law de novo. <u>In re Merry-Go-Round Enters., Inc.</u>, 400 F.3d 219, 224 (4th Cir. 2005). A finding of fact is clearly erroneous if a court reviewing it, considering all of the evidence, "is left with the definite and firm conviction that a mistake has been committed."

<u>Anderson v. Bessemer City</u>, 470 U.S. 564, 573 (1985); <u>accord</u> <u>In re Mosko</u>, 515 F.3d 319, 324 (4th Cir. 2008).

> If the district court's account of the evidence
> is plausible in light of the record viewed in its
> entirety, the court of appeals may not reverse it even
> though convinced that had it been sitting as the trier
> of fact, it would have weighed the evidence
> differently. Where there are two permissible views of
> the evidence, the factfinder's choice between them
> cannot be clearly erroneous.

<u>Anderson</u>, 470 U.S. at 574–75. Mixed questions of law and fact are reviewed de novo. <u>In re Litton</u>, 330 F.3d 636, 642 (4th Cir. 2003).

## III. <u>ANALYSIS</u>

The court will address each of Appellant's arguments in turn.

### A. <u>Standing</u>

Appellant appeals the Bankruptcy Court's ruling that Appellant did not have standing to challenge the nondischargeability of the 2014 Judgment. Appellant argues that "the fact that [Appellant] was the assignee of the debt was admitted by the Defendant-Appellee and undisputed." (Appellant's Brief ("Appellant Br.") (Doc. 10) at 17.) Appellant contends that this was an "undisputed fact and therefore a judicial admission." (<u>Id.</u> at 18.)

The Bankruptcy Court instead found that:

> [t]he only evidence before the Court with respect to
> DFWMM's involvement with the Debtor is that DFWMM was
> included as a third-party beneficiary under the [2014]
> Settlement Agreement between the Debtor, his spouse,
> and the Administratrix. The [2014] Settlement
> Agreement makes no reference to DFWMM as the
> Administratrix's assignee for purposes of the
> Underlying Judgments, and DFWMM presented no evidence
> at trial as to any assignments from the
> Administratrix.

(Mem. Op. (Doc. 5-1) at 8 (footnotes omitted).) The Bankruptcy
Court found that Appellant failed to establish that it was the
Administratrix's assignee of the 2014 Judgment and thus
concluded that Appellant failed to establish standing with
respect to the nondischargeability of the 2014 Judgment. (Id. at
9.)

Appellant claims it did prove it is the assignee of the
2014 Judgment. (DFWMM's Compl. (Doc. 5-3) ¶ 2.) It points to
Debtor's Answer to Appellant's Complaint in the adversarial
proceeding below, which admitted that DFWMM was the assignee of
the judgment in the 2014 Judgment. (Appellant Br. (Doc. 10) at
15; Doc. 5-5 ¶ 2.) Appellant alleges that this is a binding
judicial admission. (Appellant Br. (Doc. 10) at 18.)

Appellant has not challenged the Bankruptcy Court's finding
that the nondischargeability of the 2014 Judgment is reviewed
under 11 U.S.C. § 523 or the Bankruptcy Court's finding that it

must first determine standing. Instead, Appellant's sole
challenge is to the finding that it failed, factually, to
establish standing. (Id. at 16–17.)

Appellant clearly bases standing on a claim arising under
the 2014 Judgment and its status as assignee. Thus, Appellant
was required to prove that it was the assignee of the 2014
Judgment pursuant to a valid assignment. Under North Carolina
law, "[a] valid assignment must designate the assignor, the
assignee, and the thing assigned." Erichsen v. RBC Capital
Markets, LLC, 883 F. Supp. 2d 562, 570 (E.D.N.C. 2012) (internal
quotation marks omitted) (citing Morton v. Thornton, 259 N.C.
697, 699, 131 S.E.2d 378, 380 (1963)). An assignment need not be
in writing. See In re Napoleon, 551 B.R. 200, 204 (Bankr.
E.D.N.C. 2016); In re Helms, 467 B.R. 374, 388 (Bankr. W.D.N.C.
2012).

The court thus must determine whether the Bankruptcy Court
erroneously concluded that Appellant failed to establish that it
was the Administratrix's assignee of the 2014 Judgment.

### 1.    Sufficiency of Evidence

The Bankruptcy Court observed that "[t]he only evidence
before the Court with respect to DFWMM's involvement with the
Debtor is that DFWMM was included as a third-party beneficiary

under the Settlement Agreement between the Debtor, his spouse, and the Administratrix," that the "Settlement Agreement makes no reference to DFWMM as the Administratrix's assignee for purposes of the Underlying Judgments, and DFWMM presented no evidence at trial as to any assignments from the Administratrix." (Mem. Op. (Doc. 5-1) at 8 (footnotes omitted).) Appellant argues that Debtor's pleadings admitting that Appellant was the assignee of the judgment in the 2014 Judgment is evidence contrary to the Bankruptcy Court's findings, making those findings erroneous, and Appellant was the assignee of that Judgment.

The court, however, finds the admission insufficient to demonstrate that Appellant was the assignee <u>of the</u> <u>Administratrix</u>, that is, "the assignor." Appellant alleged and Debtor admitted the following:

> DFWMM is a creditor in the above-captioned bankruptcy case having an interest in two Judgments entered against Debtor in that North Carolina Wake County state court actions numbered 17 CVS 165 and 13 CVS 1321. DFWMM was the named plaintiff in 17 CVS 165 and the assignee of the judgment in 13 CVS 1321.

(DFWMM's Compl. (Doc. 5-3) ¶ 2; Doc. 5-5 ¶ 2.) To establish a valid assignment, as required to find standing, Appellant was required to identify the assignor in addition to the assignee and the subject of the assignment. <u>See</u> <u>Erichsen</u>, 883 F. Supp. 2d at 570. At most, Debtor's admission identifies the assignee and

the thing assigned; the assignor is not identified. The
Bankruptcy Court found that Appellant "presented no evidence at
trial as to any assignments from the Administratrix." (Mem. Op.
(Doc. 5-1) at 8.) In the absence of any evidence to permit a
finding that the Administratrix or some other authorized party
was the assignor, the Bankruptcy Court did not err in finding
Appellant failed to submit sufficient evidence to prove that the
Administratrix properly assigned Appellant the 2014 Judgment.
The court finds that Appellant has pointed to no evidence in the
record before the Bankruptcy Court sufficient to prove a valid
assignment from the Administratrix of the 2014 Judgment. The
court therefore concludes that the Bankruptcy Court did not
commit error in finding that Appellant failed to prove the
existence of a valid assignment of the 2014 Judgment and thus
was not a real party in interest with standing to challenge the
dischargeability of the 2014 Judgment.

### 2. <u>Waiver of Argument on Appeal</u>

The court also notes that relevant documents were
considered, without objection, by the Bankruptcy Court during
trial. (<u>See</u> Mem. Op. (Doc. 5-1) at 8 nn.8-9.) But neither the
pretrial disclosures nor the record indicates Appellant relied
upon or introduced Debtor's admission as evidence to support a

finding of a valid assignment. Thus, not only is the admission itself insufficient, but Appellant also does not cite any portion of the record tending to show that it raised this issue in the Bankruptcy Court, and this court's review of the record reveals no reference to this issue by Appellant in the case below. The Bankruptcy Court does not address it in its memorandum opinion; indeed, the Bankruptcy Court noted that "DFWMM presented no evidence at trial as to any assignments from the Administratrix." (Id. at 8.) It does not appear that the issue of standing was addressed by either evidence or argument presented by Appellant during the trial before the Bankruptcy Court, nor does it appear Appellant presented the admission, or this argument, to the Bankruptcy Court during trial. (See Appellant Br. (Doc. 10) at 17.) This court is convinced that Appellant is raising this issue for the first time on appeal.

The "settled rule is simple: '[a]bsent exceptional circumstances, . . . [the court] do[es] not consider issues raised for the first time on appeal.'" In re Under Seal, 749 F.3d 276, 285 (4th Cir. 2014) (some alterations in original) (quoting Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 242 (4th Cir. 2009)); see Rentokil, Inc.-Tropical Plant Servs. v. Creative Plantscapes, Inc., No. 98-2524, 1999 WL 1092641, at

*3–4 (4th Cir. 1999) (unpublished) (per curiam) ("[Appellant] never characterized [Appellees'] statement as a judicial admission in district court, and that court did not treat the statement as such. Accordingly, [Appellant] has waived this argument because it did not raise it below."); In re Paschall, 408 B.R. 79, 87 (E.D. Va. 2009) ("District courts will not review issues raised for the first time on appeal except under exceptional circumstances."). The court therefore finds Appellant waived this argument. Even if Appellant has not waived this argument, Appellant has failed to show that the Bankruptcy Court's finding that no evidence was presented that the Administratrix executed a valid assignment was erroneous. The court will affirm the Bankruptcy Court's ruling on this issue.

### B.   Collateral Estoppel and the 2014 Judgment

The Bankruptcy Court held that Appellant did not have standing to challenge the dischargeability of the 2014 Judgment, but that Appellant did have standing to challenge the 2017 Judgment, due to Appellant's status as a party to that Judgment. (Mem. Op. (Doc. 5-1) at 9.) In determining whether the 2017 Judgment was dischargeable, the Bankruptcy Court "look[ed] behind the judgment to determine whether the [2014 Settlement] agreement giving rise to it settled any earlier claims for debts

which may not be discharged in this proceeding." (Id. at 10.)
Because the 2014 Settlement Agreement arose out of the 2014
Judgment, the Bankruptcy Court analyzed the 2014 Judgment to
determine whether the Bankruptcy Court should give the 2014
Judgment preclusive effect under collateral estoppel. (Id. at
10-12.) The Bankruptcy Court found that "[s]ince the 2014
Judgment was a default judgment, entered as a discovery
sanction, it has no collateral estoppel effect in this
proceeding," and concluded that the debt of the 2017 Judgment
attributable to the 2014 Judgment could be discharged. (Id. at
12.)

Appellant, however, argues that the Bankruptcy Court should
have given the 2014 Judgment preclusive effect under collateral
estoppel using the "Semtek International Principle." (Appellant
Br. (Doc. 10) at 24-27.) Appellant asserts that the Supreme
Court in Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S.
497, 509 (2001), "stated in Semtek International that federal
reference to a state law's collateral estoppel law should not
occur when state law is incompatible with federal interests,
with the Court specifically citing as a federal interest the
preclusive effect of a federal court's dismissal for willful
violation of discovery orders." (Appellant Br. (Doc. 10) at 25.)

Appellant contends that Debtor "substantially participated" in the 2014 Judgment litigation, pointing to Debtor's motions to dismiss, thus arguing that the court should consider that case "actually litigated" for the purposes of collateral estoppel. (Id. at 25–26.) Despite recognizing that the state court struck Debtor's answer and motions to dismiss, which resulted in a default judgment (the 2014 Judgment), Appellant nevertheless argues that the "Bankruptcy Court should have applied the federal interpretation to the 'actually litigated' prong of the State's collateral estoppel law as contemplated by Semtek and given collateral estoppel effect to the State Court 2014 Judgment." (Id. at 26–27.)

It appears that Appellant is raising the issue of applying Semtek International or a "federal interpretation" of "actually litigated" for the first time on appeal. Appellant does not cite any portion of the record tending to show that it raised this issue in the Bankruptcy Court, and the court's review of the record reveals no reference to this issue by Appellant in the case below. According to the Bankruptcy Court, Appellant "presented no evidence with which to enable the Court to independently assess the dischargeability of the debt

represented by the 2014 Judgment under the standards of §§ 523(a)(2)(A) or (a)(6)." (Mem. Op. (Doc. 5-1) at 12.) Instead, Appellant "merely submitted the judgment, asked the Debtor a few questions about the events which gave rise to the judgment without providing any supporting documents for the Court to assess, and the Debtor denied any wrongdoing." (Id.) Based on the evidence presented at trial, the Bankruptcy Court concluded that the debt attributable to the 2014 Judgment could be discharged. (Id.)

"District courts will not review issues raised for the first time on appeal except under exceptional circumstances." In re Paschall, 408 B.R. at 87. Finding no exceptional circumstances in this case, the court declines to review Appellant's contention that the Bankruptcy Court erred by failing to apply "federal interpretation to the 'actually litigated' prong of the State's collateral estoppel law as contemplated by Semtek." (Appellant Br. (Doc. 10) at 26.) The court will affirm the Bankruptcy Court's ruling on this issue.

## C. <u>Debtor's False Statements and Omissions</u>

The Bankruptcy Court found that Debtor "did make several false statements or omissions on his petition," but "[n]one of these statements or omissions, however, appear to have been made

with fraudulent intent," for several reasons, including, it seems, reliance on counsel. (Mem. Op. (Doc. 5-1) at 14–15.) Appellant argues the Bankruptcy Court erred in finding that Debtor had shown reliance on counsel, an affirmative defense, in the face of Debtor's "misrepresentations." (Appellant Br. (Doc. 10) at 19–22.) Appellant does not appear to challenge the Bankruptcy Court's findings concerning Debtor's intent as to those misrepresentations that did not involve advice of counsel.

"Section 727(a) of the Bankruptcy Code provides that a bankruptcy court 'shall grant the debtor a discharge,' but then describes twelve scenarios where a debtor is not entitled to such relief." Robinson v. Worley, 849 F.3d 577, 583 (4th Cir. 2017) (quoting 11 U.S.C. § 727(a)). Appellant's argument as to the nondischargeability of the 2017 Judgment is based on § 727(a)(4), which "provides that the court should deny discharge if 'the debtor knowingly and fraudulently, in or in connection with the case[,] made a false oath or account.'" Id. (quoting 11 U.S.C. § 727(a)(4)(A)). "To run afoul of this provision, 'the debtor must have made a statement under oath which he knew to be false, . . . he must have made the statement willfully, with intent to defraud,' and the statement 'must have related to a material matter.'" Id. (quoting Williamson v.

Fireman's Fund Ins. Co., 828 F.2d 249, 251 (4th Cir. 1987))

(omission in original). "[C]ourts generally must infer

fraudulent intent from circumstantial evidence or inferences

drawn from a course of conduct." Robinson v. Worley, 540 B.R.

568, 576 (Bankr. M.D.N.C. 2015).

Given the harsh consequences of a denial of discharge, the

statute is ordinarily construed liberally in the debtor's favor.

Robinson, 849 F.3d at 583. "The reasons for denying a discharge

to a bankrupt must be real and substantial, not merely technical

and conjectural." Id. (quoting Boroff v. Tully (In re Tully),

818 F.2d 106, 110 (1st Cir. 1987)).

## 1. Debtor's False Statements

"Whether a debtor has made a false oath is a question of

fact, and a bankruptcy court's factual findings may not be set

aside unless clearly erroneous." Nelson v. Jackson, Civil Action

No. ELH-18-2473, 2019 WL 3081215, at *11 (D. Md. July 12, 2019)

(citing Williamson, 828 F.2d at 251). "This standard ensures

that 'due regard shall be given to the opportunity of the

bankruptcy court to judge the credibility of witnesses.'" Id.

(quoting Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d 244, 250

(4th Cir. 1994)).

The Bankruptcy Court held a trial in the instant case, during which Debtor was the only witness. (Mem. Op. (Doc. 5-1) at 7.) The Bankruptcy Court found that Debtor "did make several false statements or omissions on his petition," including: that he "averred that he is not a sole proprietor, a statement clearly rebutted by the Debtor's own testimony and by Schedule I of his petition"; his statements on his petition and statement of financial affairs that "his debts are primarily consumer debts, [were] demonstrably false . . . in light of the nature and amount of the debts in the case"; his statement of financial affairs that "his gross yearly income for the year of 2017 until the date of the petition filing was in the amount of $0, while at trial, he noted that his income during that time frame was, perhaps, more like $50,000"; his failure to list a Harley Davidson titled in his name, which he admitted at trial; and his failure to disclose the liens on his personal property in favor of Appellant on his petition. (Id. at 14.) Appellant does not dispute these findings by the Bankruptcy Court as to false and inaccurate statements.

The Bankruptcy Court found that none of the statements or omissions were made with fraudulent intent. (Id. at 15.) That court supported this conclusion by reasoning that:

[t]he Debtor's misstatements with respect to his
business were, more likely than not, a mere mistake,
in light of the fact that the Debtor disclosed his
sole proprietorship on Schedule I. It also appears
that the Debtor's failure to disclose the liens on his
personal property in favor of DFWMM was a mere
mistake, as he had no difficulties in disclosing the
Deed of Trust in favor of DFWMM.

Other misstatements appear to have been made upon
the advice of counsel, including the declarations as
to the primary nature of the debts in the case and the
Debtor's gross income for 2017 until filing. Counsel
should have discussed and evaluated the nature of the
Debtor's debts with him, as a layperson would not
necessarily have understood the terms "consumer" and
"business" debts as they related to the debts in this
case. Counsel also stated at the trial that the 2017
figure was derived from the Debtor's tax returns,
seemingly himself confusing the terms gross and net
income.

Finally, the Debtor's failure to list the Harley
Davidson also appears to have been either
unintentional or at the advice of counsel, who aided
the Debtor in listing the debt to Harley-Davidson
Credit Corporation and was seemingly aware that the
Debtor did not believe he owned the vehicle, though it
was titled in his name.

(Id.) Regarding other alleged misstatements or omissions, the

Bankruptcy Court noted that Appellant failed to produce evidence

to substantiate a variety of other alleged misstatements and

omissions. (Id. at 14 n.15.)

The Bankruptcy Court concluded that Appellant had failed to

establish Debtor made "misstatements or omissions on his

petition with fraudulent intent, [and] failed to carry its

burden of proving that the Debtor's discharge should be denied under § 727(a)(4)." (Id. at 15.)

## 2.    Reliance on Counsel

Appellant argues that the Bankruptcy Court "erroneously found that [Debtor] had proved a defense of reliance of counsel." (Appellant Br. (Doc. 10) at 21.)

"While reliance on counsel generally absolves a debtor of fraudulent intent, the bankruptcy court must still consider whether the debtor acted in good faith." Robinson, 849 F.3d at 586 (internal citation omitted). "A debtor must demonstrate that he provided the attorney with all of the necessary facts and documentation. Likewise, the advice of counsel is no defense when it should have been obvious to the debtor that his attorney was mistaken." Id. (internal citation omitted). In summary, to establish advice of counsel in order to negate intent to defraud, the attorney had to be fully informed when the advice was given and the debtor's reliance must have been reasonable. See In re Arnold, 369 B.R. 266, 272 (Bankr. W.D. Va. 2007). Before discussing advice of counsel, the Bankruptcy Court had already found that "[n]one of [the allegedly fraudulent] statements or omissions . . . appear to have been made with fraudulent intent." (Mem. Op. (Doc. 5-1) at 15.) The Bankruptcy

Court then remarked that "[o]ther misstatements appear to have
been made upon the advice of counsel, including the declarations
as to the primary nature of the debts in the case and the
Debtor's gross income for 2017 until filing." (Id. (emphasis
added).) That court further observed that "Counsel also stated
at the trial that the 2017 figure was derived from the Debtor's
tax returns, seemingly himself confusing the terms gross and net
income." (Id.) The Bankruptcy Court's findings as to the advice
of counsel, particularly with respect to absolving Debtor of
fraudulent intent, do not explain the relevant findings
sufficiently to permit this court to review this issue. This
court is not able to determine whether the Bankruptcy Court was
in fact finding that Debtor fully informed his counsel, whether
Debtor was advised by counsel, and whether Debtor's reliance on
any advice was reasonable. It may be that the Bankruptcy Court
did not intend to find an explicit advice of counsel defense,
but instead intended to find that, after viewing Debtor testify
and considering all of the evidence, any misstatements were not
intentionally fraudulent. In explaining that finding, it is
possible to construe the Bankruptcy Court's finding as to advice
of counsel as simply support for that general finding by
pointing to instances where Debtor's counsel was in possession

of accurate information, making it unlikely Debtor intended to submit false information. For example, one instance of false information involved the incorrect gross yearly income for the year of 2017; the Bankruptcy Court observed that Debtor's counsel had the tax returns but was "confusing the terms gross and net income." (Id.) Further, regarding the "primary nature of the debts," the Bankruptcy Court noted that "a layperson would not necessarily have understood the terms 'consumer' and 'business' debts as they related to the debts in this case," and thus "[c]ounsel should have discussed and evaluated the nature of the Debtor's debts with him." (Id.)

The Bankruptcy Court's findings therefore do not appear to support a finding that Debtor established a defense of advice of counsel, but those findings do not make clear that the Bankruptcy Court was relying upon that established defense to support its conclusions.

In light of the fact it is not clear how the Bankruptcy Court used the term "advice of counsel," this court finds remand necessary. "[A] single false statement account or oath is all that is required for the bankruptcy court to deny a discharge under § 72[7](a)(4)(A)." Nelson, 2019 WL 3081215, at *11. Income is a "material matter" for the purposes of § 724(a)(4)(A). Id.

at *13–14 (finding omission of the debtor's largest source of income was "tantamount to fraud under 11 U.S.C. [§] 727(a)(4)"). And the burden is on the debtor to prove reliance on counsel. Robinson, 849 F.3d at 586 ("A debtor must demonstrate that he provided the attorney with all of the necessary facts and documentation."). This court is not able to find that Debtor made the requisite demonstrations at trial to support an affirmative finding of reliance on advice of counsel; however, neither is this court able to determine that such a finding was intended or necessary to the Bankruptcy Court's conclusions. In light of Appellant's challenge, this court finds the Bankruptcy Court's explanation and findings are not sufficiently clear to permit meaningful appellate review. The case will be remanded for further findings by the Bankruptcy Court.

IV.  **CONCLUSION**

For the foregoing reasons, this court affirms in part and vacates and remands in part the judgment of the Bankruptcy Court.

**IT IS ORDERED** that the Bankruptcy Court's judgment is **AFFIRMED** with respect to the Bankruptcy Court's rulings concerning Appellant's standing and the dischargeability of the 2017 Judgment.

**IT IS FURTHER ORDERED** that the Bankruptcy Court's judgment is **VACATED** with respect to the Bankruptcy Court's ruling that Debtor did not have fraudulent intent for his false statements for those instances in which the Bankruptcy Court referenced advice of counsel and the case is **REMANDED** to permit the Bankruptcy Court an opportunity to make additional findings in accordance with this Memorandum Opinion and Order.

This the 9th day of March, 2020.

William L. Osteen, Jr.
United States District Judge